## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE STATE OF NEW MEXICO by and §
through the NEW MEXICO §
ENVIRONMENT DEPARTMENT §
          §
    Plaintiff, §
          §
v. §   C.A. No. 1:16-cv-00465-MCA-LF
          §
UNITED STATES ENVIRONMENTAL §   **PLAINTIFF NEW MEXICO'S BRIEF**
PROTECTION AGENCY, *et al.*, §   **IN OPPOSITION TO DEFENDANT**
          §   **ENVIRONMENTAL RESTORATION**
    Defendants. §   **LLC'S MOTION TO DISMISS AND**
          §   **MOTION TO STRIKE [DOC. 32]**

  **COMES NOW** Plaintiff, the State of New Mexico by and through the New Mexico

Environment Department ("New Mexico"), by and through its counsel or record, and files this its

Brief in Opposition to Defendant Environmental Restoration LLC's Motion to Dismiss and

Motion to Strike (Doc. 32) ("Opposition") in the above-captioned matter and would respectfully

show the Court as follows.

### INTRODUCTION

  In its Motion to Dismiss and Motion to Strike (Doc. 32) ("Motion"), Defendant

Environmental Restoration LLC ("ER") asks the Court to dismiss certain of New Mexico's

CERCLA claims, and all of New Mexico's RCRA and common law claims, asserted against ER

pursuant to Rules 12(b)(6). ER further asks the Court to find as a matter of law based solely

upon the allegations in the Complaint (Doc. 1) ("Compl.") that ER is entitled to the affirmative

defense of the Government Contractor Defense. Lastly, ER asks the Court to strike New

Mexico's allegations of joint and several liability related to its state tort claims. As is

demonstrated below, ER's arguments are based upon incorrect and inapplicable legal standards, as well as a fundamental misunderstanding of the factual allegations in the Complaint. Based upon the reasons set forth in this Opposition, the Court should deny ER's Motion in entirety.

## STANDARD OF REVIEW

When ruling on a motion to dismiss for failure to state a claim, a court must assume the truth of the facts alleged in the complaint and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint's sufficiency is a question of law, and on a 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted). Tthe controlling issue in considering a 12(b)(6) motion to dismiss is whether the plaintiff is entitled to present evidence in support of the claim, not whether the plaintiff will ultimately prevail on his claims. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

In addition, a 12(b)(6) motion is intended to test the legal adequacy of the complaint, not to address the merits of an affirmative defenses. An affirmative defense may be raised in a 12(b)(6) motion only if the defense clearly appears on the face of the complaint.[1] *Miller v. Shell*

---

[1] In Section VII of its Motion, ER moves to dismiss based on the "government contractor defense" ("GCD"), which is an affirmative defense. Moving on the GCD is improper here, at the motion to dismiss stage, because (a) the Complaint does not provide evidence sufficient to satisfy every element of this affirmative defense, and (b) ER is precluded from proffering evidence external to the Complaint in support of its Motion at this stage of the case.

*Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *McCalden v. California Library Ass'n*, 995 F.2d 1214, 1219 (9th Cir. 1992); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990).

## LAW & ARGUMENT

I.  **New Mexico Has Pled Facts Sufficient to State a Claim That ER is Liable as an Operator, Arranger, and Transporter under CERCLA.**

In Section IV of its Motion, ER argues that it is not liable as an operator, arranger, or transporter under CERCLA because New Mexico's Complaint fails to set forth enough facts to state a plausible claim for relief.  (Mot. at 7-12.)  To the contrary, New Mexico's specific factual allegations, when accepted as true, are more than sufficient for this Court to draw a reasonable inference that ER is liable under CERCLA as an operator, arranger, and transporter.

A.  **New Mexico's Allegations Give Rise to a Reasonable Inference that ER had the Requisite Control Over its Activities at Gold King Mine to be Liable under CERCLA as an Operator.**

Under CERCLA, "operator" is defined as "any person owning or operating" a facility. 42 U.S.C. § 9601(20)(A)(ii).  The Supreme Court has interpreted this term in CERCLA according to its "ordinary meaning" as "someone who directs the workings of, manages, or conducts the affairs of a facility."  *United States v. Bestfoods*, 524 U.S. 51, 66 (1998). "[O]perate" means "more than mere mechanical activation of pumps and valves, and must be read to contemplate 'operation' as including the exercise of direction over the facility's activities."  *Id.* at 71.  The term "facility" means:  "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored,

disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).  To determine operator liability under CERCLA, the Tenth Circuit recognizes both the "authority to control" and the "actual control" tests.  *See FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 846 (10th Cir. 1993); *United States v. Power Eng'g Co.*, 125 F. Supp. 2d 1050, 1071 (D. Colo. 2000).

In this case, ER claims it is not liable under CERCLA no matter which "control" test is applied because New Mexico's Complaint "fails . . . to allege a single instance in which ER managed or directed any reclamation activity at Gold King."  (Mot. at 8.)  To support its assertion, ER mischaracterizes the Complaint, claiming that it "specifically alleges that the EPA and DRMS 'supervised' and 'directed' ER's activities at all relevant times."  (*Id.*)  ER also misquotes the Complaint as alleging that EPA and DRMS "completely controlled and directed all of ER's activities at Gold King."  (Mot. at 10.)

Nowhere does New Mexico allege or even suggest that EPA and/or DRMS exercised *complete* control over *all* of ER's activities at Gold King.  Although New Mexico alleges that EPA and/or DRMS "supervised" or "directed" some of ER's activities at Gold King, these allegations do not negate ER's responsibility for its specific actions that triggered the spill and contamination.[2]  Control over an entire facility is not necessary to establish operator liability.  For example, in *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568 (5th Cir. 1988), a contractor filled in and graded creosote-contaminated areas within a large subdivision.  The contractor's acts took place prior to construction of residences on previously contaminated

---

[2] Moreover, nothing in CERCLA suggests that there cannot be multiple "operators" at a particular facility.  *See City of North Miami v. Berger*, 828 F. Supp. 401, 414-15 (E.D. Va. 1993) (holding the multiple parties of Kaufman, Haddad, and ABC all individually liable as operators).

property. 849 F.2d at 1571. The contractor played no role in the original disposal of creosote on the property. *Id.* Still, the court ruled that a contractor who "moved, dispersed, or released [materials] during landfill excavations and fillings" could be liable as an operator. *Id.* at 1573.

Likewise, in *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.,* 976 F.2d 1338 (9th Cir. 1992), an independent contractor excavated and graded a certain portion of city-owned land for a proposed housing development. *Id.* at 1339-40. The contractor spread already contaminated soil to uncontaminated areas. *Id.* The Ninth Circuit found operator liability had been sufficiently pled where the complaint alleged the contractor had "exacerbated the extent of the [existing] contamination by extracting the contaminated soil from the excavation site and spreading it over uncontaminated areas of the property." *Id.* at 1340. The Ninth Circuit did not require the contractor to have control over the entire property, but only over the contaminating "activity." *See id.* at 1342. "[O]perator liability under section 9607(a)(2) only attaches if the defendant had authority to control the cause of the contamination at the time hazardous substances were released into the environment." *Id.* at 1341-42 (citing *Nurad, Inc. v. Hooper & Sons Co.*, 966 F.2d 837, 842 (4th Cir.) (1992).

District courts have also found that mere knowledge and physical control of hazardous substances provide the requisite control to establish operator liability. In *City of N. Miami v. Berger*, 828 F. Supp. 401, 414-15 (E.D. Va. 1993), the court imposed operator liability on a contractor that had conducted construction and waste disposal work on a property based on the contractor's physical control of the hazardous substances at issue. *Id.* In *BancorpSouth Bank v. Envtl. Operations, Inc.*, Cause No. 4:11CV9 HEA, 2011 WL 4815389 (E.D. Mo. Sept. 30, 2011), the defendant contractor's motion to dismiss was denied because the plaintiff alleged that: (1) all

defendants knew hazardous materials were disposed on the property; and (2) all defendants engaged in deliberate disturbance and re-releasing of hazardous materials onto the property. *Id.* at *3. The court found these allegations sufficient to state a claim for relief. *Id.*

In this case, New Mexico alleges that ER undertook many activities at Gold King which demonstrate that ER exercised control of and was actively involved in the events triggering the August 5, 2015 blowout. For example:

- The first paragraph of the Complaint alleges that "[o]n August 5, 2015, [EPA] and its contractor [ER] breached a collapsed portal of the Gold King Mine, releasing over three million gallons of acid mine drainage and 880,000 pounds of heavy metals into the Animas River watershed in southwestern Colorado" and New Mexico. (Compl. ¶ 1.)

- New Mexico claims that ER, "supervised by EPA and [DRMS], used an excavator to dig away tons of rock and debris that blocked the portal of the Gold King Mine." (Compl. ¶ 4.)

- New Mexico alleges that in July 2015 "the EPA crew[3] collected water samples and measured flow from the adit, graded the surface of the waste dump, and started constructing a water management and treatment system to handle an anticipated increase in discharges from the mine." (Compl. ¶ 81.)

- The Complaint further alleges that even though the EPA on-scene coordinator, Steven Way, had provided specific instructions regarding work at the Gold King Mine "during the week of August 3 to individuals from EPA, DRMS, and to EPA's contractors," photographic evidence shows "that Mr. Griswold and the crew did not follow Mr. Way's written instructions. *Nor, for that matter, did they follow the contractor's existing work plan.*" (Compl. ¶ 83.) (emphasis added). In particular, the Complaint states that "[o]n August 4, at about 8:45 am . . . With an incomplete safety plan, an inadequate site evaluation, and lacking necessary equipment on hand, the EPA crew began digging at the adit around 10:30 a.m.

---

[3] The Complaint only identifies two EPA employees who were present during the response activities at Gold King in 2015 prior to the spill on August 5, 2015: (1) Steven Way, the On-Scene Coordinator; and (2) Hays Griswold, who was present after Mr. Way left for vacation in late July or early August 2015. (Compl. ¶¶ 81-87.) Excluding the Colorado DRMS employees who were intermittently present, all other individuals conducting activities at Gold King prior to the catastrophic release on August 5, 2015 consisted entirely of the ER work crew. *Id.* When the Complaint refers to the "EPA crew" or "EPA" with regard to specific operations such as measuring water flow from the adit or constructing a water treatment system, it is referring to activities conducted by ER and its employees.

By the end of the day, the crew had excavated all but a small portion of the drainage pipe that DRMS installed in 2009." (Compl. ¶ 84.)

- The Complaint explains in detail that on August 5, 2015, ER "excavated and removed the last remnants of the DRMS-installed pipes.  Because, at this point the pipes were visibly well below the plug, the EPA crew should have recognized they were removing material at least several feet below the roof of the adit." (Compl. ¶ 85.)  ER then "backfilled the excavated area in front of the plug and built a large earthen berm.  Apparently having decided to drain the mine-again without testing the pressure, having an adequate safety plan, receiving BOR's input, or following other directives, the crew dug a channel on the right side of the berm and positioned planks so that water flowing from the adit could be directed to the drainage channel that DRMS had previously installed." (Compl. ¶ 86.)

- New Mexico further alleges that ER: "resumed digging at the mouth of the adit, when the operator soon reported hitting a 'spring.'  Surprisingly, the EPA crew neither attempted to backfill the adit nor plug the 'spring.'  Within minutes, the 'spring' started spurting and the flow surged, culminating in the massive blowout that contaminated the Animas River, the San Juan River, and Lake Powell with over three million gallons of acid mine drainage and sludge, and 880,000 pounds of metals.  (Compl ¶ 87.)[4]

In sum, New Mexico alleges a plethora of independent and intentional actions by ER related to the Gold King Mine operation on August 4, 2015 and August 5, 2015, which establish operator liability under CERCLA.[5]

**B.     New Mexico's Allegations Give Rise to a Reasonable Inference that ER's Activities at Gold King Establish Liability under CERCLA as an Arranger.**

ER claims it cannot be liable as an arranger because:  (1) the Complaint fails to allege that the August 5, 2015 spill was "anything other than accidental;" (2) New Mexico fails to allege that ER arranged to have hazardous substances disposed or transported "by any other party

---

[4] In addition to the allegations set forth in the Complaint's factual background section, New Mexico summarizes several of its factual allegations against ER in paragraph 175 of the Complaint, in which it specifically asserts ER's negligent or grossly negligent conduct.  (Compl. ¶ 175)

[5] In addition, the House Committee on Natural Resources has observed that EPA is hampering the committee's ongoing investigation of the blowout by releasing redacted and edited materials, thereby hiding the identities and roles of ER, EPA, and DRMS personnel involved in the Gold King operation.  EPA and ER must not be rewarded for hiding the identities and decisions of those who caused blowout, and New Mexico is entitled to discover them.

or entity;" and (3) the Complaint fails to set forth sufficient allegations to demonstrate ER had control over the "treatment or disposal process." (Mot. at 10-11.) ER misstates the controlling test for arranger liability and, despite ER's claims to the contrary, New Mexico has alleged facts in the Complaint sufficient to allow the Court to reasonably infer that ER is liable as an arranger.

Contrary to ER's contentions in its Motion, in the Tenth Circuit, a party is liable as an arranger under CERCLA if: (1) the party is a "person" as defined in CERCLA; (2) the party owns or possesses the solid or hazardous substance at issue; and (3) the party, by contract, agreement or otherwise, arranges for the transport or disposal of such hazardous substance. *Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1219 (10th Cir. 2003). It is wholly irrelevant whether the August 5, 2015 spill was "accidental." CERCLA is a strict liability statute. *Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608 (2009). Addressing ER's second point, neither the Supreme Court nor the Tenth Circuit require that the hazardous substance be disposed or transported "by any other party or entity." Rather, the clear language of the statute and the applicable authority indicate that "by any other party or entity" modifies the immediately preceding phrase "hazardous substances owned or possessed by." 42 U.S.C. § 9607(a)(3). In other words, the hazardous substance that was arranged to be disposed may be owned or possessed by a variety of persons, including "such person," "any other party or entity," or "any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." *Id.* Indeed, the Court need not even reach ER's strained and inaccurate reading of the statute because ER falls within the first independent clause: "any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances [] possessed by such person." *Id.* Finally, there is no requirement that ER

have control over the "treatment or disposal process."   Rather, the law, as discussed below, simply requires possession of the hazardous waste.   *Raytheon Constructors, Inc.*, 368 F.3d at 1219.

Courts must interpret CERCLA's terms liberally to achieve its "overwhelmingly remedial" statutory scheme.  *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir. 1990).  The Supreme Court has held that arranger liability is a "fact intensive and case specific" inquiry that relies on the "ordinary meaning" of arrange "[b]ecause CERCLA does not specifically define what it means to 'arrang[e] for' disposal of a hazardous substance." *Burlington N.*, 556 U.S. at 610-11.  "In common parlance, the word 'arrange' implies action directed to a specific purpose."  *Id.* at 611.  Thus, "an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id.*  CERCLA defines "disposal" by reference to the Solid Waste Disposal Act as:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903.  Courts have interpreted "possess" to mean exertion of some measure of control over the hazardous substance. *See United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 743 (8th Cir. 1986); *see also Sea Lion v. Wall Chem. Corp.*, 974 F. Supp. 589, 596 (S.D. Tex. 1996) (noting that "under definitive and well reasoned authorities, the ownership definition [for arranger liability] is quite broad and includes constructive possession").

Here, it is undisputed that ER is a person as defined under CERCLA[6] meeting the first element for liability.  In its Complaint, New Mexico alleges facts sufficient for the reasonable inference for the remaining two elements, *to wit*, that ER possessed the hazardous waste at issue and agreed to arrange for the transport or disposal of such hazardous waste.  Indeed, it is clear that ER took intentional steps to arrange for the disposal of hazardous substances.  *See Burlington N.*, 556 U.S. at 611.  In particular, ER agreed with EPA to transport or dispose of the acid mine waste in the Gold King Mine.  (Compl. ¶¶ 1, 4, 15, 73-75, 81-87.)  ER's subsequent excavation activities at Gold King directly caused the spill on August 4 and 5, 2015.  (Compl. ¶¶ 84-87.)  The Complaint further alleges that ER performed site-prep activities in July 2015 including sampling of the acid mine water, measuring the flow from the adit of the acid mine water, grading the surface of the waste dump, and constructing a temporary water management and treatment system for discharges from the Gold King Mine.  (Compl. ¶ 81.)  ER also "dug a channel on the right side of the berm and positioned planks so that water flowing from the adit could be directed to the drainage channel that DRMS had previously installed" leading to the temporary water management and treatment system.  (Compl. ¶¶ 72, 81, 86.)  These allegations demonstrate a plausible claim that ER took intentional steps to dispose of a hazardous substance.  *Burlington N.*, 556 U.S. at 611.  Indeed, a central question and issue for discovery in this case is: *why* did ER intentionally bore into the portal's earthen plug when EPA had made the studied decision not to do so?  If discovery reveals that there was an intention to release the water in the mine, as alleged in the Complaint, then ER is clearly an "arranger" under CERCLA.

---

[6] The term "person" means an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body. 42 U.S.C. § 9601(21).

C.     **New Mexico's Allegations Give Rise to a Reasonable Inference that ER's Activities at Gold King Establish Transporter Liability under CERCLA.**

ER argues that New Mexico fails to "allege any facts that ER participated . . . in the decision-making process that culminated in selecting any treatment and disposal sites." (Mot. at 12.)   ER's argument for dismissal is predicated on a blinkered reading of New Mexico's Complaint, and fails as a matter of law.

Section 9607(a)(4) imposes "transporter" liability on any person who:

> accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

42 U.S.C. § 9607(a)(4).   The Tenth Circuit has acknowledged that "transporter liability is predicated on site selection by the transporter." *United States v. Hardage*, 985 F. 2d 1427, 1435 (10th Cir. 1993).   Although some circuits have adopted language requiring a transporter to "actively and substantially" participate in site selection, *see, e.g., Tippins Inc. v. USX Corp*, 37 F. 3d 87, 90 (3d Cir. 1994), the Tenth Circuit has not adopted such language.   In *Kaiser*, the Ninth Circuit held that "[w]hether a transporter moves hazardous material from one parcel of land to another, or whether he simply takes the material from a contaminated area on one parcel and disposes of it on an uncontaminated area of the same parcel, he has spread contamination." 976 F.2d at 1342.

New Mexico alleges that ER "accepted hazardous substances from the mines for transport and disposal, including to settling ponds and other facilities, and releases from those facilities occurred." (Compl. ¶ 103.)   That allegation is supported further by New Mexico's claim that ER "dug a channel on the right side of the berm and positioned planks so that water

flowing from the adit could be directed to the drainage channel that DRMS had previously installed." (Compl. ¶ 86.)  In addition, ER participated in operations involving the treatment and disposal process, which included transporting mine water from Gold King to settling ponds and other facilities. (Compl. ¶ 81.)  By alleging that ER dug a drainage channel for the purpose of transporting hazardous substances, and further that ER accepted hazardous substances for transport and disposal to settling ponds and other facilities, New Mexico has sufficiently alleged facts from which the Court can reasonably infer a plausible claim for relief that ER is liable as a transporter under CERCLA.  The Court should deny ER's Motion related to operator, arranger, and transporter liability under CERCLA.

## II.     EPA'S REMOVAL ACTION UNDER CERCLA § 104 DOES NOT BAR NEW MEXICO'S REQUEST FOR INJUNCTIVE RELIEF UNDER RCRA.

ER argues that New Mexico's RCRA claim for injunctive relief is barred by EPA's removal action at the Gold King Mine.  (Mot. at 12-14.)  Based on the facts alleged in the Complaint and the scope of EPA's removal action set forth in EPA's Action Memorandum (Def's Ex. B at 12-13), this Court cannot conclude as a matter of law that New Mexico's RCRA claim is a "challenge" to EPA's removal action at the Gold King Mine, and is thus barred under 42 U.S.C. § 9613(h) or 42 U.S.C. § 6972(b)(2)(B)(ii).  Moreover, New Mexico's RCRA claim focuses on the imminent and substantial endangerment in the Animas and San Juan Rivers, which neither are contemplated by nor fall within the scope of EPA's removal action.

### A.     New Mexico's RCRA Claim is Not a "Challenge" to EPA's Removal Action and is not Barred by 42 U.S.C. § 9613(h) or 42 U.S.C. § 6972(b)(2)(B)(ii).

CERCLA § 113(h) states that "[n]o federal court shall have jurisdiction . . . to review any challenges to removal or remedial action selected under section 9604 of [CERCLA]" except in

five limited circumstances. This provision is intended to prevent *private responsible parties* from filing dilatory lawsuits which might slow down or prevent EPA's cleanup actions. *United States v. Colorado*, 990 F.2d 1565, 1576 (10th Cir. 1990). Hence, section 113(h) applies if: (1) EPA has selected a removal or remedial action; and (2) a RCRA suit is a "challenge" to that action because it would hinder or prevent EPA's activities.

It is undisputed that EPA engaged in a removal action under CERCLA § 104 at the Gold King Mine. The scope of EPA's removal action, however, encompasses a limited geographical area: the Gold King Mine and an interim water treatment facility at nearby Gladstone. EPA does not include investigating, monitoring or remediating any part of the Animas River or the San Juan River, both of which have been contaminated by the Gold King Mine release. In fact, EPA's *only* actions in New Mexico (where the southern reach of the Animas River and the majority of the San Juan River are located) were the temporary provision of alternative drinking water supplies for human and livestock consumption and agricultural irrigation during the shutdown of river water supplies in August 2015. (Def's Ex. B at 12-13.) What is more, EPA only plans to remove "waste rock deposited in the North Fork/Cement Creek channel," (*Id.* at 12), and will not address solid or hazardous wastes deposited in the Animas River or the San Juan River, both of which act as sources of re-contamination in New Mexico during high flow events such as the Spring runoff.

Section 113(h) does not bar all citizen suits once a removal or remedial action is in progress, but only those suits that effectively "challenge" the remedy that has been (or will be) selected. In other words, a suit "challenges" a removal action when it has the potential to interfere with or delay an ongoing action. New Mexico's RCRA suit does not interfere with the

current removal action at the Gold King or future remedial efforts, if any, in the Bonita Peak Mining District, because its suit focuses on the Animas and San Juan Rivers below Silverton, Colorado and in New Mexico—areas where EPA is not conducting any removal or remedial actions.[7] New Mexico's RCRA suit seeks to accelerate, not delay, cleanup efforts in areas not within the scope of EPA's removal action, and therefore is not a "challenge" within the meaning of Section 113(h) and is not barred by 42 U.S.C. § 9613(h) or 42 U.S.C. § 6972(b)(2)(B)(ii).[8]

In sum, New Mexico's RCRA suit will not delay EPA's Removal Action at Gold King, which begins at the mine portal and ends at Gladstone, and is limited to stabilizing the portal, directing the flow of acid mine drainage into a temporary water treatment facility at Gladstone, and removing and storing nearby waste rock materials to an onsite repository. (Def's Ex. B at 11-12.) New Mexico's RCRA claim against ER focuses on segments of the Animas and San Juan Rivers below Silverton and in New Mexico, where no EPA action is contemplated. Thus,

---

[7] The decisions to which ER cites are factually inapposite. In *Cannon v. Gates*, the plaintiff's RCRA suit was indisputably a challenge to a removal action because the relief requested focused on property that was subject to an ongoing removal action, and would certainly have interfered with the government's remedial efforts and decision-making. 538 F.3d 1328, 1334 (10th Cir. 2008). Similarly, in *Reynolds v. Lujan*, the plaintiff's property was close to a landfill Superfund site and subject to a Remedial Investigation/Feasibility Study. 785 F. Supp. 152, 154-155 (D.N.M. 1992). The plaintiffs sought to force the agency overseeing the clean-up to conduct a comprehensive cleanup of their property. *Id.* Here, however, neither the Animas River nor the San Juan River, the subject of New Mexico's RCRA claim, is on the NPL, and no cleanup is underway for either waterway. In addition, New Mexico's RCRA suit against ER would not hinder EPA's activities at the Gold King Mine in any way because it seeks investigation and removal of contaminants from parts of the river that are dozens, even hundreds, of miles downstream from the Gold King Mine. (Compl. ¶ 93) Finally, in *New Mexico v. Gen. Electric Co.*, the State challenged the scope of CERCLA remedial actions based on EPA's failure to address a contaminant plume *beneath* the clean-up site. 467 F.3d 1223, 1240-1241 (10th Cir. 2006). The court dismissed the claim because the State had failed to prove such contamination existed. *Id.* By contrast, here, New Mexico points to direct evidence of contamination from the Gold King release in sediments in Durango, Colorado, and Aztec, New Mexico. (Compl. ¶ 90.)

[8] The bar in CERCLA § 113(h) governs the effect of 42 U.S.C. § 6972(b)(2)(B)(ii), which bars private citizen suits under§ 6972(a)(1)(B) if the EPA is involved with certain removal actions at a site. Congress, in enacting CERCLA § 113(h) *after* RCRA was enacted, made no mention of RCRA or its citizen-suit provisions. Thus, Congress likely contemplated RCRA when it enacted § 113(h) and wanted the same principle to apply for RCRA claims. New Mexico has alleged specific RCRA claims beyond the scope of EPA's removal action, and thus will not hinder or delay that limited removal action. *See Acme Printing Ink Co. v. Menard, Inc.*, 881 F. Supp. 1237, 1245 (E.D. Wis. 1995); *Fishel v. Westinghouse Elec. Corp.*, 617 F. Supp. 1531, 1539 (M.D. Pa. 1985) (allowing citizen suit addressing subsurface contamination and drinking water where EPA ordered removal of surface wastes).

New Mexico's RCRA claim does not "challenge" EPA's Removal Action and is not barred by 42 U.S.C. § 9613(h) or 42 U.S.C. § 6972(b)(2)(B)(ii).

## III.    CERCLA DOES NOT PREEMPT NEW MEXICO'S TORT CLAIMS.

ER tries to recast New Mexico's Fifth, Sixth, and Seventh Claims for Relief as claims for an "unrestricted award of money damages under state law for natural resource damages," and argues that such claims are preempted by CERCLA. However, New Mexico is not seeking natural resource damages in this lawsuit.[9] Instead, New Mexico seeks to recover money damages arising from economic impacts to the State caused by the spill, including lost tax revenue and stigma damages. (Compl. ¶¶ 92, 94) CERCLA does not preempt such damages.

CERCLA provides that states, Indian tribes, and the United States may recover "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury." 42 U.S.C. § 9607(a) and (f). Natural resources are "land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources . . . ." 42 U.S.C. § 9601(16). An injury to natural resource is a measurable adverse change in the chemical or physical quality or viability of that resource, and damages are asserted on the basis of loss or reduction services or benefits conferred by natural resources to either the ecosystem or human population. *See* 43 C.F.R. §§ 11.14(nn), .71(e); *see also Nat'l Ass'n of Mfrs. v. U.S. Dep't of the*

---

[9]In general, natural resource damages are "residual" to remediation efforts, meaning that they are based on "the difference between the natural resource in its pristine condition and the natural resource after the cleanup, together with the lost use values and the costs of the assessment." *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019, 1035 (D. Mass. 1989). New Mexico intends to seek natural resource damages in due course, when the projected results and anticipated duration of remedial efforts are known. However, Congress also intended natural resource damage assessments to be coordinated with remediation, where possible. *See* 42 U.S.C. § 9604(b)(2) (requiring EPA to notify natural resource trustees of potential damages to natural resources caused by released being investigated under CERCLA and to coordinate assessments, investigations, and planning). Therefore, New Mexico presently seeks assessment costs, as provided by CERCLA § 107(a)(2)(C) (42 U.S.C. § 9607(a)(2)(C). (Compl. ¶ 115.) *See also Confederated Tribes & Bands of the Yakama Nation v. United States*, 616 F. Supp. 2d 1094, 1097-1098 (E.D. Wash. 2007).

*Interior*, 134 F.3d 1095, 1098 n.3 (D.C. Cir. 1998). Natural resource damages under CERCLA do not include the economic, property and stigma damages New Mexico seeks in its Complaint.

In addition, Congress provided an explicit savings provision to ensure that damages and injuries not recoverable under CERCLA could still be recovered under other statutes and the common law. Section 114(a) states that "[n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." 42 U.S.C. § 9614(a). And section 302(d) states that "[n]othing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d); *see also PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617 (7th Cir. 1998). Courts have consistently found that state common law claims for damages and other relief not available under CERCLA are viable.[10]

In light of these saving clauses and "the spirit of cooperative federalism running throughout CERCLA and its regulations," the *General Electric* court held that "Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination." 467 F.3d at 1244. Rather, CERCLA provides "at most" for the availability of conflict

---

[10] *See, e.g., Bd. of Cnty. Comm'rs v. Brown Grp. Retail*, 598 F. Supp. 2d 1185, 1192–95 (D. Colo. 2009) (finding that claims including negligence, negligence per se, and strict liability for abnormally dangerous activities were not preempted because they provided for recovery not otherwise provided under CERCLA); *Quapaw Tribe v. Blue Tee Corp.*, No. CV 03-0846, 2009 WL 455260 at *6 (N.D. Okla. Feb. 23, 2009) (holding that plaintiffs could recover under state common law claims of nuisance, private nuisance, trespass, strict liability, and natural resource damages because any interference with CERCLA compliance was too remote); *City of Waukegan, Ill. v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1011 (N.D. Ill. 2008) (finding that CERCLA did not preempt claim under Illinois Water Pollutant Discharge Act); *S. Cal. Water Co. v. Aerojet–Gen. Corp.*, No. CV 02-6340, 2003 WL 25537163 at *6-7 (C.D. Cal. Apr. 1, 2003) (finding that CERCLA did not preempt state law claims for nuisance, trespass, and negligence per se). *General Electric Co.* is not on point. In this action, New Mexico is not suing for natural resource damages and its claims for damages are based on state law remedies not recoverable under CERCLA. *Cf.* 467 F.3d at 1242.

preemption as an affirmative defense.  *Id.*  Accordingly, the test for preemption in that case was whether the state's natural resource damage claims stood "as an obstacle to the accomplishment of congressional objectives as encompassed in CERCLA."  *Id.*

In this case, no conflict with CERCLA's natural resource damage provisions is implicated, because, New Mexico is not presently seeking natural resource damages.  And even if the State's claims could be properly characterized as natural resource damage claims (which they are not), no interference with CERCLA's objectives has been shown on the face of the Complaint.  New Mexico may seek economic damages without referring to or implicating a CERCLA remedy.  ER has thus failed to show that New Mexico's Fifth, Sixth, and Seventh Claims for Relief as alleged in the Complaint are preempted by CERCLA and its Motion should be denied related to those claims.

## IV.    ER IS NOT ENTITLED TO THE GOVERNMENT CONTRACTOR DEFENSE

ER argues that the GCD immunizes it from tort liability.  In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Supreme Court held that state law, which would hold the contractor liable, will be displaced when:  (1) the subject matter involves "uniquely federal interests"; and (2) "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' . . . or the application of state law would 'frustrate specific objectives' of federal legislation."  *Id.* at 512 (citations omitted).  If these two threshold requirements for displacement are met, the scope of the displacement is determined by three limiting factors:  (1) government approved specifications; (2) the contractor's conformity to those specifications; and (3) the contractor warning the government of dangers that it knew of, but which were unknown to the government.  The GCD is an affirmative defense that ER must

assert and prove by a preponderance of the evidence.  *See id.* at 513-514; *Densberger v. United Techs. Corp.,* 297 F.3d 66, 75 (2nd Cir.2002).

    A.    **Assuming, *Arguendo*, that ER is a Government Contractor, the GCD Does Not Apply to Environmental Contractors.**

In its Motion, ER assumes without discussion that it is entitled to the GCD.[11]  However, applicable case law does not support ER's assumption.  The Court's holding in *Boyle* was specifically limited to and framed in terms of the military context, *Id.* at 500, and its reasons for extending sovereign immunity to sellers of military equipment was based primarily on policy considerations unique to the military.  *Id.* at 511.  Lower courts both before and after *Boyle* have disagreed about whether the government contractor defense extends beyond military contracts, *see Andrews v. Unisys Corp.*, 936 F. Supp. 821, 830 (W.D. Okla. 1996) (citing cases), and the Tenth Circuit has not expanded *Boyle's* scope to preempt claims against all contractors who perform work for the government.[12]  If this Court were to extend the GCD to environmental contractors, it would be the first time that *Boyle* has been applied in this manner within the Tenth Circuit.[13]  *Boyle* expressly declined to address the question of extending federal immunity to non-government employees, *Boyle,* 487 U.S. at 505 n.1, and this Court should not extend that immunity here, particularly at the motion to dismiss stage before any discovery.

---

[11] As is discussed, *infra*, New Mexico contests whether ER has established, via the Complaint or otherwise, that it is, in fact, a government contractor within the meaning of *Boyle* or otherwise.  While allegations in a complaint may be deemed admissions against the party asserting them, *Guidry v. Sheet Metal Workers Int'l Ass'n,* 10 F.3d 700, 716 (10th Cir. 1993), they cannot be used by an opposing party to establish an affirmative defense except in very rare circumstances that ER has not established here. *See Burlington v. United Air Lines, Inc.*, 186 F. 3d 1301, 1310 n. 3 (10th Cir. 1999).

[12] Two district courts have applied identical claims applied *Boyle's* reasoning outside the military context, but only extended the defense to a private company that contracted with the United States Postal Service to design and manufacture a letter sorting machine. *Andrews*, 936 F. Supp. at 821; *Wisner v. Unisys Corp.*, 917 F. Supp. 1501, 1509 (D. Kan. 1996).

[13] Recognizing *Boyle's* narrow holding, one district court determined that the defense does not apply to a response action contractor. *See Amtreco, Inc. v. O.H. Materials, Inc.*, 802 F. Supp. 443, 445 (M.D. Ga. 1992).

**B.      Assuming, *Arguendo*, that the GCD Applies, ER Cannot Establish the Elements of the GCD as a Matter of Law.**

   *1.      EPA Has No "Unique Interest" in ER's Negligent Conduct.*

In *Boyle*, the Court stated that the federal government has a "unique interest" in the performance of its contracts. *Id.* at 504. New Mexico, however, alleges that ER was negligent by failing to follow its own outdated and expired 2014 Task Order/Statement of Work[14] and by violating the On Scene Coordinator's unambiguous instructions concerning the Gold King Mine operation. (Compl. ¶ 4) Specifically, New Mexico alleges that ER: (1) did not follow the only work plan publicly available, *to wit*, an expired 2014 Task Order, approved by EPA; (2) excavated toward the adit floor and removed adit blockage without the presence of a pump, hose, stinger pipe, and other water management equipment, in violation of its 2014 Task Order and the OSC's explicit instructions; (3) conducted these activities with an incomplete safety plan and inadequate site evaluation, in violation of its 2014 Task Order; and (4) did not attempt to mitigate the damage it created by backfilling the adit and plugging the "spring" after water started spurting out of the adit. (Compl. ¶¶ 4, 83-87). These allegations are more than enough for this Court to infer that ER's performance was negligent or reckless.[15]

   *2.      New Mexico's Tort Claims Do Not Significantly Conflict with EPA's Clean-up Actions or its Interests in Environmental Remediation.*

---

[14] As discussed, *supra*, the only publicly available Task Order, and the one purportedly relied upon by ER, is for work that was to be completed in 2014. While New Mexico contests the validity and applicability of an expired and outdated Task Order from 2014 to ER's activities more than a year later, for purposes of this Response, ER did not comply with its 2014 Task Order even if it somehow were deemed relevant.

[15] While New Mexico alleges that EPA and/or DRMS "directed and allowed" ER to dig into the portal, that general supervisory authority does not mean that ER complied with its contractual obligations, that its employees played no role in the decision to excavate the adit, or that its employees followed their supervisor's directives and instructions at all relevant times. The government has a strong interest that its contractors *follow* specifications and orders from supervising federal agents. But ER effectively argues that the actions of a government, no matter how negligent, egregious or reckless, are automatically immune simply because they were carried out pursuant to a government contract, even when the existence of that contract (i.e., the relevant task order) is a disputed issue of fact.

New Mexico's tort claims do not "significantly conflict" with EPA's interests in environmental remediation.   To the contrary, these doctrines further, rather than frustrate, CERCLA's remedial goals.   As explained in Part III, even though CERCLA does not allow for recovery of loss of property value, stigma damages, and economic injuries, such recovery complements the types of cost recovery available under the statute.   ER simply asserts, without argument, that imposing tort liability on ER would "unduly interfere with the EPA's contractual relationships with its contractors and inhibit clean-up operations" under CERCLA.   ER's bald assertions are simply incorrect and certainly do not meet its burden.

> 3.      *The GCD Only Protects Contractors Who Act Precisely as Directed by the Government, and ER Did Not Conform to EPA's Instructions or Directions.*

ER has not only failed to meet *Boyle's* threshold requirements for determining displacement of state law, but also has failed to meet the first two elements of the GCD:  (1) the United States approved reasonably precise specifications; and (2) the equipment conformed to those specifications.   *Boyle*, 487 U.S. at 512.   ER simply asserts that the first two elements are met because "the EPA allegedly provided 'precise specifications' (dig into the Gold King portal) and ER complied (it allegedly dug into the portal)."  (Mot. at 23)  Both statements are baffling.

First, ER asserts–without argument, authority, or factual support–that a broad command to dig into the portal is a "precise specification" within the meaning of *Boyle*.  It is not.  Second, New Mexico has specifically alleged that OSC Steven Way provided ER with specific instructions about the scope, manner, and timing of activities during his temporary absence, and that ER's conduct did *not* conform to those specifications.  (Compl. ¶¶ 83, 175.)  New Mexico has further alleged that any directions given by Griswold were contrary to Way's instructions. Besides referencing its general umbrella contract with EPA (which demonstrates nothing related

to the August 4th and 5th events or any work related to the Gold King Mine) and the July 29 email from OSC Steven Way to ER (which explicitly directed them not to excavate the adit and contradicts ER's assertions), ER has offered nothing to meet its factual burden of showing that it is entitled to the GCD.[16]   ER simply has not produced sufficient factual support to justify the GCD's application here, and that support is not established by the Complaint.

        4.      *ER May Not Assume Facts Alleged in the Complaint to Argue that EPA's Acts Fall within the Discretionary Function Exception to the Federal Tort Claims Act.*

ER argues that New Mexico's tort claims are barred by EPA's purported immunity under the discretionary function exception to the Federal Tort Claims Act ("FTCA").   The Supreme Court has set forth a two-part test to determine whether conduct is encompassed by the discretionary function exception and thereby immunized from FTCA liability.   *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).   First, the court must consider whether the challenged conduct was "a matter of judgment or choice for the acting employee."   *Id.*   If it was, then the court must consider whether it was the type of decision the discretionary function exception was designed to protect, namely one requiring the exercise of judgment based on considerations of public policy.   *Id.* at 536-37.

ER argues that the discretionary function exception applies to EPA's conduct because "EPA had to weigh numerous policy considerations when deciding what actions to perform at Gold King."   (Mot. at 21)   In making this claim, ER not only assumes facts absent from the Complaint, but also asks the Court to assume hotly-contested facts at the heart of this

---

[16] Far more information is needed before a determination on the GCD can be made.   What were ER's employees actually doing on August 5, 2015?   What documents supported their activities?   What were their contractual responsibilities, if any?   How were they supervised and by whom, and what was the scope of the supervision?   What were the structures of command, control and safety, and related protocols?   ER cannot use the absence of answers to these questions as the basis of a motion to dismiss.   *See, e.g., Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 17-19 (D.D.C. 2005).

controversy that will be the subject of extensive and necessary discovery.  There is absolutely no evidence or allegation in the Complaint to suggest that Mr. Griswold or other EPA officials considered any of these factors before they violated OSC Way's instructions and excavated into the adit blockage.  New Mexico specifically alleges that EPA's and ER's actions in the days leading up to the release *violated* OSC Way's clear verbal and emailed instructions and any thoughtful discretion exercised by the agency.  Moreover, ER's conduct was in direct violation of its 2014 Task Order.[17]  Here, without the benefit of discovery, it is entirely premature to try to determine what, if any, policy considerations may have been involved.  Regardless, once a government agency or agent makes a policy decision shielded by the discretionary function exception (which New Mexico does not concede happened here), its employees and contractors *must* follow that decision and *proceed with care* in its implementation.  *Berkovitz*, 486 U.S. at 538 n.3.  Even assuming that policy considerations were made here, the Complaint clearly alleges that ER did not follow those decisions and certainly did not proceed with care in their implementation.  (Compl. ¶¶ 83, 175)  ER's Motion should be denied related to the GCD and the discretionary function exception.

## V.      ER'S RULE 12(f) MOTION TO STRIKE SHOULD BE DENIED BECAUSE IT IS IMPROPERLY RAISED AND WASTES JUDICIAL RESOURCES.

New Mexico alleges in its Complaint that ER is subject to joint and several liability for damages arising from its state law claims.  (Compl. ¶¶ 8, 153, 155, 167, 169, 177, Prayer No. 8.) ER disputes those legal conclusions and moves, pursuant to Rule 12(f), to strike all allegations in New Mexico's Complaint referring to ER's joint and several liability arising out of state causes of action.  (Mot. at 23.)  Rule 12(f) permits the court to "strike from a pleading an insufficient

---

[17] If that task order could somehow be found to be applicable to ER's activities more than a year later.

defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. PROC. 12(f). Motions to strike, however, are disfavored and courts should deny them "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy." *See Lane v. Page*, 272 F.R.D. 581, 591 (D.N.M. 2011) (citations omitted); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.*, § 1382 (3d ed. 2004); *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.*, No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010). ER does not claim in its Motion that New Mexico's allegations are "redundant, immaterial, impertinent, or scandalous. . . ."

Ultimately, the decision to grant a motion to strike is within the sound discretion of the district court. *See Burget*, 2009 WL 4807619, *1 (citation omitted). However, "[p]leadings must be construed so as to do justice." FED. R. CIV. PROC. 8(e). Accordingly, Rule 12(f) motions to strike should only be granted where a court is "convinced that there are no questions of fact, *that any questions of law are clear and not in dispute*, and that under no set of circumstances could the defenses succeed." *Lane*, 272 F.R.D. at 587 (quotations omitted).

Here, in support of its request to strike, ER relies upon a single district court case out of Ohio, in which an *unopposed* motion to strike a complaint's prayer for joint and several liability was granted, due to the clear legal deficiency of the claim. *See Nitzsche v. Stein, Inc.*, 797 F. Supp. 595, 596, 601 (N.D. Ohio 1992). Despite the lack of controlling authority in support of its Motion, ER asks the Court to grant this drastic, generally disfavored remedy despite the prayer's clear "relation or logical connection to the subject matter of the controversy." *See Lane* 272 F.R.D. at 587. This multistate lawsuit implicates a conflict between the laws of New Mexico and Colorado. Whether applicable choice of law rules compel the application of New Mexico or

Colorado law to claims asserted by New Mexico for damages it suffered within New Mexico is a disputed question of law in this case. ER should not be allowed to decide the outcome of this thorny issue (without establishing the facts necessary to make that determination) by declaring it so and invoking Rule 12(f) to strike New Mexico's prayer for joint and several liability.[18] When the facts relevant to the conflicts analysis are discovered and before the Court, the parties should together seek the Court's ruling on the law applicable to New Mexico's claims. Accordingly, ER's Rule 12(f) motion to strike should be denied because it raises questions of law that are disputed, unclear, and which have a logical connection to the subject matter of this lawsuit.

## CONCLUSION

Based upon the foregoing arguments and authorities cited herein, Plaintiff, the State of New Mexico by and through the New Mexico Environment Department, respectfully requests that the Court deny Defendant Environmental Restoration LLC's Motion to Dismiss and Motion to Strike (Doc. 32), and for such other and further relief, at law or in equity, to which it may be entitled.

---

[18] New Mexico vigorously disputes ER's novel theory, based on *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805 (1987), that because the "Release" originated in Colorado—which has abolished joint and several liability by statute—ER "cannot be held jointly and severally liable for any damages based on [New Mexico's] tort causes of action." In *Ouellette*, the Supreme Court held that the Clean Water Act (CWA) preempted certain common law causes of action against a private actor in one state (the affected state) against a private polluter in another state (the source state) because such suits would disrupt the CWA's regulatory scheme. 479 U.S. at 499. However, the Court further held that "[t]he [CWA] savings clause specifically preserves other state actions, and therefore nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State." *Id.* at 498. As the CWA's savings clause applies on its face only to "state actions," it is unclear whether the limited holding in *Ouellette* extends to issues of apportionment of liability, as ER contends. Furthermore, given that liability under the CWA is joint and several, application of Colorado's comparative fault regime would arguably conflict with the Act's regulatory scheme, and thus thwart the objectives that the Court in *Ouellette* sought to avoid. It is also unclear if *Ouellette*'s holding applies to sovereign entities such as New Mexico. Finally, ER's three million gallon release was certainly not permitted under the CWA, and the application of *Oullette* is questionable at best. None of the cases ER cites in its Motion address these issues, all of which raise genuine questions of law that are disputed.

Dated: August 1, 2016

Respectfully submitted,

John D.S. Gilmour
NM Fed Bar. 16-101
Jackson Gilmour & Dobbs, PC
515 Post Oak Blvd., Suite 900
Houston, TX 77027
Telephone:    (713) 355-5005
Facsimile:     (713) 355-5001
Email:          jgilmour@jgdpc.com

Hector Balderas
Attorney General of New Mexico
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
Telephone:    (505) 827-6000
Facsimile:     (505) 827-5826

Marcus J. Rael, Jr.
Robles, Rael & Anaya, P.C.
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102
Telephone:    (505) 242-2228
Facsimile:     (505) 242-1106
Email:          marcus@roblesrael.com

*Counsel for Plaintiff the State of New Mexico*
*by and through the New Mexico Environment Department*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing instrument has been directed to all

counsel of record and/or all interested parties by ECF and/or electronic mail on this the 1st day of

August, 2016.

John D.S. Gilmour