IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,            No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to All Cases*

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Federal Defendants' Motion to Dismiss and Incorporated Memorandum in Support Thereof, Doc. 44, filed July 25, 2018 ("First Motion"),[1] and on the Federal Defendants' Motion to Dismiss and Incorporated Memorandum in Support, Doc. 114, filed November 1, 2018 ("Second Motion").[2] For the reasons stated below, the Court **DENIES** the First Motion and **DENIES** the Second Motion in large part.

**Cost Recovery and Declaratory Judgment Under CERCLA**

The State of New Mexico ("New Mexico"), the State of Utah ("Utah"), and the Navajo Nation seek to recover the costs of their responses to the Gold King Mine Release pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 (listing persons liable for recoverable costs). *See* State of New Mexico's First Amended Complaint at 48, Doc. 8, filed May 11, 2018 ("NM FAC"); Utah's First Amended Complaint at 22, Doc. 93, filed January 4, 2018, in *Utah v. Environmental Restoration, LLC*., No. 18cv319 WJ (D.N.M.) ("UT FAC"); Navajo Nation's First Amended Complaint at 46, Doc. 7, filed May 11, 2018 ("NN FAC"). They also seek a declaratory judgment on liability for response costs that will be binding on any subsequent actions to recover further response costs. *See* 42 U.S.C. § 9613(g)(2) (in an action to recover costs under 42 U.S.C. § 9607 "the court shall

---

[1] Motion to dismiss the claims asserted by the State of New Mexico, No. 16cv465, the State of Utah, No. 18cv319, the Navajo Nation, No. 16cv931, and the McDaniel Plaintiffs, 17cv710.
[2] Motion to dismiss the claims asserted by the Allen Plaintiffs, 18cv744.

enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages").

The Federal Defendants seek dismissal of those claims on the grounds that Defendant Environmental Protection Agency ("EPA") retains sovereign immunity when responding to a release or threat of release of a hazardous substance caused by others, and that Plaintiffs' allegations fail to state a claim for relief against EPA under CERCLA because they have not adequately alleged that EPA is liable as an "operator," "arranger," or "transporter."

CERCLA's Waiver of Sovereign Immunity

The plain language of CERCLA waives the federal government's sovereign immunity. CERCLA's waiver of sovereign immunity states:

> Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title.

42 U.S.C. § 9620(a)(1).

Three circuit courts have rejected the proposition that Section 9620 does not waive of sovereign immunity "for response actions when such actions are EPA's *sole* connection to the site." *See U.S. v. Shell Oil Co.*, 294 F.3d 1045, 1053 (9th Cir. 2002) ("the United States has repeatedly been held liable under CERCLA for acts that cannot possibly be characterized as 'nongovernmental';" "the United States is liable under [42 U.S.C. § 9607] only when it qualifies as an owner or operator of a facility, an arranger of waste disposal, or an entity that accepts waste for treatment or disposal"); *East Bay Mun. Utility Dist. V. U.S. Dept. of Commerce*, 142 F.3d 479, 482 (D.C. Cir. 1998) (Section 9620(a)(1) "does not on its face suggest a distinction between the exercise of private (what we are calling 'proprietary') and regulatory powers"); *FMC Corp.*

*v. U.S. Dept. of Commerce*, 29 F.3d 833, 840 (3d Cir. 1994) ("the government can be liable when it engages in regulatory activities extensive enough to make it an operator of a facility or an arranger of the disposal of hazardous wastes even though no private party could engage in the regulatory activities at issue").

CERCLA addresses the liability of persons conducting response actions that result in costs or damages:

> Except as provided in paragraph (2), no person shall be liable under this subchapter for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan ("NCP") or at the direction of an onscene coordinator appointed under such plan, with respect to an incident creating a danger to public health or welfare or the environment as a result of any releases of a hazardous substance or the threat thereof. *This paragraph shall not preclude liability for costs or damages as the result of negligence on the part of such person.*

42 U.S.C. § 9607(d)(1) (*emphasis added*). Section "9607 confers a defense upon parties 'for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan,' unless such actions are negligent." *U.S. v. Shell Oil Co.*, 294 F.3d 1045, 1053-54 (9th Cir. 2002); *see also East Bay Mun. Utility Dist. V. U.S. Dept. of Commerce*, 142 F.3d 479, 483 (D.C. Cir. 1998) ("§ 9607(d)(1) of the Act confers a defense on 'all persons' 'for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan,' but does 'not preclude liability for costs or damages as the result of negligence'").

<u>CERCLA Liability</u>

Section 9607 establishes that owners or operators of a facility, arrangers of waste disposal or treatment, and persons who accept waste for transport to disposal or treatment facilities:

> shall be liable for—

**(A)** all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

**(B)** any other necessary costs of response incurred by any other person consistent with the national contingency plan;

**(C)** damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

**(D)** the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a).

<u>Operator Liability</u>

The Supreme Court of the United States noted the "uselessness of CERCLA's definition of a facility's 'operator' as 'any person … operating' the facility," and gave the term "operator" its "ordinary or natural meaning:"

> [U]nder CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998); *Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (quoting the sharpened definition in *Bestfoods*). "[T]he government can be liable when it engages in regulatory activities extensive enough to make it an operator of a facility or an arranger of the disposal of hazardous wastes even though no private party could engage in the regulatory activities at issue." *FMC Corp. v. U.S. Dept. of Commerce*, 29 F.3d 833, 840 (3d Cir. 1994); *see also Burlington Northern v. Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (stating that CERCLA "was designed to promote the

'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination").

The Sovereign Plaintiffs' Complaints state claims for operator liability because they allege that EPA managed, directed, or conducted operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations:

(i) EPA issued Task Order which "sought a work plan from Environmental Restoration aimed at disposing of the acid mine drainage," and setting forth how the work was to be performed. *See* NM FAC ¶¶ 77-78; NN FAC ¶¶ 67-72; UT FAC ¶¶ 35-38.

(ii) EPA halted excavation activities in 2014 after determining that draining the mine would require larger settling ponds and additional treatment. *See* NM FAC ¶ 82; NN FAC ¶ 80; UT FAC ¶ 41.

(iii) EPA visited the site several times with its contractors before excavation began to assess site conditions and drainage flows, and to prepare for the future work. *See* NM FAC ¶ 90; NN FAC ¶¶ 84, 92; UT FAC ¶¶ 41-42.

(iv) Before going on vacation an EPA supervisor "emailed specific instructions about the scope and timing of work at the Gold King Mine site" to its contractors and was replaced by a temporary EPA supervisor. *See* NM FAC ¶¶ 93-94; NN FAC ¶¶ 96-97; UT FAC ¶ 43.

<u>Arranger Liability</u>

"Because CERCLA does not specifically define what it means to 'arrang[e] for' disposal of a hazardous substance," the Supreme Court of the United States "give[s] the phrase its

ordinary meaning:" "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern v. Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009).

The Sovereign Plaintiffs' Complaints state claims for arranger liability because they allege that EPA took intentional steps to dispose of a hazardous substance:

(i) After halting work in 2014 EPA determined that draining the Gold King Mine would require larger settling ponds and additional treatment. *See* NM FAC ¶ 82; NN FAC ¶ 82; UT FAC ¶ 41.

(ii) EPA installed two new drain pipes to drain water from the adit. *See* NM FAC ¶ ; NN FAC ¶ 83.

(iii) In 2015 EPA and its contractors collected water samples, measured the flow from the adit, and discussed a plan to install a sump basin to treat water that would be pumped out of the mine. *See* NM FAC ¶ 90; NN FAC ¶ 94.

(iv) EPA prepared a report stating that drainage would need to be managed in a larger settling pond requiring additional treatment. *See* NM FAC ¶ 82; NN FAC ¶ 85; UT FAC ¶ 41.

(v) EPA sent its contractor a list of anticipated tasks which included preparing water treatment plans. *See* NM FAC ¶ 88; NN FAC ¶ 87.

(vi) EPA and its contractors graded the surface of the waste dump, and started constructing a water management and treatment system to handle discharges from the mine. *See* NM FAC ¶ 91.

<u>Transporter Liability</u>

Transporter liability arises when "any person accepts … any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(4).

The Sovereign Plaintiffs' Complaints state claims for transporter liability because they allege that EPA took steps to drain the mine and treat the water at the site.

Conclusion

The Court concludes that CERCLA has waived sovereign immunity and finds that the Sovereign Plaintiff's Complaints state claims against EPA for operator, arranger and transporter liability. The Court denies that portion of the Federal Defendants' motions to dismiss the Sovereign Plaintiff's claims to recover their response costs and for a declaratory judgment regarding liability for further response costs.

**Tort Claims Against the United States**

Plaintiffs have asserted causes of action against the United States for various torts including negligence, nuisance, and trespass.

The Federal Tort Claims Act ("FTCA") waives sovereign immunity for actions against the United States resulting from injuries caused by the negligent acts of governmental employees while acting in the scope of their employment:

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). This waiver of immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) ("discretionary function exception").

To determine whether conduct falls within the discretionary function exception, the Court applies the two-part test set forth by the Supreme Court in *Berkovitz v. United States,* 486 U.S. 531, 536 (1988).

> First, we ascertain the precise governmental conduct at issue and consider whether that conduct was "discretionary," meaning whether it was "a matter of judgment or choice for the acting employee." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. Conduct is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Id.*
>
> If the first element of the *Berkovitz* test is satisfied, we then consider the second element—whether the decision in question is one requiring the exercise of judgment based on considerations of public policy. *Id.* at 536–37, 108 S.Ct. 1954. In so doing, we do not consider the employee's "subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).
>
> If both the first and second elements of the *Berkovitz* test are met, the discretionary function exception to the waiver of sovereign immunity applies. Stated another way, if a plaintiff can establish that either element is not met, the plaintiff may proceed because the exception does not apply. *Sydnes v. United States,* 523 F.3d 1179, 1183 (10th Cir.2008).

*Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008). "[A] government agent's discretionary actions are [presumed to be] grounded in policy, and it is up to the challenger to allege facts showing that the actions were actually not policy-oriented." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016) (citing *United States v. Gaubert*, 499 U.S. 315 (1991).

The Sovereign Plaintiffs argue that the discretionary function exception does not apply here because EPA violated applicable mandatory EPA and OSHA regulations regarding excavation stability, working in excavations in which there is accumulated water, prevention of accidental collapse of excavations, inspections of excavations, training workers to deal with expected emergencies, health and safety plans, and the protection of workers from uncontrolled releases of impounded water in abandoned mine workings. Doc. 61 at 61-69.

The Federal Defendants contend that the Sovereign Plaintiffs have not identified any specific and mandatory obligations that removed EPA's discretion. Doc. 76 at 28-35. The Federal Defendants state that the regulations "do not prescribe a specific course of conduct, through a fixed or readily ascertainable standard, for any EPA employee at the site." Doc. 76 at 31.

The Sovereign Plaintiffs do, however, state that "EPA failed to adequately train workers on site to deal with 'expected emergencies' like the blowout of hazardous acid mine drainage that occurred on August 5, 2015, as required by 29 C.F.R. § 1910.120(e)(7)." That regulation provides: "Employees who are engaged in responding to hazardous emergency situations at hazardous waste clean-up sites that may expose them to hazardous substances shall be trained in how to respond to such expected emergencies." 29 C.F.R. § 1910.120(e)(7). The Sovereign Plaintiffs also state "it is not clear that EPA performed any training at all," that "[n]o one disputes that § 1910.120(e)(7) specifically mandates at least *some* training, and Sovereign Plaintiffs are entitled to discover whether EPA conducted any training whatsoever." Doc. 61 at 66.

The Federal Defendants also state that the Sovereign Plaintiffs have claimed tort damages that are not jurisdictionally cognizable under the FTCA where the Sovereign Plaintiffs seek

9

remote damages, damages for interference with contract rights and lost business, injunctive relief and natural resource damages. Doc. 44 at 78-85. The Court denies the Federal Defendants' motion to dismiss the Sovereign Plaintiffs' claims based on the alleged requested relief because "a district court cannot dismiss a claim solely because a plaintiff seeks excessive or otherwise inappropriate relief." *EEOC v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1175 (10th Cir. 2017).

The Court denies the motion to dismiss the tort claims against the Federal Defendants at this time to allow the Sovereign Plaintiffs an opportunity to discovery regarding the discretionary function exception.

**Jurisdiction over CWA and RCRA Claims**

The State of Utah ("Utah") and the State of New Mexico ("New Mexico") seek injunctive relief against the United States Environmental Protection Agency ("EPA") and its Administrator pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1365(h). *See* UT FAC at 22; NM FAC at 48. Utah claims it "is authorized to compel the EPA Administrator to abate the pollutants released in the Blowout that have contaminated soil, sediment, and water within the State of Utah." UT FAC at 23. New Mexico claims it is authorized "to compel the Administrator of EPA to abate pollution from the hundreds of inactive and abandoned mines that discharge pollutants into the Animas River in Colorado and adversely affect the public health and environment in New Mexico." NM FAC at 50.

Utah also seeks injunctive relief against the United States Environmental Protection Agency ("EPA") and its Administrator pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B). *See* UT FAC at 20. Utah asserts that it:

> is entitled to entry of an injunction that may require, among other things, a full investigation and remediation of the contamination in the State of Utah caused by

the Blowout, including but not limited to the San Juan River and Lake Powell, and the full recovery of its attorney fees and costs.

UT FAC at 22.

Both the CWA and RCRA have provisions regarding citizen suits. The CWA's provision states:

> A Governor of a State may commence a civil action under subsection (a), without regard to the limitations of subsection (b) of this section, against the Administrator where there is alleged a failure of the Administrator to enforce an effluent standard or limitation under this chapter the violation of which is occurring in another State and is causing an adverse effect on the public health or welfare in his State, or is causing a violation of any water quality requirement in his State.

33 U.S.C. § 1365(h). RCRA's provision authorizes citizen suits:

> against any person, including the United States and any other governmental instrumentality or agency . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B).

CERCLA, however, limits when the Court has jurisdiction over claims made pursuant to CWA or RCRA: "No Federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under section 9604 of this title . . . except" in certain actions. 42 U.S.C. § 9613(h). *See Cannon v. Gates*, 538 F.3d 1328, 1334-35 (10th Cir. 2008) ("The statutory definition of a removal action dictates that a removal action is ongoing and thus, § 9613(h)'s jurisdiction strip applies, even if the Government has only begun to 'monitor, assess, and evaluate the release or threat of release of hazardous substances;'" "a suit challenges a removal action if it 'interferes with the implementation of a CERCLA remedy' because 'the relief requested will impact the [removal] action selected'").

RCRA also contains a provision limiting the Court's jurisdiction over RCRA claims:

> No action may be commenced . . . if the [EPA] Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment--
> . . .
> **(ii)** is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604];
>
> **(iii)** has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C.A. § 9601 et seq.]

42 U.S.C. § 6972(b)(2)(B)(ii, iii).

The Federal Defendants' motion to dismiss the CWA and RCRA claims for lack of jurisdiction takes the form of a factual attack.[3] *See* Federal Defendants' Motion to Dismiss and Incorporated Memorandum in Support Thereof at 28, Doc. 44, filed July 25, 2018 ("this motion facially challenges Plaintiffs' assertions of subject matter jurisdiction" "[e]xcept for the arguments" regarding jurisdiction over the Sovereign Plaintiffs' CWA and RCRA claims).

The Court notes that at the June 19, 2018, Initial Conference counsel for the United States stated: "We don't think the discovery is necessary. We will challenge the complaints facially on the basis of the allegations in the complaint." Transcript at 32:18-20, Doc. 35, filed June 26, 2018. After counsel for the Navajo Nation and Utah suggested jurisdictional discovery might be needed, counsel for the United States stated: "our motions will be accepting the

---

[3] A Rule 12(b)(1) motion "to dismiss for lack of subject matter jurisdiction take[s] two forms:" either a "facial" or a "factual" attack. *Holt,* 46 F.3d at 1002. A "facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint," and in reviewing a facial attack "a district court must accept the allegations in the complaint as true." *Id.* In reviewing a factual attack, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends," which does not allow a reviewing court to "presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. Instead, it gives the court "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

*Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (quoting *Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995)).

allegations of the plaintiffs' complaint as true. So it will be a facial Rule 12(b)(1) motion. We're not going to be raising disputed issues of fact in the federal defendants' motion." Transcript at 34:6-12, 35:4-13, 36:10-13.

The Federal Defendants' Rule 12(b)(1) motion raises disputed issues of fact. The Federal Defendants filed the Declaration of EPA's lead Remedial Project Manager for EPA's Region 8 Superfund Remedial Program at the Bonita Peak Mining District Superfund Site in southwestern Colorado to show that EPA is performing remedial and removal actions and has incurred costs in its Remedial Investigation and Feasibility Study of the Bonita Peak Mining District which includes the Gold King Mine. The Declaration states: (i) The precise geographical boundaries of the Bonita Peak Mining District Superfund Site have not been specified "because the Site boundaries will be determined based on investigations regarding the extent of the release and the risks posed by the release. The Site potentially extends to wherever contamination from that commingled release comes to be located;" (ii) "Until the investigatory work is completed, the scope of the Site, nature and extent of the contamination, and the response actions necessary to address the risks posed by historical and ongoing releases cannot be fully defined;" (iii) The "EPA Office of Research and Development has been studying the fate and transport of contaminants from the August 5, 2015, release from the Gold King Mine . . . and issued a report in January 2017 documenting that the data suggests that the contamination from the God King Mine release has come to be located in Lake Powell. Whether remedial action is warranted at each area where contamination has come to be located is a question that is addressed during the Remedial Investigation;" and (iv) "On June 14, 2018, EPA published a proposed plan for interim remedial actions at the [Bonita Peak Mining District] Site." EPA solicited comments on the proposed plan and, after considering the comments, "will determine whether to move ahead with

the preferred alternative as written, modify it, or develop other interim remedial actions." Declaration of Rebecca Thomas at 3-4, Doc. 44-5, filed July 25, 2018.[4]

The Sovereign Plaintiffs assert that the Court has jurisdiction over New Mexico and Utah's CWA claims and Utah's RCRA claim because they do not challenge EPA's remedial action at the Bonita Peak Mining District. *See* Sovereign Plaintiffs' Response at 20-25, Doc. 61, filed August 31, 2018. Utah filed the Declaration of the Director of the Division of Environmental Response and Remediation in the Utah Department of Environmental Quality, which is the coordinating entity for federal actions under CERCLA. The Declaration states: (i) "EPA has proposed a plan to initiate an interim remedial action at [the Bonita Peak Mining District] site and the State of Utah has provided comments on the proposed plan. EPA's plan does not provide for any remedial action in the State of Utah. I am aware of no plan or timetable for EPA to begin remedial action in the State of Utah;" and (ii) "I have received no notice from EPA that it has commenced any removal or remedial action related to the Gold King Mine blowout in the State of Utah." Declaration of Brent H. Everett at 1-2, Doc. 60, filed August 31, 2018.

The Court denies the Federal Defendants' Motion to dismiss the Sovereign Plaintiffs' CWA and RCRA claims for lack of subject-matter jurisdiction because the Federal Defendants have factually challenged Plaintiffs' assertion of subject-matter jurisdiction, after indicating during the Initial Conference that they would only make facial challenges, using facts that are disputed by the Sovereign Plaintiffs. The Federal Defendants may file a motion for summary

---

[4] The Sovereign Plaintiffs cite a Declaration of Rebecca Thomas that was signed on September 28, 2017. *See* Doc. 46-3, filed July 25, 2018. The Declaration of Rebecca Thomas filed with the Federal Defendants' Motion to dismiss was signed on July 24, 2018. *See* Doc. 44-5, filed July 25, 2018.

judgment regarding jurisdiction over the Sovereign Plaintiffs' CWA and RCRA claims after jurisdictional discovery.

**Federal Defendants Second Motion to Dismiss the Allen Complaint**

On August 3, 2018, after the Federal Defendants filed their First Motion to Dismiss, members of the Navajo Nation and residents of New Mexico, Colorado, Arizona and Utah, who farm land and/or raise livestock adjacent to the Animas River or the San Juan River, filed a Complaint in *Allen v. United States*, 18cv744 WJ/KK, ("Allen Complaint"), asserting tort claims arising from the August 5, 2015, release from the Gold King Mine.

The Federal Defendants then filed their Second Motion to Dismiss the Allen Complaint on two grounds: (i) EPA is not an appropriate party under the Federal Tort Claims Act ("FTCA"); and (ii) the FTCA's discretionary function exception bars Plaintiffs' claims against the United States.

The Federal Defendants move to dismiss the Allen Plaintiffs' tort claims against EPA because the only proper party in an FTCA action is the United States, not the federal agency. First Motion at 2, Doc. 114, filed November 1, 2018. In their Response, the Allen Plaintiffs "concede the Federal Defendants' argument that this Court lacks jurisdiction over the Allen Plaintiffs' tort claims against EPA because EPA is not an appropriate party under the FTCA," and "stipulate to a dismissal of their claims against the EPA." Doc. 126 at 2, filed November 15, 2018. The Court grants the Federal Defendants' motion to dismiss the Allen Plaintiffs' tort claims against EPA.

The Court denies that portion of the Federal Defendants motion to dismiss the Allen Plaintiffs' tort claims against the United States. The Federal Defendants argue that the discretionary function exception bars the Allen Plaintiffs' tort claims. As discussed above, the

15

Court denied the Federal Defendants' First Motion to dismiss the tort claims against the Federal Defendants to allow the Sovereign Plaintiffs an opportunity to discovery regarding the discretionary function exception.

**THEREFORE, IT IS ORDERED** that for the above stated reasons:

(i) The Federal Defendants' Motion to Dismiss and Incorporated Memorandum in Support Thereof, Doc. 44, filed July 25, 2018, is **DENIED.**

(ii) The Federal Defendants' Motion to Dismiss and Incorporated Memorandum in Support, Doc. 114, filed November 1, 2018, is **GRANTED in part** and **DENIED in part.**

_____
**WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE**