# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                              No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*   No. 1:16-cv-00465-WJ-LF
                              No. 1:16-cv-00931-WJ-LF
                              No. 1:17-cv-00710-WJ-SCY
                              No. 1:18-cv-00319-WJ

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on EPA Contractor Defendants' Motion to Dismiss and Motion to Strike, Doc. 45, filed July 25, 2018. For the reasons stated below, the Motion is **GRANTED in part** and **DENIED in part.**

**Jurisdiction over State Law Claims**

The EPA Contractor Defendants, Weston Solutions, Inc. ("Weston") and Environmental Restoration, LLCC ("ER"), "move to dismiss Plaintiffs' state law claims for lack of subject matter jurisdiction pursuant to Section 113(h) of CERCLA, which revokes federal court jurisdiction over challenges to ongoing EPA response actions, like the ongoing remediation at the BPMD [Bonita Peak Mining District] Site." Doc. 46 at 25. CERCLA provides, in relevant part: "No Federal court shall have jurisdiction . . . under State law . . . to review any challenges to removal or remedial action selected under section 9604 of this title." 42 U.S.C. § 9613(h). *See Cannon v. Gates*, 538 F.3d 1328, 1334-35 (10th Cir. 2008) ("The statutory definition of a removal action dictates that a removal action is ongoing and thus, § 9613(h)'s jurisdiction strip applies, even if the Government has only begun to 'monitor, assess, and evaluate the release or threat of release of hazardous substances;'" "a suit challenges a removal action if it 'interferes with the implementation of a CERCLA remedy' because 'the relief requested will impact the [removal] action selected'").

The EPA Contractor Defendants assert that "EPA's response actions at the BPMD Site are sufficient to trigger Section 113(h)" and support their assertion with the Declaration of Rebecca J. Thomas, the lead Remedial Project Manager for EPA's Region 8 Superfund Remedial Program at the Bonita Peak Mining District Superfund Site. *See* Doc. 46 at 27-28. The Declaration of Rebecca J. Thomas states that the boundaries of the BPMD site have not been determined, may "potentially [extend] to wherever contamination from these sources comes to be located," and "will be determined based on investigation regarding the extent of the release and the risks posed by the release." Doc. 46-3 at 2, ¶ 6.

New Mexico and Utah have alleged that EPA has not commenced, and has not decided whether it will ever commence, any remedial actions in the Sovereign Plaintiffs' territories. *See* NM FAC ¶ 119 ("EPA's site boundary entirely excludes the Animas River"); UT FAC ¶ 63 ("EPA is not and has not engaged in a removal action in the State of Utah"). At the June 19, 2018, Initial Conference counsel for the Navajo Nation and Utah suggested jurisdictional discovery might be needed. Transcript at 34:6-12, 35:4-13, Doc. 35, filed June 26, 2018.

The Court denies the EPA Contractors' motion to dismiss Plaintiffs' state law claims for lack of subject matter jurisdiction pursuant to Section 113(h) of CERCLA because the EPA Contractor Defendants have factually challenged Plaintiffs' assertion of subject-matter jurisdiction using facts that are disputed by the Sovereign Plaintiffs. *See* Doc. 164 at 14-15, filed February 28, 2019 (denying the Federal Defendants' motion to dismiss pursuant to 42 U.S.C. § 9613(h), which "prevents a court from interfering with an ongoing removal action," to allow for jurisdictional discovery). The EPA Contractor Defendants may file a motion regarding jurisdiction over the Sovereign Plaintiffs' state law claims after jurisdictional discovery.

**CERCLA Preemption of State Law Claims**

The EPA Contractor Defendants assert the "Court should dismiss each of Plaintiffs' state law tort claims on the grounds that their state law claims for damages are preempted by CERCLA's comprehensive remedial scheme." Doc. 46 at 31. The EPA Contractor Defendants state that "conflict preemption acts as a bar to claims seeking the same recovery as allowed by CERCLA's comprehensive framework," that "CERCLA preempts Plaintiffs' claims requesting an unrestricted award of money damages," and that " CERCLA's savings clause does not permit liability for lawful removal actions at the Gold King Mine, thus Plaintiffs' common law claims must be dismissed." Doc. 46 at 31-34.

The Court will not dismiss Plaintiffs' common law claims at this time. As discussed above, it is not clear at this point what the remedial scheme is for the Sovereign Plaintiffs' territories. While CERCLA's savings clauses may not permit liability for "lawful" removal actions, it does not appear that CERCLA completely preempts liability for response contractors. *See New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006) ("Given these saving clauses,[1] as well as the spirit of cooperative federalism running throughout CERCLA and its regulations, we may safely say Congress did not intend CERCLA to completely preempt state laws related to hazardous waste contamination"). Furthermore, a "district court cannot dismiss a claim solely because a plaintiff seeks excessive or otherwise inappropriate relief." *EEOC v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1175 (10th Cir. 2017).

**Cost Recovery and Declaratory Judgment Under CERCLA**

---

[1] 42 U.S.C. § 9614(a) ("Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State").
42 U.S.C. § 9652(d) ("Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants").

The EPA Contractor Defendants seek dismissal of the claims for cost recovery damages under CERCLA on the grounds that Plaintiffs' allegations fail to state a claim for relief under CERCLA because they have not adequately alleged that the EPA Contractor Defendants are liable as an "operator," "arranger," or "transporter."

CERCLA Liability

Section 9607 establishes that owners or operators of a facility, arrangers of waste disposal or treatment, and persons who accepts waste for transport to disposal or treatment facilities:

> shall be liable for—
>
> **(A)** all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> **(B)** any other necessary costs of response incurred by any other person consistent with the national contingency plan;
>
> **(C)** damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> **(D)** the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a).

Operator Liability

The Supreme Court of the United States noted the "uselessness of CERCLA's definition of a facility's 'operator' as 'any person … operating' the facility," and gave the term "operator" its "ordinary or natural meaning:"

> [U]nder CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

4

*United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998); *Raytheon Constructors, Inc. v. Asarco Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003) (noting that in *Bestfoods*, the Supreme Court sharpened the definition of "operator" for purposes of CERCLA's concern with environmental contamination, and quoting the sharpened definition in *Bestfoods*).

The Sovereign Plaintiffs' Complaints state claims for operator liability because they allege that the EPA Contractor Defendants managed, directed, or conducted operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations:

(i) ER and Weston "had authority to control reclamation and remediation activities at the site," "had authority to control and did control, manage, direct, and implement the conduct of those working on-site," and "had independent authority and control to perform their duties and take the necessary actions to perform their work." NM FAC ¶ 127; NN FAC ¶ 153; UT FAC ¶ 36.

(ii) ER's Statement of Work stated: ER "will conduct operations in management of surface and underground work activities to include construction & maintenance of repository, retention pond & water treatment." NM FAC ¶ 78; NN FAC ¶ 73.

(iii) Weston "was "responsible for overseeing [and managing] the water treatment operations." NN FAC ¶ 78.

(iv) Weston's "anticipated tasks" included "prepar[ing] water treatment plans for managing water impounded behind the adit portal" and "document[ing] activities during the portal opening and construction." NN FAC ¶ 87; NM FAC ¶ 88.

<u>Arranger Liability</u>

5

"Because CERCLA does not specifically define what it means to 'arrang[e] for' disposal of a hazardous substance," the Supreme Court of the United States "give[s] the phrase its ordinary meaning:" "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern v. Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009).

The Sovereign Plaintiffs' Complaints state claims for arranger liability because they allege that the EPA Contractor Defendants took intentional steps to dispose of a hazardous substance:

(i) ER "submitted an 'Action/Work Plan,' which included sub-contracting with Harrison Western to excavate the mine. NN FAC ¶ 88.

(ii) ER "subcontracted with Defendant Harrison Western for mining services at the Gold King Mine," and "[o]nly from this higher level could Harrison Western safely pump water out of the mine without triggering a blowout." UT FAC ¶ 36; NN FAC ¶ 86.

(iii) EPA, ER, Weston, and Harrison Western "discussed a plan to install a sump basin to treat water that would be pumped out of the mine during the adit excavation work." NM FAC ¶ 90.

(iv) "Weston was 'responsible for overseeing [and managing] the water treatment operations." NN FAC ¶ 78.

(v) EPA sent its contractor a list of anticipated tasks which included preparing water treatment plans. *See* NM FAC ¶ 88; NN FAC ¶ 87.

(vi) EPA and its contractors graded the surface of the waste dump, and started constructing a water management and treatment system to handle discharges from the mine. *See* NM FAC ¶ 91.

Transporter Liability

Transporter liability arises when "any person accepts … any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." 42 U.S.C. § 9607(a)(4). The term "transport" "means the movement of a hazardous substance by any mode." 42 U.S.C. § 9601(26).

The Sovereign Plaintiffs' Complaints state claims for transporter liability because they allege that the EPA Contractor Defendants took steps to drain the mine and treat the water at the site.

(i) EPA, ER, Weston and Harrison Western "inspected the Level 7 adit and determined that the drainage would require larger settling ponds and additional treatment." NM FAC ¶ 82.

(ii) EPA, ER, Weston, and Harrison Western "visited the God King Mine several times to assess site conditions and drainage flows," and "discussed a plan to install a sump basin to treat water that would be pumped out of the mine during the adit excavation work." NM FAC ¶ 90.

(iii) "To prepare for the adit excavation, EPA and its contractors graded the surface of the waste dump, and started constructing a water management and treatment system to handle an anticipated increase in discharges from the mine." NM FAC ¶ 91.

(iv) "[L]eading up to and at the time of the Blowout, the Contractor Defendants accepted hazardous substances from . . . the Gold King Mine, and undertook to dispose, treat, and transport hazardous substances to disposal or treatment facilities, or sites selected by the Contractor Defendants." UT FAC ¶ 70.

7

  (v) EPA and ER "installed two new two-foot diameter drain pipes to drain water from the adit because they had torn out most of the previously installed pipes." NN FAC ¶ 82.

  (vi) EPA and Weston "visited the Gold King Mine again to measure discharge flow. That same day, a plan was discussed regarding the installation of a sump basin to treat water that would be pumped from the mine." NN FAC ¶ 94.

<u>Section 119</u>

The EPA Contractor Defendants assert that CERCLA Section 119 shields EPA Contractor Defendants from liability for damages resulting from cleanup activities. Contractors' Motion at 31-34. Section 119 provides:

> **(a) Liability of response action contractors**
>
> **(1) Response action contractors**
>
> A person who is a response action contractor with respect to any release or threatened release of a hazardous substance or pollutant or contaminant from a vessel or facility shall not be liable under this subchapter or under any other Federal law to any person for injuries, costs, damages, expenses, or other liability (including but not limited to claims for indemnification or contribution and claims by third parties for death, personal injury, illness or loss of or damage to property or economic loss) which results from such release or threatened release.
>
> **(2) Negligence, etc.**
>
> Paragraph (1) shall not apply in the case of a release that is caused by conduct of the response action contractor which is negligent, grossly negligent, or which constitutes intentional misconduct.

42 U.S.C. § 9619(a)(1)-(2).

The EPA Contractor Defendants contend that Plaintiffs have not alleged facts showing that the release was caused by the negligent acts of Weston or ER because the allegations refer to the "EPA crew," "EPA On site Team," and "Contractor Defendants" instead of making "specific

8

allegations as to each response action contractor (i.e. Weston or ER)." Doc. 80 at 22. The EPA Contractor Defendants move the Court to dismiss the Sovereign Plaintiffs' CERCLA liability claims because the Sovereign Plaintiffs have not alleged "facts establishing that specific negligence, gross negligence, or intentional misconduct of ER or Weston caused a release." Doc. 80 at 23.

The Court denies the motion to dismiss for failure to allege specific facts as to Weston and ER. The allegations referring to the "EPA crew" or the "Contractor Defendants" give Weston and ER fair notice of the Sovereign Plaintiffs' claims and the grounds on which they rest. Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed information is available through discovery.

Conclusion

The Court finds that the Sovereign Plaintiffs' Complaints state claims for operator, arranger and transporter liability. The Court denies that portion of the EPA Contractor Defendants' Motion to dismiss the Sovereign Plaintiffs' claims to recover their response costs and for a declaratory judgment regarding liability for further response costs.

**Government Contractor Defense**

The EPA Contractor Defendants argue that they "are shielded from state tort liability under the Government Contractor Defense." Doc. 46 at 48.

To establish the government contractor defense, a contractor must show: (i) the case involves "uniquely federal interests;" (ii) a "significant conflict exists between an identifiable federal policy or interest and the operation of state law;" and (iii) the contractor's actions fall within the "scope of displacement." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504, 507, 512 (1988). A contractor's actions fall within the scope of displacement if: (i) "the United States

approved reasonably precise specifications;" (ii) the contractor "conformed to those specifications;" and (iii) the contractor "warned the United States about the dangers" known to the contractor but not to the United States." *Boyle v. United Technologies Corp.*, 487 U.S. at 512.

The Court denies the EPA Contractor Defendants' motion to dismiss the state tort claims on the basis that they are shielded by the government contractor defense because the defense does not appear plainly on the face of the Amended Complaints.

> To be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense. But that is only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements. *See Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)].").

*Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

While the allegations in the Amended Complaints indicate that EPA provided the EPA Contractor Defendants with work specifications and that EPA knew of some risks at the site, the allegations do not show that the specifications were "reasonably precise," that the EPA Contractor Defendants "conformed to those specifications," or that the EPA Contractor Defendants warned EPA of any dangers known to them but not known to EPA. *See e.g.* NM FAC ¶¶ 79, 81-82, 88, 94; NN FAC ¶¶ 65, 67-72, 7484-85, 97; UT FAC ¶¶ 37-38, 68, 82-83; McDaniel SAC ¶¶ 32, 39. New Mexico has alleged that "[p]hotographs of EPA's work at the Gold King Mine site on August 4 and 5 reveal that the crew substantially deviated from written instructions, as well as the June 11 work plan." NM FAC ¶ 96. The Navajo Nation has alleged that "the crew working on-site also blatantly disregarded explicit instructions." NM FAC ¶ 102. Consequently, the Court does not

find that the government contractor defense appears plainly on the face of the Amended Complaints.

**Failure to State Claims under State Law**

The EPA Contractor Defendants assert that Plaintiffs have failed to state any state statutory or common law claims, and that those claims must be dismissed.

Utah Statutes

Utah's Fifth Cause of Action asserts that the EPA Contractor Defendants violated the Utah Water Quality Act. *See* UT FAC ¶¶ 102-108. Utah Code Ann. § 19-5-107(1)(a) states "it is unlawful for any person to discharge a pollutant into the waters of the state or to cause pollution which constitutes a menace to public health and welfare, or is harmful to wildlife, fish, or aquatic life, or impairs domestic, agricultural, industrial, recreational, or other beneficial uses of water." Utah's Sixth Cause of Action asserts that the EPA Contractor Defendants violated the Utah Solid and Hazardous Waste Act. *See* UT FAC ¶¶ 192-114.

The EPA Contractor Defendants argue that the Fifth and Sixth Causes of Action in Utah's First Amended Complaint "must be dismissed because neither Utah statute is applicable to the alleged actions at Gold King." Doc. 46 at 65. That argument consists of three paragraphs occupying just over one page of their motion to dismiss. In a little over three pages in the Response, Utah argues that the Clean Water Act does not bar Utah's statutory claims. *See* Doc. 58 at 72-75. In their Reply, the EPA Contractor Defendants argue, in about three pages, that the Clean Water Act preempts Utah's statutory claims and even if Utah's state law statutory claims are not preempted, Utah has failed to state a claim upon which relief may be granted. Doc. 80 at 36-39.

The Court is unable to resolve this issue with the limited briefing, which may be a result of the page limits for briefs, and denies the motion to dismiss the Fifth and Sixth Causes of Action in Utah's First Amended Complaint.

Negligence

The EPA Contractor Defendants assert that "Plaintiffs' negligence claims must fail because each has failed to state a prima facie claim as a matter of law where Colorado law does not recognize a duty owed to persons in other states for a CERCLA cleanup." Doc. 46 at 69-70.

The Court denies the EPA Contractor Defendants motion to dismiss the negligence claims as barred by Colorado law. The EPA Contractor Defendants do not cite a statute or case that specifically states Colorado law does not recognize a duty owed to persons in other states for a CERCLA cleanup. They state:

> Duty is a question of law determined by looking to several factors, including "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, the consequences of placing the burden upon the actor, and any additional elements disclosed by the particular facts of the case." *Ayala v. U.S.*, 846 F.Supp. 1431, 1437 (D. Colo. 1993), *aff'd*, *Ayala v. U.S.*, 49 F.3d 607 (10th Cir. 1995); *Bd. of County Com'rs of County of La Plata v. Moreland*, 764 P.2d 812, 816, 1988 WL 125422 (Colo. 1988) (recognizing a duty may be derived by either statute or common law).

Doc. 46 at 70. Instead of discussing the "several factors" used to determine duty, the EPA Contractor Defendants make the conclusory statement that:

> It logically follows that Colorado would not recognize a duty here where the state has carefully limited the scope of duty to "fairness under contemporary standards-whether reasonable persons would recognize a duty and agree that it exists." *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987). As a matter of law, no such far-reaching duty to persons in other states exists under these circumstances where neither the risk involved nor the likelihood of injury were foreseeable.

Doc. 46 at 70. The EPA Contractor Defendants also assert that "the Complaints lack any allegations of a duty recognized under Colorado law." Doc. 46 at 70-71.

The Court denies the EPA Contractor Defendants motion to dismiss the negligence claims for failure to properly allege a duty under Colorado law.

> Under Colorado law, the court "determines as a question of law 'the existence and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection.' " *Observatory Corp. v. Daly,* 780 P.2d 462, 466 (Colo.1989) (quoting *Metro. Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1980)). So long as the plaintiff pleads sufficient facts—"including the foreseeability of harm from the failure of the defendant to take protective action, the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, the practical consequences of placing such a burden on the defendant, and other relevant factors as disclosed by the particular circumstances of the case"—to establish the existence of a duty if all factual allegations in the complaint are taken as true, a duty will be considered established for purposes of a Rule 12(b)(6) motion to dismiss. *See Erickson,* 127 S.Ct. at 2200; *Observatory Corp.,* 780 P.2d at 466.

*Bd. of County Com'rs of County of La Plata, Colo. v. Brown Group Retail, Inc.*, 598 F.Supp.2d 1185, 1194 (D. Colo. 2009). The Sovereign Plaintiffs have alleged that the EPA Contractor Defendants had duties to "conduct all investigations and work activities at the mines with reasonable care" and "to take reasonable precautions in case of an accidental release," and knew that "Conditions may exist that could result in a blow-out of the blockages and cause a release of large volumes of contaminated mine water and sediment from inside the mine, which contain concentrated heavy metals." NM FAC ¶ 201; NN FAC ¶ 111; UT FAC ¶ 37. The factual allegations in the Complaints, taken as true for the purposes of a motion to dismiss, regarding the contaminated mine water and the risk of a blow-out establish that the harm to Plaintiffs was foreseeable.

Gross Negligence

The EPA Contractor Defendants assert that the "gross negligence claims must be dismissed because Colorado . . . does not recognize 'varying degrees of negligence.'" Doc. 46 at 72 (quoting *Denver & Rio Grande Ry. V. Peterson*, 69 P. 578 (Colo. 1902), and *Dukeminier v. K-Mart Corp.*,

13

651 F.Supp. 1322, 1323 (D. Colo. 1987) (recognizing "the Colorado Supreme Court has refused to recognize stratification by degrees of negligence")).

The Court denies the EPA Contractor Defendants motion to dismiss the gross negligence claims because it appears that Colorado does recognize gross negligence claims. In a relatively recent case, the Colorado Court of Appeals held that "the district court was correct in dismissing the gross negligence claim on summary judgment" where there was no genuine issue of material fact. *Hamill v. Cheley Colorado Camps, Inc.*, 262 P.3d 945, 954 (Colo. App. 2011). The Colorado Court of Appeals noted that "[b]oth parties concede that exculpatory agreements are not a bar to civil liability for gross negligence. Gross negligence is willful and wanton conduct, that is, action committed recklessly, with conscious disregard for the safety of others." *Hamill v. Cheley Colorado Camps, Inc.*, 262 P.3d at 945; *see also Lawton v. Hotspur Sports Company, Inc.*, 2017 WL 2672110 at *6 (D. Colo. 2017) (stating "the exculpatory clause does not bar plaintiff's claim of gross negligence" and "[i]n Colorado, '[g]ross negligence is willful and wanton conduct, that is action committed recklessly, with conscious disregard for the safety of others'"); *Pernick v. Computershare Trust Company, Inc.*, 136 F.Supp.3d 1247, 1264 (D. Colo. 2015) (stating that plaintiff failed to state a necessary element of his claims, "including any claim that [defendant] was grossly negligent" and citing *Weil v. First Nat'l Bank of Castle Rock*, 983 P.2d 812, 815 (Colo. App. 1999) (dismissing negligence and gross negligence claims is appropriate where defendant owes no common law duty to plaintiff)).

<u>Trespass and Nuisance</u>

The EPA Contractor Defendants assert that the Sovereign Plaintiffs' requests for injunctive relief for trespass and nuisance claims must be dismissed because CERCLA's provision, 42 U.S.C. § 9613(h), "prevents a court from interfering with an ongoing removal action." Doc. 46

at 73. The Court denies the EPA Contractor Defendants request to dismiss the trespass and nuisance claims pursuant to 42 U.S.C. § 9613(h). because, as discussed above, the extent of the removal action in the Sovereign Plaintiffs' territories is disputed and, consequently, the Court cannot determine whether the trespass and nuisance claims will interfere with the removal action. *See* Doc. 164 at 14-15 (denying the Federal Defendants' motion to dismiss pursuant to 42 U.S.C. § 9613(h), which "prevents a court from interfering with an ongoing removal action," to allow for jurisdictional discovery).

The EPA Contractor Defendants also assert that "the Sovereign Plaintiffs are seeking under CERCLA the same cost of dredging, transporting, treating and disposing of contaminated sediment from the Animas and San Juan Rivers and Lake Powell" and "as a matter of law, where a plaintiff's CERCLA and state law claims seek recovery of the same response costs, CERCLA preempts the plaintiff's right to recover under the state law." Doc. 46 at 73. A "district court cannot dismiss a claim solely because a plaintiff seeks excessive or otherwise inappropriate relief." *EEOC v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1175 (10th Cir. 2017).

**Damage claims barred by statute of limitations**

The EPA Contractor Defendants contend that "Plaintiffs' damage claims are barred by the statute of limitations." Doc. 46 at 73-74. They argue that "[t]o the extent that any portion of the Plaintiffs' claims are for damages or costs caused by the decades-long contamination of the Animas and San Juan Rivers and Lake Powell, such claims are barred by the applicable statute of limitations." Without citing any legal authority the EPA Contractor Defendants state: "Plaintiffs, however, fail to provide any basis for distinguishing its claim for damages from the Release with its time-barred claim for damages resulting from the decades-long contamination of the Animas

15

and San Juan Rivers. Accordingly, Plaintiffs' claims for damages should be dismissed." Doc. 46 at 74.

The Sovereign Plaintiffs responded that because their "claims for costs and damages *against the Contractor Defendants* arise from the August 5 release, not from the decades-old contamination, the claims are not barred by the statute of limitations." Doc. 58 at 79 (*emphasis in original*). The Sovereign Plaintiffs argue that "it is well-settled in CERCLA and tort cases that defendants, not plaintiffs, bear the burden of proving divisibility of a 'combined and mingled' (i.e., indivisible) harm."

In their Reply, the EPA Contractor Defendants argue that "the issue is not whether the damages are commingled or indivisible. Rather, the issue is whether the Plaintiffs' alleged damages accrued within the statutory period, which begins to run when the initial damage occurs," and conclude that "the Contractor Defendants have met their burden of establishing their statue of limitations defense because the alleged harm (and the wrongdoing creating the alleged harm) occurred outside the two-year statute of limitations." Doc. 80 at 44.

The Court denies the EPA Contractor Defendants' motion to dismiss Sovereign Plaintiffs' damage claims as barred by the statute of limitations. The Sovereign Plaintiffs seek damages resulting from the August 5, 2015, release. The EPA Contractor Defendants have not cited any legal authority for the proposition that the limitations period for a tort by one defendant begins before that tort occurs and begins to run when another earlier tort by a different defendant resulting in similar damages occurs.

**Joint and Several Liability**

The District Judge previously assigned to these cases granted a motion by EPA Contractor Defendant ER to strike "Plaintiffs' allegations of joint and several liability for their state tort law

16

claims." Doc. 203, filed February 12, 2018 (Armijo, J.). The Court based its ruling on the United States Supreme Court' holding in *Ouellette*, discussed below, that the Clean Water Act "preempts application of New Mexico law to a discharge with a point source in Colorado." Doc. 203 at 66.

In their Amended Complaints, which were filed after Judge Armijo's Order striking the joint and several liability allegations, New Mexico and the Navajo Nation again assert joint and several liability allegations against the EPA Contractor Defendants.

The EPA Contractor Defendants ask the Court to strike the joint and several liability allegations "because joint and several liability has been abolished under Colorado law, which, under Supreme Court precedent, applies in this case as the law of the 'point source' where the Gold King Mine is located." Doc. 45 at 3; Doc. 46 at 75 (citing Colo. Rev. Stat. § 13-21-111.5(1) which states: "In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss"). The Sovereign Plaintiffs do not offer any argument opposing the motion to strike the joint and several liability stating "while reserving their rights for appellate purposes regarding the arguments they previously asserted, the Sovereign Plaintiffs do not believe reconsideration of Judge Armijo's Order at this time is appropriate on any issue including those regarding conflict of laws." Doc. 58 at 80. Consequently, the Court grants the EPA Contractor Defendants' motion to strike the joint and several liability allegations in New Mexico and the Navajo Nation's First Amended Complaints.

**McDaniel Plaintiffs**

The McDaniel Plaintiffs assert that the law of New Mexico governs their claims against the federal contractors and that they have stated claims for negligence, negligence per se, gross

negligence, trespass and private nuisance under New Mexico law. *See* Doc. 66 at 3-6. The McDaniel Plaintiffs argue that:

> because the court has subject matter jurisdiction over the Contractors based on diversity of citizenship the court "must follow the analysis required for a diversity action and look to the law of . . . forum state, including its choice of laws rules.". . . . "In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of *lex loci delicti commissi* – that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred."

Doc. 66 at 4.

The Supreme Court of the United States has held "that when a court considers a state-law claim concerning interstate water pollution that is subject to the [Clean Water Act], the court must apply the law of the State in which the point source is located." *International Paper Co. v. Ouellette*, 479 U.S. 481, 487 (1987) (Vermont landowners brought suit against operator of New York pulp and paper mill under Vermont common law of nuisance); *Arkansas v. Oklahoma*, 503 U.S. 91, 100 (1992) (restating the holding in *Ouellette* as "the Clean Water Act taken 'as a whole, its purposes and its history' pre-empted an action based on the law of the affected State and that the only state law applicable to an interstate discharge is 'the law of the State in which the point source is located'").

The Court concludes that Colorado law governs Plaintiffs' tort claims. *See International Paper Co. v. Ouellette*, 479 U.S. at 499, n.20 ("We therefore do not agree with the dissent that Vermont nuisance law still may apply if the New York *choice-of-law* doctrine dictates such a result").

The EPA Contractor Defendants assert that the McDaniel Plaintiffs have not stated claims for negligence,[2] negligence per se,[3] gross negligence,[4] trespass,[5] and private nuisance[6] under Colorado law. The Court, having reviewed the allegations and relevant Colorado law, and taking the factual allegations in the Complaint as true, finds that the allegations are sufficient to state plausible claims for relief. *See* Fed. R. Civ. P. 8(a)(2) (Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief").

**IT IS ORDERED** that EPA Contractor Defendants' Motion to Dismiss and Motion to Strike, Doc. 45, filed July 25, 2018, is **GRANTED in part and DENIED in part** as stated in this Memorandum Opinion and Order.

                                                _____
                                                **WILLIAM P. JOHNSON**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] "To establish a prima facie claim of negligence [under Colorado law], a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation (i.e. that the defendant's breach caused the plaintiff's injury)." *Woods v. Delgar Ltd.*, 226 P.3d 1178, 1180 (Colo. App. 2009).

[3] "Negligence per se is [in Colorado] a common law doctrine that rests on the principle that a legislative enactment can prescribe the standard of conduct of a reasonable person, such that violation of the enactment constitutes negligence." *Woods v. Delgar Ltd.*, 226 P.3d 1178, 1183 (Colo. App. 2009).

[4] "In Colorado, '[g]ross negligence is willful and wanton conduct, that is, action committed recklessly, with conscious disregard for the safety of others.'" *Lawton v. Hotspur Sports co., Inc.*, 2017 WL 2672110 *6 (D. Colo. 2017).

[5] "The elements of the tort of trespass [under Colorado law] consist of a physical intrusion upon the property of another without the permission of the person lawfully entitled to the possession of the real estate." *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 933 (Colo. 1997).

[6] "The essential question to be resolved when a private nuisance is claimed is whether the defending party has unreasonably interfered with the claimant's use and enjoyment of his property. The interference which occurs must also be substantial in its nature as measured by a standard that it would be of definite offensiveness, inconvenience, or annoyance to a normal person in the community." *Woodward v. Bd. of Directors of Tamarron Assoc. of Condominium Owners, Inc.*, 155 P.3d 621, 628 (Colo. App. 2007).