UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

|  |  |
|---|---|
| IN RE: GOLD KING MINE RELEASE IN SAN JUAN COUNTY, COLORADO, ON AUGUST 5, 2015<br><br>*This Document Relates to:*<br>    *No. 16-cv-465-WJ/LF*<br>    *No. 18-cv-319-WJ* | ) <br> ) C.A. No. 1:18-md-02824-WJ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**<u>STATES OF NEW MEXICO AND UTAH'S MOTION TO DISMISS COUNTERCLAIMS OF DEFENDANT ENVIRONMENTAL RESTORATION, LLC AND INCORPORATED SUPPORTING MEMORANDUM</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTS ..................................................................................................................................2

STANDARD OF REVIEW ...................................................................................................3

ARGUMENT .........................................................................................................................4

I.     ER HAS FAILED TO STATE A CLAIM UNDER CERCLA SECTION 107(A) ....................................................................................................4

    A.    ER Does Not Allege It Has Incurred Any Necessary Response Costs to Clean Up the Contamination in the State of New Mexico or the State of Utah ...........................................................................................................4

    B.    If EPA Has Not Reimbursed ER for Costs Incurred in Colorado, ER's Remedy is to Sue EPA, Not the Innocent Downstream States .............................8

II.    ER CANNOT SEEK CONTRIBUTION FROM THE STATES IF THEY ARE NOT LIABLE UNDER SECTION 107(A) ....................................................8

III.   ER HAS NOT SUFFICIENTLY PLED NECESSARY RESPONSE COSTS CONSISTENT WITH THE NCP FOR ITS SECTION 107(A) AND 113 CLAIMS .........................................................................................................9

IV.   ER HAS FAILED TO PLEAD ANY ENTITLEMENT TO DECLARATORY RELIEF ................................................................................................................12

V.    ER CANNOT PLEAD THE STATES ARE POTENTIALLY RESPONSIBLE PARTIES FOR THE GOLD KING MINE BLOWOUT ...............................................13

i

## **Table of Authorities**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 3, 4, 5

*Atl. Richfield Co. v. United States*,
    181 F. Supp. 3d 898 (D.N.M. 2016) .......................................................................... 9, 10, 12

*Bancamerica Commercial Corp. v. Mosher Steel of Kansas*,
    100 F.3d 792 (10th Cir. 1996), *as amended*, 103 F.3d 80 (1996) .................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 3, 4

*City of Spokane v. Monsanto Co.*,
    237 F. Supp. 3d 1086 (E.D. Wash. 2017) .......................................................................... 9

*Ford Motor Co. v. Mich. Consol. Gas Co.*,
    No. 08-cv-13503, 2010 WL 3419502 (E.D. Mich. Aug. 27, 2010) ................................. 10

*Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.*,
    No. 08-2151, 2010 WL 682542 (D.P.R. Feb. 22, 2010) ................................................... 10

*Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*,
    561 F. Supp. 2d 653 (E.D. Tex. 2006) ................................................................................ 10

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ........................................................................................... 3

*Hobart Corp. v. Dayton Power & Light Co.*,
    No. 3:13-cv-115, 2017 WL 3773146 (S.D. Ohio Aug. 29, 2017) .................................... 10

*J&P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance &
    Elecs. Co.*,
    No. 2:11cv37, 2012 WL 925015 (W.D.N.C. Mar. 19, 2012) ........................................... 10

*McGregor v. Indus. Excess Landfill, Inc.*,
    856 F.2d 39 (6th Cir. 1988) .................................................................................................. 9

*MRP Props., LLC v. United States*,
    308 F. Supp. 3d 916 (E.D. Mich. 2018) .......................................................................... 5, 9

*Sun Co., Inc. v. Browning-Ferris, Inc.*,
    124 F.3d 1187 (10th Cir. 1997) ........................................................................................... 8

*United States v. Atl. Research Corp.*,
551 U.S. 128, 139 (2007)....................6

*United States v. Iron Mountain Mines, Inc.*,
987 F. Supp. 1263 .................... *passim*

*Young v. United States*,
394 F.3d 858 (10th Cir. 2005) ....................4, 6, 10, 11

**Federal Statutes**

28 U.S.C. § 9613(f)(1) ....................8

42 U.S.C. § 9605(a) ....................11

42 U.S.C. § 9607(a) ....................4

42 U.S.C. § 9607(b)(3) ....................13

42 U.S.C. § 9607(q)(1)(A) ....................13

42 U.S.C. § 9613(g)(2) ....................12

**Federal Regulations**

40 C.F.R. § 300 ....................5

40 C.F.R. § 300.3(b) ....................11

40 C.F.R. § 300.700(c)(3)(i) ....................11

40 C.F.R. § 300.700(c)(5)-(6) ....................11

**Federal Rules**

Fed. R. Civ. P. 8(a)(2) ....................5

Fed. R. Civ. P. 12(b)(6) ....................1, 3, 9

Fed. R. Civ. P. 26(f) ....................1

Plaintiffs the State of New Mexico and the State of Utah (collectively "States") hereby move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the counterclaims of Defendant Environmental Restoration, LLC ("ER").  The memorandum of points and authorities supporting the States' motion to dismiss follows.[1]

## INTRODUCTION

The U.S. EPA admits that it spilled three million gallons of hazardous substances during its investigative work at the Gold King Mine in Colorado on August 5, 2015 (the "Blowout"), and that the plume of contaminated water flowed into a river from Colorado to New Mexico and Utah.  (Federal Parties Answer to New Mexico First Amended Complaint ["FAC"] [Dkt. 195] at ¶1; Federal Parties Answer to Utah FAC [Dkt. 200] at ¶ 1.)  EPA states it "takes responsibility for the Gold King Mine release and is committed to continue working hand-in-hand with the impacted local government, states and tribes."  (Federal Parties Answer to Utah FAC at ¶2.)

Defendant ER was EPA's contractor at the Gold King Mine.  Out of all the Defendants, it is the only party to make the "surprising" claim that it should recover costs from New Mexico and Utah.  *See United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263, 1266 (dismissing polluter's counterclaims).  But ER's pleading fails to allege it has spent *one penny* to clean up the three million gallons of toxic contamination that the Blowout deposited in New Mexico and Utah.

Rather, ER alleges EPA has not paid for all of ER's contractor costs.  But ER has not sued or cross-claimed against EPA to recover those costs.  ER also alleges that other parties contributed

---

[1] Pursuant to D.N.M.LR-Civ 7.1(a) and the Special Master's Order dated November 8, 2019 (Dkt. 125), the States conducted a good faith meet and confer discussion regarding resolution of the issues raised in this Motion with ER's counsel at the all-parties' in-person Rule 26(f) conference on July 11, 2019 in Denver, Colorado (ER's counsel participated by telephone).  After an additional email from ER, the parties were unable to resolve these issues without filing this Motion, which ER opposes.

to polluting the States.  But ER fails to sue any of those parties for contribution to clean up their pollution.  Those are the proper defendants for ER's allegations, not the States.

Beyond attempting to blame the victims of its negligence, ER fails to state a cause of action for any of its three counterclaims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").  ER has not and cannot plead a *prima facie* case under CERCLA against the States because ER cannot plead it has incurred any response costs for the pollution from the Blowout that are necessary or consistent with the National Contingency Plan.  Nor can ER assert a CERCLA cause of action based upon its theory that the States are at fault for failing to stop other sources of water pollution.  *Iron Mountain*, 987 F. Supp. at 1276-77.  Based upon either independent ground, ER's counterclaims should be dismissed with prejudice.

## FACTS

ER judicially admits the predicate facts regarding the Gold King Mine Blowout: that it "was EPA's primary contractor at all relevant times for emergency and rapid response services ("ERRS") at the Gold King Mine."  (ER Answer to Utah FAC [Dkt. 218] at ¶ 10; Utah FAC [Dkt. 93 in Case No. 1:18-cv-00319-WJ] ¶ 10.)  ER admits excavation work at the Gold King Mine took place on August 4 and 5, 2015 under the direct supervision of EPA.  (ER Crossclaim against Harrison Western [Dkt. 218] at ¶ 31.)  ER also admits it was at the Gold King Mine Site when the release occurred on August 5, 2015, that the release was estimated to be three-million gallons, and that it subsequently migrated from Cement Creek to the Animas River to the San Juan River (ER Answer to Utah FAC at ¶ 1), traveling into the waters of the State of New Mexico and that "certain elements of the release transferred into the waters of the State of Utah."  (*Id.* at ¶ 61.)  Missing is any allegation that ER has incurred any costs to remediate this contamination from the Gold King Mine present in New Mexico or Utah.

2

ER pleads two types of costs it allegedly seeks to recover from the States. In its First Claim for Relief, ER alleges it has incurred and will continue to incur costs as EPA's contractor and that "it has not been and will not be reimbursed by EPA for all of these costs under ER's agreements with EPA." (ER Counterclaim ["CC"] to New Mexico FAC [Dkt. 214] at ¶ 87; ER CC to Utah FAC [Dkt. 218] at ¶ 65.) These costs additionally include "labor and other direct costs and expenses in connection with operating an interim water treatment plant in the Cement Creek drainage at Gladstone, Colorado . . ." after the Blowout occurred. (*Id.*)

Second, ER alleges that acid mine drainage ("AMD") from abandoned mines in the Animas River Watershed and the Bonita Peak Mining District in Colorado, and other hazardous substances from other sources, have contributed to the contamination of the States' waterbodies. (ER CC to New Mexico FAC at ¶¶ 18-67; ER CC to Utah FAC at ¶¶ 17-46.) ER alleges the States failed to exercise due care to prevent these allegedly known and foreseeable releases caused by other parties and the accumulation of allegedly hazardous substances, or to remove those substances. (ER CC to New Mexico FAC at ¶¶ 86, 94; ER CC to Utah FAC at ¶¶ 64, 72.) Missing is any allegation that ER has incurred any costs to remediate this contamination in New Mexico or Utah.

## STANDARD OF REVIEW

A claimant must plead sufficient facts to demonstrate an entitlement to relief, and where the well-pleaded factual allegations fail to show such an entitlement, a motion under Rule 12(b)(6) should be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (*citing* Fed. R. Civ. P. 12(b)(6)). While a claimant's factual allegations are presumed to be true in deciding a Rule 12(b)(6) motion, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a claimant must plead sufficient facts, not merely conclusory allegations, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and the

claim must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 550 U.S. at 570.

"In determining whether a complaint states a plausible claim," the Court is not bound to accept the plaintiff's "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678-679.  Rather, the Court may "begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 679.  "While legal conclusions can provide the framework of a complaint," they are not sufficient to survive a motion to dismiss unless they are supported by factual allegations showing that the [claimant] is entitled to relief." *Id.*

## ARGUMENT

I. **ER Has Failed to State a Claim under CERCLA Section 107(a)**

   A. **ER Does Not Allege It Has Incurred Any Necessary Response Costs to Clean Up the Contamination in the State of New Mexico or the State of Utah**

ER's First Claim for Relief, seeking recovery of costs against the States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), is insufficiently pled to satisfy ER's burden under the federal rules.  To establish a *prima facie* case under Section 107(a), a plaintiff must show that (1) the site was a CERCLA facility, (2) a hazardous substance was released, (3) the defendant is a "covered person" under CERCLA, and (4) the plaintiff incurred response costs following the release that were necessary and consistent with the national contingency plan ("NCP").  42 U.S.C. § 9607(a); *Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005).  The parties agree this is the applicable legal test.  (*See* Contractor Parties Memorandum of Law in Support of Motion to Dismiss [Dkt. 46] at 22-23.)  Thus, as the statutory text makes clear, the plaintiff must incur response costs following "the release," referring to elements (1) and (2), of a hazardous substance "released" from a site that is a CERCLA facility.

4

ER's CERCLA claims fail because ER has not sufficiently pled that it has incurred or will incur necessary response costs consistent with the NCP—a mandatory element of ER's *prima facie* case. Under Fed. R. Civ. P. 8(a)(2), a pleading stating a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has articulated that a claimant must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to satisfy this pleading requirement. *Iqbal*, 556 U.S. at 678. ER's allegations do not satisfy this burden.

ER asserts one conclusory allegation related to costs in its Counterclaims:

> ER has incurred, and will continue to incur in the future, necessary response costs to, among other things, clean up and otherwise respond to the release of alleged contaminants from the Gold King Mine, which [New Mexico and Utah allege] is a release associated with the Facility, in a manner consistent with the NCP, 40 C.F.R. Part 300, *et seq.*

(ER CC to NM at ¶ 95; ER CC to Utah at ¶ 73.) The description provided for these costs mentions only (i) non-specific costs not reimbursed by EPA and (ii) costs associated with a water treatment plant in Colorado:

> ER has not been and will not be reimbursed by EPA for all of these costs under ER's agreements with EPA. In addition, ER has incurred labor and other direct costs and expenses in connection with operating an interim water treatment plant in the Cement Creek drainage at Gladstone, Colorado, approximately nine (9) miles north of Silverton, Colorado. ER will incur additional labor and other direct costs to clean up and otherwise respond to the release of contaminants from the Gold King Mine, and to operate the interim water treatment plant in the Cement Creek drainage at Gladstone, Colorado.

(ER CC to NM at ¶ 87; ER CC to Utah at ¶ 65.) ER has not included any description whatsoever of the "response" costs it has incurred, beyond the allegation that it has not been reimbursed for those costs by the EPA. It has not alleged where those costs were incurred, when they were incurred, or why they were incurred. *See MRP Props., LLC v. United States*, 308 F. Supp. 3d 916, 938 (E.D. Mich. 2018) (dismissing CERCLA claims for failure to assert facts concerning "when,

5

where, why, or under what circumstances remediation efforts were undertaken resulting in response costs being incurred."). To the extent ER relies on costs and expenses incurred related to the Gladstone water treatment plant in Colorado, ER has failed to allege why those costs were incurred, how they are "necessary" response costs, or how they comply with the NCP.

ER's cost recovery claim further fails this test for a simple reason—ER does not allege it has incurred costs in connection with the Gold King Mine release (the "release") *within the States of New Mexico and Utah*. As the Supreme Court held in *United States v. Atl. Research Corp.*, "§ 107(a) permits a PRP to recover only the costs it has 'incurred' in *cleaning up a site*. . . . §107(a) permits cost recovery (as distinct from contribution) by a private party that has itself *incurred cleanup costs*." 551 U.S. 128, 139 (2007) (emphasis added). "CERCLA 'response costs' are defined generally as the costs of investigating *and* remedying the effects of a release or threatened release of a hazardous substance into the environment." *Young*, 394 F.3d at 863 (emphasis in original) (internal quotes omitted).

The 10th Circuit is fully in accord, joining multiple other Courts of Appeal in recognizing that there must be a "nexus" between the costs claimed and the contamination caused by the release. *Young*, 394 F.3d at 863. The States were contaminated by the August 5, 2015 Blowout. ER's pleading alleges it subsequently incurred costs *in Colorado* that have in no way caused the investigation or remediation of its pollution from the Gold King Mine Blowout in the States. Because ER does not and cannot plead its alleged costs were incurred to respond to the release that contaminated the States, ER cannot recover such costs from the States.

A court dismissed a polluting party's counterclaims under both Sections 107 and 113 of CERCLA against the impacted plaintiff under strikingly similar circumstances in *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263 (E.D. Cal. 1997). As with ER's counterclaims, the

allegations in that case pertained to AMD, as plaintiffs the United States and EPA sought to cleanup AMD and to recover the costs from the mining company that caused the pollution under CERCLA.  The mining company counterclaimed against the federal plaintiffs on the same theory as ER does here—that it had incurred costs by performing remedial work at the mine it owned, and that the federal plaintiffs were liable parties because they owned other parcels elsewhere that had allegedly contributed to contamination further down the chain of waterbodies.  *Id.* at 1267-68.

The court rejected this "somewhat surprising" argument and granted summary judgment to the United States, finding that the mining companies' counterclaims "flounder on the minimal causation requirement in CERCLA" and would "stretch[] CERCLA's strict liability framework too far to impose liability on the United States" in that situation.  *Id.* at 1266, 1270.  The court noted that "all of the response costs to date on Iron Mountain address AMD from Iron Mountain alone" and that "no activity by the United States has caused [the mine owner] to incur response costs."  *Id.* at 1270.  As a result, the Court held that the mine owner "has failed to show a nexus between its response costs and the United States' ownership of the [] facilities . . . ."  *Id.* at 1271.  It further rejected the mine owner's "effort to conceive of the site as the entire Sacramento River drainage above the Keswick Dam," stating in a footnote that "[t]aken to its logical limit [the mine owner]'s argument would be absurd."  *Id.* at 1270 n.14 ("For example, if EPA took measurements of the quality of the water in the San Francisco Bay, into which the Sacramento River drains, then [the mine owner] would argue that any person responsible for pollution in the Bay is also responsible for the cleanup of Iron Mountain Mine.").

The same conclusion follows here.  ER sues the States for its work in Colorado at the Gold King Mine, not because the States caused ER to incur those costs, but because they allegedly own land and water far downstream.  ER cannot allege, and therefore fails to state, a *prima facie* case

that it has incurred costs for the Gold King Mine release in the States. Its CERCLA Section 107 claim should be dismissed.

### B. If EPA Has Not Reimbursed ER for Costs Incurred in Colorado, ER's Remedy is to Sue EPA, Not the Innocent Downstream States

ER is EPA's contractor. ER claims it "has not been and will not be reimbursed by EPA for all of these costs under ER's agreements with EPA" and it surprisingly sues the States for those costs. (ER CC to New Mexico FAC at ¶ 87; ER CC to Utah FAC at ¶ 65.) While ER may have a claim *against EPA* for those costs, there is no basis in law or equity to claim those costs against the States, whose contaminated waterbodies are hundreds of miles from ER's work in Colorado and have never been cleaned up by ER.

## II. ER Cannot Seek Contribution From the States If They Are Not Liable Under Section 107(a)

ER's second claim—for contribution from New Mexico and Utah under Section 113 of CERCLA—also fails on the face of ER's pleading and should be dismissed. ER cannot prevail on its claims for contribution from the States if it cannot succeed on its claims for cost recovery under Section 107(a). Section 113(f)(1) of CERCLA provides that "[a]ny person may seek contribution from any other person *who is liable or potentially liable* under [Section 107(a)]. . . ." 28 U.S.C. § 9613(f)(1) (emphasis added). A necessary prerequisite for contribution from any party therefore is their liability under Section 107(a). Section 113 of CERCLA "is no more than a 'mechanism for apportioning [CERCLA]-defined costs.'" *Bancamerica Commercial Corp. v. Mosher Steel of Kansas*, 100 F.3d 792, 800 (10th Cir. 1996), *as amended*, 103 F.3d 80 (1996). This contribution claim "of necessity" "must incorporate the liabilities set forth in § 107(a), as those are the costs to be equally apportioned." *Id.* Only after that liability is established under Section 107(a) can the court proceed to equitable apportionment of response costs. *Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187, 1191 (10th Cir. 1997). As discussed in Section I, *supra*, ER's cost recovery

claims fail on their face and should be dismissed. Because neither New Mexico nor Utah can be liable under Section 107(a), ER is not entitled to contribution from either State under Section 113, and ER's second claim for relief against both States should be dismissed.

### III. ER Has Not Sufficiently Pled Necessary Response Costs Consistent with the NCP for its Section 107(a) and 113 Claims

Allegations of response costs nearly identical to the boilerplate language found in ER's counterclaims have been found insufficient in this district, resulting in dismissal of CERCLA claims at the pleading stage. In *Atl. Richfield Co. v. United States*, 181 F. Supp. 3d 898 (D.N.M. 2016), Atlantic Richfield sought CERCLA cost recovery and contribution from the federal government related to a uranium mine in New Mexico. Atlantic Richfield alleged that it had "incurred, and will continue to incur in the future, necessary response costs to, among other things, investigate and evaluate the alleged contamination in a manner consistent with the National Contingency Plan." *Id.* at 913. The court found that this allegation, which is nearly identical to ER's allegation of necessary response costs in its counterclaims, was "no more than a 'formulaic recitation of the elements of a cause of action' that cannot survive a motion to dismiss under Rule 12(b)(6)." *Id.*

Outside of the Tenth Circuit, the courts similarly have dismissed CERCLA claims for failing to sufficiently plead necessary response costs. *See, e.g.*, *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 43 (6th Cir. 1988) (affirming dismissal of "apparently frivolous claim" where plaintiff failed to allege factual basis for allegation that they had personally incurred response costs consistent with NCP); *MRP Props., LLC*, 308 F. Supp. 3d at 938 (dismissing CERCLA claims for failure to assert facts concerning "when, where, why, or under what circumstances remediation efforts were undertaken resulting in response costs being incurred"); *City of Spokane v. Monsanto Co.*, 237 F. Supp. 3d 1086, 1093-95 (E.D. Wash. 2017) (dismissing

CERCLA claims where plaintiff alleged "no facts" from which the court could conclude it had incurred necessary costs, no less costs consistent with the NCP); *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653 (E.D. Tex. 2006) (finding that plaintiff failed to allege response costs consistent with NCP); *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2017 WL 3773146, at *7 (S.D. Ohio Aug. 29, 2017) (dismissing CERCLA counterclaims with no details about response costs, noting that if counterclaimant "has already incurred response costs, it should know when and why it did so, and should include those facts in its counterclaim"); *J&P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co.*, No. 2:11cv37, 2012 WL 925015, at *5 (W.D.N.C. Mar. 19, 2012) (finding claims for response costs based on "expenses for testing of ground water and soil and surveillance" insufficient where complaint contained no factual allegations supporting the claim that those expenses were consistent with the NCP); *Ford Motor Co. v. Mich. Consol. Gas Co.*, No. 08-cv-13503, 2010 WL 3419502, at *5 (E.D. Mich. Aug. 27, 2010) (dismissing counterclaim with only one conclusory paragraph about removal costs); *Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.*, No. 08-2151, 2010 WL 682542, at *4 (D.P.R. Feb. 22, 2010) (dismissing claim with only conclusory allegation that costs conformed with NCP).

Like the plaintiff in *Atl. Richfield*, ER cannot include any allegations in its counterclaims that even plausibly illustrate how any costs it incurred were "necessary," as required under CERCLA. "[C]osts cannot be 'necessary' to the containment and cleanup of hazardous releases 'absent some nexus between the alleged response cost and an actual effort to respond to environmental contamination.'" *Young*, 394 F.3d at 863. "CERCLA requires parties to incur necessary response costs to prevent litigation gamesmanship and encourage the actual cleanup of hazardous substances." *Atl. Richfield Co.*, 181 F. Supp. 3d at at 917 (finding a "paucity of

10

allegations" regarding the nature of plaintiff's costs). ER has only described one category of costs it has actually incurred to date—related to the Gladstone water treatment plant—but has not alleged how those costs had any "nexus" to an actual effort to respond to the environmental contamination released in the Blowout and currently contaminating the States. Moreover, the remaining alleged costs that have not been reimbursed by the EPA have been described in insufficient detail for the States to understand if any nexus is even possible.

ER also utterly failed to show that it incurred any costs consistent with the NCP. The NCP is a set of EPA regulations that "establish procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants." 42 U.S.C. § 9605(a); *see also* 40 C.F.R. § 300.3(b) ("The NCP provides for efficient, coordinated, and effective response to . . . releases of hazardous substances, pollutants, and contaminants in accordance with the authorities of CERCLA . . . ."). A private party's response cost is considered consistent with the NCP "if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in [40 C.F.R. § 300.700(c)(5)-(6)] and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i). A "CERCLA-quality cleanup" only results "if the response action protects human health and the environment through the utilization of permanent solutions and alternative treatment or resource recovery technologies to the maximum extent possible." *Young*, 394 F.3d at 864.

ER fails to allege that its response costs comply in any way with the applicable regulations constituting the NCP. Among other things, ER has not included any allegations regarding worker health and safety, remedial site investigation, or public comment on the response action. *See* 40 C.F.R. § 300.700(c)(5)-(6). ER also has not included any allegation that the costs were incurred

11

as part of action that protects human health and the environment. ER therefore has not sufficiently alleged this necessary piece of this element of its CERCLA counterclaims.

In sum, ER claims are based on its allegations that other parties have polluted the States – its remedy if any is to sue the polluters. ER spends nearly 125 paragraphs denouncing the alleged shortcomings of New Mexico and Utah for over a century, but fails to plead the actual costs that it has incurred in remedying the contamination resulting from the Gold King Mine blowout in the States. There are none. In short, ER has failed to meet its pleading burden on its CERCLA counterclaims. ER's causes of action under Sections 107(a) and 113 of CERCLA should be dismissed.

## IV. ER Has Failed to Plead Any Entitlement to Declaratory Relief

ER's final counterclaim against both States also fails in the absence of any viable underlying CERCLA claim. ER seeks "a judicial determination of the rights, duties, and obligations of the parties to this action with respect to the alleged past, present, and future response costs and other related costs that have been made the subject of this action." (ER CC to NM at ¶ 100; ER CC to Utah at ¶ 78.)

Section 113(g)(2)(B) of CERCLA permits a court to enter a declaration on "liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). However, a party "cannot bring a claim for declaratory relief under § 113(g)(2)(B) in the absence of a valid underlying contribution or cost-recovery claim." *Atl. Richfield Co.*, 181 F. Supp. 3d at 923. To allow a party to pursue declaratory relief in the absence of a valid CERCLA claim "would destabilize the intended functioning of CERCLA because it would allow a plaintiff who has incurred no necessary costs of response and has no present intent to incur such costs to short-circuit CERCLA's remedial scheme, which prioritizes cleanups over formal determinations of liability." *Id.* at 924.

Because ER has not presented sufficient factual allegations to plead counterclaims under either Section 107(a) or Section 113(f), discussed above, its claims for declaratory relief against the States also fail and should be dismissed.

## V. ER Cannot Plead the States Are Potentially Responsible Parties for the Gold King Mine Blowout

Finally, ER's claim is surprising because it argues that CERCLA is intended to allow the polluter to sue the States that it polluted with its contamination. Not so. Under CERCLA, innocent owners of neighboring or similarly situated property that is damaged by a polluter are not liable as "owners" of a facility under CERCLA. *See* 42 U.S.C. § 9607(b)(3) (otherwise potentially responsible parties are not liable where the release or threat of release and the resulting damages were caused solely by an act or omission of a third party, with whom the potentially responsible party has no contractual relationship, and where such party "establishes by preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned . . . and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions . . . ."); 42 U.S.C. § 9607(q)(1)(A) (a person that owns real property that is contiguous to or otherwise similarly situated with respect to, and that is or may be contaminated by a release or threatened release of a hazardous substance from, real property that is not owned by that person shall not be considered to be an owner or operator of a vessel or facility if certain conditions are met.)

Thus, the *Iron Mountain* court determined that the United States was not a liable party based upon the same theory ER argues here, that the government failed to take due care to legislatively prevent other pollution from other sources. 987 F. Supp. at 1276-77. Here, the States show ER's primary failure to state a *prima facie* case is more than adequate grounds to grant this

13

motion to dismiss. However, should the Court need to reach this issue, CERCLA's statutory protections for innocent parties impacted by a polluter also apply to bar ER's counterclaims.

## CONCLUSION

For the foregoing reasons, the States respectfully request that the Court grant their motion and dismiss Defendant ER's counterclaims against both States.

Respectfully submitted,

Dated: July 29, 2019

*/s/ William J. Jackson*
William J. Jackson
NM Fed. Bar 16-102
John D.S. Gilmour
NM Fed Bar. 16-101
Jennifer C. Barks
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd., Suite 900
Houston, TX 77027
Telephone:   (713) 355-5000
Facsimile:   (713) 355-5001
Email:       jgilmour@kelleydrye.com

Hector Balderas
Attorney General of New Mexico
P. Cholla Khoury
Assistant Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
Telephone:   (505) 827-6000
Facsimile:   (505) 827-5826
Email:       ckhoury@nmag.gov

Marcus J. Rael, Jr.
Jordon P. George
Robles, Rael & Anaya, P.C.
500 Marquette Ave NW, Suite 700
Albuquerque, NM 87102
Telephone:   (505) 242-2228
Facsimile:   (505) 242-1106
Email:       marcus@roblesrael.com

Attorneys for Plaintiff/Counter-Defendant

                                          THE STATE OF NEW MEXICO ON BEHALF OF THE NEW MEXICO ENVIRONMENT DEPARTMENT

Dated: July 29, 2019            */s/ Peter Hsiao*
                                                  Peter Hsiao
                                                  KING & SPALDING LLP
                                                  633 West Fifth Street, Suite 1600
                                                  Los Angeles, California 90071

                                                  Sean Reyes
                                                  Utah Attorney General
                                                  Spencer E. Austin
                                                  Chief Criminal Deputy Attorney General
                                                  UTAH ATTORNEY GENERAL'S OFFICE
                                                  350 North State Street, Suite 230
                                                  Salt Lake City, Utah 84114-2320

                                                  Attorneys for Plaintiff/Counter-Defendant
                                                  THE STATE OF UTAH

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2019, the foregoing document was filed via the U.S. District Court for the District of New Mexico's CM/ECF electronic filing system and a copy thereof was served via the CM/ECF upon all counsel of record.

    */s/ Matthew L. Hofer*
    Matthew L. Hofer