## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____
                                                    )
IN RE: GOLD KING MINE RELEASE                       )
IN SAN JUAN COUNTY, COLORADO                        )
ON AUGUST 5, 2015                                   )
                                                    )        No. 1:18-md-02824-WJ
*This Document Relates to:*                          )
    *No. 16-cv-465-WJ-LF*                            )
    *No. 16-cv-931-WJ-LF*                            )
_____)

### UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS
### ON SUNNYSIDE GOLD'S DUE PROCESS COUNTERCLAIM

The Environmental Protection Agency ("EPA") issued Sunnyside Gold Corp.

("Sunnyside Gold") a unilateral administrative order under the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9606(a), to perform

response actions in the Bonita Peak Mining District in San Juan County, Colorado. In a

counterclaim to the United States' cost-recovery crossclaim, Sunnyside Gold seeks review of

EPA's order on the basis that the order was issued in violation of its procedural and substantive

due process rights under the Fifth Amendment. The United States moves under Federal Rule of

Civil Procedure 12(c) for judgment on the pleadings on that counterclaim.

Sunnyside Gold's claim is jurisdictionally barred by 42 U.S.C. § 9613(h), a CERCLA

provision that limits the availability of judicial review for orders issued under § 9606(a). To the

extent that Sunnyside Gold's claim survives that jurisdictional bar, Sunnyside Gold fails to state

a procedural due process claim because courts have consistently held that CERCLA provides

adequate judicial safeguards before a recipient of a § 9606(a) order is deprived of any protected

property or liberty interest. Finally, Sunnyside Gold fails to plead factual allegations that meet the high bar to state a substantive due process claim.[1]

## STATUTORY AND REGULATORY FRAMEWORK

Congress enacted CERCLA in 1980 "in response to the serious environmental and health risks posed by industrial pollution."[2] *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA "was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). "As its name implies, CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994).[3]

CERCLA contemplates two types of responses to environmental contamination. "Generally, a removal action costs less, takes less time, and is geared to address an immediate release or threat of release." *Pub. Serv. Co. of Colo. v. Gates Rubber Co.*, 175 F.3d 1177, 1182 (10th Cir. 1999); 42 U.S.C. § 9601(23). A remedial action is "consistent with [a] permanent

---

[1]   Pursuant to D.N.M.LR-Civ.7.1(a) and the Special Master's November 8, 2018 order (ECF No. 125), counsel for the United States met and conferred on this motion with counsel for Sunnyside Gold by telephone. Sunnyside Gold opposes this motion.

[2]   CERCLA is also known as "Superfund," for the Hazardous Substances Superfund that it establishes. 42 U.S.C. § 9611(a); 26 U.S.C. § 9507.

[3]   The President has delegated CERCLA authority to various agencies. As relevant here, EPA is one of the agencies that has been delegated the authority to issue administrative orders under section 106(a) of CERCLA, 42 U.S.C. § 9606(a). Exec. Order No. 12,580, § 4(d)(1), 52 Fed. Reg. 2923 (Jan. 23, 1987), *reprinted in* 42 U.S.C. § 9615 note; Exec. Order No. 13,016, 61 Fed. Reg. 45,871 (Aug. 30, 1996).

remedy taken instead of or in addition to removal actions." 42 U.S.C. § 9601(24). Together,

removal and remedial actions are called "response" actions. *Id.* § 9601(25).

CERCLA imposes liability for response costs on four categories of persons ("potentially

responsible parties," or "PRPs"). Those persons are (1) those who "own" or "operate" a facility[4]

from which there is a release or threatened release of hazardous substances, (2) those who

previously owned or operated such a facility "at the time of disposal of any hazardous

substance," (3) those who "arrange[] for disposal or treatment" of hazardous substances, and

(4) those who "accept[] . . . any hazardous substances for transport to disposal or treatment

facilities." 42 U.S.C. § 9607(a)(1)–(4).

CERCLA gives EPA a number of ways to respond to environmental contamination. *Gen.*

*Elec. Co. v. Jackson*, 610 F.3d 110, 114 (D.C. Cir. 2010). First, EPA may negotiate a settlement

in which PRPs agree to perform or finance all or part of the response actions. 42 U.S.C.

§ 9622(a). Second, EPA itself may perform response actions using Superfund money and then

bring a judicial cost-recovery action against PRPs. *Id.* §§ 9604(a), 9607(a)(4)(A). Third, EPA

may file suit in federal district court for an injunction requiring PRPs to perform response

actions. *Id.* § 9606(a). Fourth, and as it did here, EPA may issue a unilateral administrative order

requiring performance of response actions. *Id.* To issue such an order, EPA must determine that

"there may be an imminent and substantial endangerment to the public health or welfare or the

environment because of an actual or threatened release of a hazardous substance from a

facility." *Id.*

---

[4]     A facility is defined broadly as, inter alia, "any site or area where a hazardous substance
has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C.
§ 9601(9).

A person who receives a § 9606(a) order and disagrees with it can proceed in one of two ways. First, the recipient can comply with the order and then petition EPA for reimbursement of the response costs that it incurred, plus interest. *Id.* § 9606(b)(2)(A). To obtain reimbursement, the recipient must establish either that it is not liable for response costs, *id.* § 9606(b)(2)(C), or that the response action that EPA required was arbitrary and capricious or otherwise not in accordance with the law, *id.* § 9606(b)(2)(D). If EPA denies reimbursement, then judicial review of that denial is available in federal district court. *Id.* § 9606(b)(2)(B).[5]

Second, the recipient of the order can decline to comply. EPA can then choose to either seek judicial enforcement of the order or perform the response actions itself and bring a cost-recovery suit against the recipient of the order. To obtain judicial enforcement of the order, EPA must file an action in federal district court. *Id.* § 9606(b)(1). In such an action, the court "may" impose a fine if it finds that the recipient of the order "willfully" failed to comply "without sufficient cause."[6] *Id.* § 9606(b)(1). Alternatively, EPA can perform the response actions itself and sue for cost recovery. *Id.* § 9607(a)(4)(A), (c)(3). In that subsequent cost-recovery action, EPA can seek up to treble punitive damages for noncompliance with the order, but only if the court finds that the recipient failed to comply with the order "without sufficient cause." *Id.* § 9607(c)(3). In either judicial action, the defendant PRP can raise defenses to liability as well as defenses to EPA's request for penalties or punitive damages.

---

[5]     On judicial review, liability is reviewed de novo. *Kelley v. EPA*, 15 F.3d 1100, 1108 (D.C. Cir. 1994). EPA's selection of a response action is reviewed on the administrative record. *Id.* at 1107; 42 U.S.C. § 9613(j)(1), (k)(1).

[6]     The maximum daily fine has been adjusted for inflation by regulation to $57,317 per day. 42 U.S.C. § 9606(b)(1); 40 C.F.R. § 19.4; Civil Monetary Penalty Inflation Adjustment Rule, 84 Fed. Reg. 2056 (Feb. 6, 2019).

## BACKGROUND

### I.   Factual Background

On August 5, 2015, a release of an estimated three million gallons of water from the Gold King Mine occurred during an EPA field investigation of the mine entrance. U.S. Crossclaims[7] ¶ 82; Sunnyside Gold Answer to Crossclaims[8] ¶ 82.

On September 9, 2016, EPA listed the Bonita Peak Mining District on the National Priorities List. 81 Fed. Reg. 62,397, 62,401 (Sept. 9, 2016); U.S. Crossclaims ¶ 45; Sunnyside Gold Answer to Crossclaims ¶ 45. The Bonita Peak Mining District contains the Gold King Mine. U.S. Crossclaims ¶ 47 & Ex. 1; Sunnyside Gold Answer to Crossclaims ¶ 47; Sunnyside Gold Counterclaims[9] ¶ 44. The Bonita Peak Mining District also contains the Sunnyside Mine, where Sunnyside Gold produced ore from about 1986 to 1991. U.S. Crossclaims ¶ 47 & Ex. 1; Sunnyside Gold Answer to Crossclaims ¶ 47; Sunnyside Gold Counterclaims ¶¶ 5, 31–32.

On March 15, 2018, EPA issued a unilateral administrative order under § 9606(a) of CERCLA that directed Sunnyside Gold to perform certain response actions in the Bonita Peak Mining District. Sunnyside Gold Counterclaims ¶ 35. According to Sunnyside Gold's allegations, Sunnyside Gold "expended considerable costs" to comply with the order, but EPA

---

[7]     The United States filed identical crossclaims in *New Mexico v. United States*, No. 16-cv-465 (D.N.M.), and *Navajo Nation v. United States*, No. 16-cv-931 (D.N.M.). The filings were entered in the MDL docket, No. 18-md-02824 (D.N.M.), as ECF Nos. 192, 195.

[8]     Sunnyside Gold's answers to the United States' crossclaims were not filed in the MDL docket. Those answers can be found in the individual case docket for the *New Mexico* action, No. 16-cv-465 (D.N.M.), as ECF Nos. 375, 376.

[9]     Sunnyside Gold filed identical counterclaims to the United States' cross-claims in the *New Mexico* and *Navajo Nation* actions. Those counterclaims are contained in the same documents as Sunnyside Gold's answers to the United States' crossclaims but with separately numbered paragraphs. No. 16-cv-465 (D.N.M.), ECF Nos. 375, 376.

then "substantially modified" the statement of work associated with that order to make Sunnyside Gold's expenditures worthless. *Id.* ¶ 36.

## II.   <u>Procedural History</u>

The United States and Sunnyside Gold are both defendants in a number of cases filed following the August 5, 2015 Gold King Mine release that were transferred into this multi-district litigation.

As part of its response to New Mexico's and Navajo Nation's first amended complaints, the United States brought crossclaims for CERCLA cost recovery and contribution against Sunnyside Gold. U.S. Crossclaims ¶¶ 129–47. As part of its response, Sunnyside Gold filed counterclaims against the United States. Sunnyside Gold Counterclaims ¶¶ 43–77. This motion concerns Sunnyside Gold's fourth counterclaim, which claims a violation of Sunnyside Gold's procedural and substantive due process rights by the United States. *Id.* ¶¶ 70–77.

The core allegation underlying Sunnyside Gold's due process claim is that EPA issued an improper § 9606(a) order against it. Sunnyside Gold claims that the order was improper for a number of reasons: because EPA wrongly identified Sunnyside Gold as a PRP, *id.* ¶ 74(a); because there was no actual or threatened release presenting an imminent and substantial endangerment to public health, welfare, or the environment, *id.* ¶ 74(e); because EPA did not provide adequate notice of the order and subsequent modified statement of work, *id.* ¶ 74(h); because the modified statement of work imposed an unreasonable timeline for the required action, *id.* ¶ 74(k); and because the order required Sunnyside Gold to undertake unnecessary response actions, *id.* ¶ 74(*l*), (n), (*o*). Sunnyside Gold alleges that EPA issued the order improperly because EPA had a conflict of interest resulting from EPA's own supposed PRP status at the Bonita Peak Mining District. *Id.* ¶ 74. Accordingly, EPA allegedly issued the order

6

to "target [Sunnyside Gold], generate confusion, impair [Sunnyside Gold]'s ability to defend itself, and to wrongfully shift the focus and blame for the Gold King Blowout away from EPA." *Id.* ¶ 74(f). The United States denies those allegations. U.S. Answer to Sunnyside Gold Counterclaims[10] ¶ 74.

As remedies for the alleged due process violations, Sunnyside Gold seeks: (1) a declaration that the United States' issuance of the unilateral administrative order violated the Due Process Clause, (2) an order that EPA "be removed as lead agency" at the Bonita Peak Mining District, and (3) a declaration that § 9606 and the President's delegation of that authority to EPA are unconstitutional as applied to this situation. Sunnyside Gold Counterclaims at 37 (Prayers for Relief (vi)–(ix)).

## STANDARD OF REVIEW

A party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). The defense of failure to state a claim upon which relief can be granted may be raised in a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B). The defense of lack of jurisdiction can be raised at any time. Fed. R. Civ. P. 12(h)(3); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

"Depending on the substance and issues involved in a 12(c) motion for judgment on the pleadings, the Court will either treat it as a rule 12(b)(6) motion or a rule 12(b)(1) motion." *Swepi, LP v. Mora Cty., N.M.*, 81 F. Supp. 3d 1075, 1146 (D.N.M. 2015); *see also Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (defense of failure to

---

[10]     The United States' answers to Sunnyside Gold's counterclaims were filed at No. 16-cv-465 (D.N.M.), ECF Nos. 424, 425.

state a claim, when raised under Rule 12(c), is evaluated using same standard as Rule 12(b)(6)

motion); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (same).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action

for lack of jurisdiction. "The party invoking the jurisdiction of the court has the duty to establish

that federal jurisdiction does exist . . . ." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909

(10th Cir. 1974).

Under the Rule 12(b)(6) standard, a plaintiff must plead factual allegations that are

sufficient to "state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). The Court must "accept as true all well-pleaded factual allegations in a complaint and

view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561

F.3d 1090, 1098 (10th Cir. 2009). But "mere 'labels and conclusions' and 'a formulaic recitation

of the elements of a cause of action' will not suffice," and the Court must "disregard conclusory

statements." *Khalik*, 671 F.3d at 1191 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

## I.   Sunnyside Gold's due process claim is jurisdictionally barred by 42 U.S.C. § 9613(h).

Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), bars judicial review of any challenges

to removal or remedial action selected under § 9604 or of any order issued under § 9606(a), other

than in certain limited circumstances:

> No Federal court shall have jurisdiction under Federal law other than [exceptions
> not relevant here] to review any challenges to removal or remedial action selected
> under section 9604 of this title, or to review any order issued under section 9606(a)
> of this title, in any action except one of the following:
>
> (1) An action under section 9607 of this title to recover response costs or damages
>     or for contribution.

8

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

"Section [9613(h)] is clear and unequivocal. It amounts to a 'blunt withdrawal of federal jurisdiction.'" *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 328 (9th Cir. 1995) (quoting *N. Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir. 1991)). This provision "does not distinguish between constitutional and statutory challenges; instead, it delays judicial review of 'any' challenges to unfinished remedial action." *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1075 (11th Cir. 2002); *see also Aztec Minerals Corp. v. EPA*, 198 F.3d 257 (10th Cir. 1999) (table opinion); *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 293 (6th Cir. 1991); *Farmers Against Irresponsible Remediation ex rel. Hanehan v. EPA*, 165 F. Supp. 2d 253, 262 (N.D.N.Y. 2001); *S. Macomb Disposal Auth. v. EPA*, 681 F. Supp. 1244, 1249–50 (E.D. Mich. 1988).

Sunnyside Gold alleges that the § 9606(a) order that EPA issued to Sunnyside Gold was improper because the statutory prerequisite was not met, Sunnyside Gold Counterclaims ¶ 74(e); because the response actions required by the order were unreasonable and unnecessary, *id.* ¶ 74(k), (n); and because EPA issued the order based on an improper motive and because of its

conflict of interest, *id.* ¶ 74(g), (r). Among the remedies that Sunnyside Gold seeks is a declaration that the issuance of the order was unconstitutional. *Id.* at 37 (Prayers for Relief (vii)).

If Sunnyside Gold had filed suit seeking review of the § 9606(a) order on those grounds, that suit would be barred by § 9613(h). On the other hand, if EPA had sought to enforce the order or to recover penalties for Sunnyside Gold's noncompliance, § 9613(h)(2) would allow a court to review the order, including by considering Sunnyside Gold's defense that the order was issued without due process.

Neither of those is the posture of this case. Instead, Sunnyside Gold's attempt to obtain review of the order by filing a counterclaim to the United States' cost-recovery claim presents a novel jurisdictional question. The United States has filed suit against Sunnyside Gold — but not to enforce the § 9606(a) order or to seek penalties. Instead, the United States seeks to recover costs that it incurred in performing response actions at Bonita Peak Mining District and to obtain a declaratory judgment for future costs. U.S. Crossclaims ¶¶ 129–44. The question is thus whether that cost-recovery claim allows Sunnyside Gold to use § 9613(h)(1) as a vehicle to obtain review of a § 9606(a) order that would otherwise be beyond the Court's jurisdiction.[11]

The answer is no. To be clear, Sunnyside Gold can defend itself against the United States' cost recovery claim: Sunnyside Gold can argue that that it is not liable as a PRP, 42 U.S.C. § 9607(a)(1)–(4); that the costs being sought are inconsistent with the National

---

[11]     Sunnyside Gold's counterclaim does not even arguably implicate any other § 9613(h) exception. Section 9613(h)(2) does not apply because EPA has not sought to enforce the § 9606(a) order. *See* 42 U.S.C. § 9606(b)(1). Section 9613(h)(3) allows for review of a § 9606(a) order in an action for reimbursement from EPA once the recipient has completed the work. *See* 42 U.S.C. § 9606(b)(2). But Sunnyside Gold has not completed the required work, and it has not petitioned EPA for reimbursement. Section 9613(h)(4) does not apply because Sunnyside Gold has not filed an action under the CERCLA citizen-suit provision. *See id.* § 9659. Section 9613(h)(5) does not apply because EPA has not sued to compel remedial action. *See id.* § 9606(a).

Contingency Plan, *id.* § 9607(a)(4)(A); or that it has a statutory defense to liability, *id.* § 9607(b). To argue that the costs being sought are inconsistent with the National Contingency Plan, Sunnyside Gold can attempt to demonstrate, on the administrative record, that the response actions for which the United States is seeking cost recovery were "arbitrary and capricious or otherwise not in accordance with law." *Id.* § 9613(j)(2); *In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 904–05, 907 (5th Cir. 1993); *United States v. Hardage*, 982 F.3d 1436, 1443 (10th Cir. 1992). Section 9613(h)(1) gives the Court jurisdiction to review the § 9606(a) order as necessary for Sunnyside Gold to assert those defenses. To the extent that the United States seeks costs for response actions that EPA performed following Sunnyside Gold's noncompliance with the order, there is no such need because the validity of the order is not at issue; the question is instead whether the response actions that EPA subsequently performed were arbitrary and capricious. But to the extent that the United States seeks to recover costs that EPA incurred in issuing the § 9606(a) order, § 9613(h) allows Sunnyside Gold to argue as a *defense* that those specific costs are unrecoverable because the order was issued unlawfully. However, Sunnyside's due process argument is at most a defense to that limited part of the United States' cost-recovery claim. Sunnyside cannot *affirmatively* attack EPA's § 9606(a) order through a due process counterclaim to the United States' cost-recovery action. That counterclaim does not fall within the § 9613(h)(1) exception.

Additionally, Sunnyside Gold's counterclaim is barred because it is a "challenge[] to [a] removal or remedial action selected under section 9604." 42 U.S.C. § 113(h). Sunnyside Gold seeks an injunction to remove EPA's presidentially delegated authority to respond to contamination in the Bonita Peak Mining District. Sunnyside Gold Counterclaims at 37 (Prayers for Relief (viii)). Such relief would halt cleanup at the site — an impermissible interference with

11

environmental cleanup of the sort that Congress sought to prevent by enacting § 9613(h). As

such, § 9613(h) bars this Court's jurisdiction. *See Cannon v. Gates*, 538 F.3d 1328, 1336 (10th

Cir. 2008) ("[T]he broad statutory language [in § 9613(h)] indicates that Congress intended to

strip federal jurisdiction from any challenge that would interfere with an ongoing removal or

remediation process."); *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 665 (7th Cir. 1995)

("Insofar as the company sought merely to vacate or narrow the [§ 9606(a)] order as inconsistent

with the authorizing statute, it ran afoul of section 9613(h), the provision that provides the

exclusive methods of challenging clean-up orders — and they do not include a suit for injunctive

or declaratory relief by the person ordered to perform a clean-up."); *United States v. NL Indus.,*

*Inc.*, 936 F. Supp. 545, 551 (S.D. Ill. 1996) ("[T]he Court concludes that § [9613](h)(1) does not

provide federal courts with jurisdiction to enjoin an ongoing remedial action. Rather,

§ [9613](h)(1) gives federal courts jurisdiction to review the propriety of the EPA's selected

remedy once a § [9607] action is filed. Defendants may assert defenses to liability, but the statute

does not explicitly permit the Court to enjoin an ongoing remedial action.").

For the above reasons, Sunnyside Gold's due process counterclaim is barred by

§ 9613(h), the Court lacks jurisdiction, and the claim should be dismissed.

## II.     <u>Sunnyside Gold fails to state a procedural due process claim.</u>

Courts have consistently rejected claims that CERCLA infringes the procedural due

process rights of recipients of unilateral administrative orders. *E.g.*, *Gen. Elec. Co.*, 610 F.3d at

113–14 (affirming district court's grant of summary judgment to EPA on both facial due process

challenge and "pattern and practice" due process challenge to CERCLA § 9606(a)); *Employers*

*Ins. of Wausau*, 52 F.3d at 660 ("The constitutional challenge is baseless; as we shall see, the

remedies that the Superfund law creates against invalid clean-up orders fully satisfy the

12

requirements of due process."); *Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 388 (8th Cir.

1987); *Wagner Seed Co. v. Daggett*, 800 F.2d 310, 315–17 (2d Cir. 1986); *United States v.*

*Capital Tax Corp.*, No. 04 C 4138, 2007 WL 488084, at *3 (N.D. Ill. Feb. 8, 2007); *Raytheon*

*Aircraft Co. v. United States,* 501 F. Supp. 2d 1323, 1325 (D. Kan. 2007).

Sunnyside Gold's procedural due process claim fares no better, and the claim should be

dismissed. The only deprivation of a protected interest that Sunnyside Gold identifies is its

expenditure of response costs to begin complying with the § 9606(a) order. But courts have

consistently held that CERCLA provides recipients of § 9606(a) orders with adequate

opportunities for judicial process before any deprivation. The United States' own alleged PRP

status and alleged conflict of interest do not undermine those statutory protections, and thus do

not require a different outcome from those prior cases.

### A. The only deprivation of a protected interest that Sunnyside Gold identifies is its expenditure of costs to comply with the § 9606(a) order.

The government may not deprive persons of a protected property or liberty interest

without due process of law. U.S. Const. amend. V; *Mathews v. Eldridge*, 424 U.S. 319, 332

(1976). The "range of interests" protected by the due process clause is broad, but it is "not

infinite." *Paul v. Davis*, 424 U.S. 693, 709 (1976). "The first inquiry in every due process

challenge is whether the plaintiff has been deprived of a protected interest in 'property' or

'liberty.' . . . Only after finding the deprivation of a protected interest do we look to see if the

[government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526

U.S. 40, 59 (1999); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Sunnyside Gold alleges that it incurred costs to comply with the § 9606(a) order that EPA

issued to it. Sunnyside Gold Counterclaims ¶¶ 36, 53. Without waiving any challenges to

Sunnyside Gold's ability to recover those costs under CERCLA, the United States does not

contest that such costs may be cognizable property interests entitled to due process protection. However, the presence of such an interest does not alone support a due process claim. Rather, Sunnyside Gold fails to state a claim because CERCLA provides adequate safeguards to protect any alleged cognizable interest. *See infra* Section II.B.

 None of Sunnyside Gold's other alleged deprivations are of cognizable property or liberty interests that trigger procedural due process analysis. Sunnyside Gold alleges that through issuance of the order, EPA has "target[ed] [Sunnyside Gold], generate[d] confusion, impair[ed] [Sunnyside Gold]'s ability to defend itself, and . . . wrongfully shift[ed] the focus and blame for the Gold King Mine Blowout away from EPA." Sunnyside Gold Counterclaims ¶ 74(f). None of those allegations, even if true, is a deprivation of a protected property or liberty interest. There is no due process–protected interest in not being the subject of administrative action, not being associated with confusion, or not having focus or blame shifted onto oneself. *See Gen. Elec. Co.*, 610 F.3d 121 ("[S]tigma alone is insufficient to invoke due process protections." (citing *Paul v. Davis*, 424 U.S. 693, 704–06 (1976))).

 Additionally, Sunnyside Gold alleges that EPA's order "wrongfully deprives [Sunnyside Gold] of its right to defend itself," *id.* ¶ 74(q), and that Sunnyside Gold has been deprived of a "right to oversight by a fair, impartial, and properly motivated administrator," *id.* ¶ 74(u). But Sunnyside Gold's "right to defend itself" and right to a fair process are not themselves either protected property or liberty interests. Rather, the Due Process Clause guarantees procedural protections only to the extent that they are necessary to protect a substantive property or liberty interest. *Olim*, 461 U.S. at 250 ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement"); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The categories of substance

and procedure are distinct. Were the rule otherwise, the [Due Process] Clause would be reduced to a mere tautology."). Sunnyside Gold's claim amounts to an assertion that its due process rights were violated because it did not receive due process. Such a tautological assertion, without identification of an underlying substantive property interest, is not enough to maintain a procedural due process claim. *See Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) (affirming dismissal of procedural due process claim where the claimant "really seem[ed] to be arguing that he has a property interest in the procedures [for approving his proposed zoning ordinance amendment] themselves"); *Allen v. Mecham*, No. CIV.A. 05-1007(GK), 2006 WL 2714926, at *3 (D.D.C. Sept. 22, 2006) (rejecting claim that "right to a fair hearing" is itself a cognizable property interest).[12]

The only deprivation of a protected interest that Sunnyside Gold identifies is its expenditure of costs to comply with the § 9606(a) order. That interest is the only one that is susceptible to due process analysis.

## B. CERCLA affords a full and fair opportunity to be heard by a federal court before any deprivation of compliance costs.

To the extent that Sunnyside Gold is claiming that the § 9606(a) order deprived it of the costs that it incurred to perform the required action, courts have consistently held that CERCLA satisfies due process by providing adequate opportunities to be heard before any deprivation.

That is because a PRP that receives a § 9606(a) order always has the opportunity to access a judicial forum by declining to comply. In that case, no deprivation of response costs, penalties, or damages can occur prior to a hearing in federal district court. "[T]he mere issuance of the order does not create a cognizable deprivation of a significant property interest triggering

---

[12]     Even if a "right to defend itself" were a cognizable due process interest, Sunnyside Gold has not been deprived of any opportunity to defend itself. *See infra* Section II.B.

the procedural due process analysis . . . . The ability of the PRP to choose, under the language of the statute, whether to comply with a section [9606] order is key. Upon a refusal to comply with a section [9606] order, EPA is powerless to deprive the PRP of property without judicial intervention." *Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 339 (D.D.C. 2005), *aff'd sub nom. Gen. Elec. Co.*, 610 F.3d 110; *Employers Ins. of Wausau*, 52 F.3d at 661 (discussing availability of "opportunity . . . to put the EPA to its proof that the Superfund law really did require the [recipient of the order] to clean up the site").

That judicial hearing can arise in one of two contexts. First, the United States may file an action in federal district court seeking an injunction requiring the PRP to comply with EPA's order, as well as civil penalties for noncompliance. 42 U.S.C. § 9606(b)(1). In that action, the defendant PRP can raise any liability defenses, any challenges to the scope or validity of the order, and any defenses to EPA's request for penalties. Alternatively, EPA may itself perform the response actions required by the order and subsequently file a judicial action to recover its response costs from the PRP. *Id.* § 9607(a)(4)(A). In that action, EPA can ask the court to impose punitive damages for noncompliance with the order. *Id.* § 9607(c)(3). Once again, the defendant PRP can raise defenses to liability and defenses to EPA's request for punitive damages.[13]

In sum, CERCLA provides a person that receives and disputes a § 9606(a) order with a full and fair opportunity to be heard by an Article III judge prior to any deprivation of a protected interest. The recipient of such an order need not take any action to comply with the order or pay any costs or penalties until after a federal court has heard and ruled on any defenses it may have.

---

[13]     The exceptions in § 9613(h)(1) and (2) ensure that a defendant PRP can raise any arguments necessary to defend itself in either type of judicial action.

For this reason, multiple courts have held that this opportunity for a pre-deprivation judicial hearing fully satisfies the requirements of constitutional due process. *Supra* pp. 12–13 (citing cases).

In addition to those procedures, CERCLA provides another option: a reimbursement process for a PRP that chooses to comply with an order and subsequently challenge the validity of the order. 42 U.S.C. § 9606(b)(2). By providing this additional procedural option, CERCLA goes above and beyond the constitutional minimum to satisfy due process. *Employers Ins. of Wausau*, 52 F.3d at 664 (holding that CERCLA "would not violate the Constitution even if there were no reimbursement provision" and that CERCLA "certainly does not violate [the Constitution] given the additional if imperfect remedy which [the reimbursement] provision grants").

Tellingly, Sunnyside Gold does not identify any additional pre-deprivation process that it seeks and thus cannot explain why any additional process would be more effective in protecting rights than the full opportunity for pre-deprivation judicial review that is already available. Sunnyside Gold complains that the order contains "findings and conclusions not subject to further agency review, and there is no entitlement to further agency review." Sunnyside Gold Counterclaims ¶ 74(j). But the unavailability of further opportunities for agency review of an administrative order cannot be a due process violation when Article III judicial review is available.[14]

---

[14]     For this reason, Sunnyside's allegation that its "protected property interests are seized by an unreviewable administrator" rings hollow. Sunnyside Counterclaims ¶ 76.

### C.    The United States' alleged conflict of interest does not undermine CERCLA's procedural protections.

That the United States is allegedly also a PRP at the site has no bearing on the availability of a full and fair opportunity for pre-deprivation judicial review, as EPA has done nothing to impede Sunnyside Gold's ability to seek pre-deprivation review by an independent judiciary.

Sunnyside Gold alleges that because the United States is allegedly a PRP at the Bonita Peak Mining District National Priorities List site, the United States has a conflict of interest. Sunnyside Gold Counterclaims ¶ 74. Sunnyside Gold further alleges that because of that conflict of interest, EPA issued an improper order that does not address an imminent and substantial endangerment to public health, welfare, or the environment; instead, EPA allegedly issued the order to shift negative attention away from itself and onto Sunnyside Gold. *Id.* ¶ 74(f).

Even if Sunnyside Gold's allegations are taken as true,[15] they are not sufficient to state a procedural due process claim, particularly in light of the well-established presumption of regularity for government actions. *See United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Franklin Savings Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1147 (10th Cir. 1991) ("When reviewing an agency's decision concerning matters lying within the agency's field of expertise, a reviewing court should begin by acknowledging that a presumption

---

[15]    The United States denies Sunnyside Gold's allegations, U.S. Answer to Sunnyside Gold Counterclaims ¶ 74, but understands that the Court will not resolve factual disputes at the Rule 12 stage.

of procedural and substantive regularity attaches."); *Colo. Health Care Ass'n v. Colo. Dep't of Soc. Serv.*, 842 F.2d 1158, 1164 (10th Cir. 1988).[16]

Even assuming arguendo that there was some impropriety associated with EPA's issuance of the order (which the United States denies), that does not prevent Sunnyside Gold from declining to comply and forcing EPA to initiate judicial action if EPA wants to either enforce the order or recover costs for response action that EPA takes as a result. The guarantee of due process comes from the federal judiciary, which would be independent of any supposed EPA conflict of interest.

For that reason, another federal district court has already rejected the exact same argument that Sunnyside Gold is raising here:

> [The recipient of the § 9606(a) order] urges that the United States' dual role as both a PRP at the Site and the enforcer of CERCLA "distinguishes this case from all prior cases upholding CERCLA section [9606] . . ." . . . "Even assuming that the United States is itself a PRP and that the United States received favorable treatment by the EPA to [the § 9606(a) order recipient]'s detriment, [the recipient], had it elected not to comply with the [unilateral administrative order], would nonetheless have been entitled to a "sufficient cause" defense as well as the availability of judicial discretion prior to the imposition of penalties. In other words, the United States' status as a PRP in no way affects the application of the penalty provisions of section [9606] and does not affect [the § 9606(a) order recipient]'s opportunity to challenge the validity of the order in a judicial forum.

*Raytheon Aircraft Co.*, 501 F. Supp. 2d at 1334.

Finally, EPA's issuance of a § 9606(a) order to Sunnyside Gold does not extinguish, or in any way affect, CERCLA liability for any other person (federal or otherwise). Sunnyside Gold

---

[16]    In a previous suit that Sunnyside Gold filed to challenge EPA's listing of the Bonita Peak Mining District on the National Priorities List, Sunnyside Gold argued — as it does here — that EPA was improperly motivated by a desire to deflect attention from its own involvement in the Gold King Mine release. *Sunnyside Gold Corp. v. EPA*, No. 16-1417 (D.C. Cir.), Pet. Br. at 7 & n.6, Pet. Reply Br. at 19. In denying Sunnyside Gold's petition, the D.C. Circuit commented that Sunnyside Gold's petition did not merit a published opinion. Judgment (March 6, 2018), Doc. No. 1720731.

Counterclaims ¶ 74(a) (alleging that EPA issued the order to Sunnyside Gold but "has not . . . pursued" any federal CERCLA liability). Sunnyside Gold maintains the right under CERCLA, 42 U.S.C. § 9613(f)(1), to seek contribution from any other PRPs, including any federal PRP.[17] For that reason, Sunnyside Gold is wrong as a matter of law that the issuance of an improper order by a supposedly conflicted EPA "adversely impact[s] [Sunnyside Gold]'s right and ability to defend itself in the litigation created by EPA's Gold King Mine Blowout." Sunnyside Gold Counterclaims, ¶ 74(p). Because EPA's issuance of the § 9606(a) order does not affect the availability of other judicial remedies to Sunnyside Gold, the order does not "circumvent the protection that would otherwise be provided by the Federal Rules of Civil Procedure, and the Court, in the ongoing litigation." *Id.* ¶ 75.

## III.    Sunnyside Gold fails to state a substantive due process claim.

Substantive due process protects against "arbitrary action of government," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)), and "bar[s] certain government actions regardless of the fairness of the procedures used to implement them," *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cty. of Sacramento*, 523 U.S. at 846 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)). "[T]he cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* at 846; *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937))).

---

[17]    Sunnyside Gold has in fact brought a contribution counterclaim against the United States. Sunnyside Gold Counterclaims, ¶¶ 58–69.

"Under this framework, due process protections are accorded primarily 'to matters relating to marriage, family, procreation, and the right to bodily integrity.'" *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)); *see also Becker v. Kroll*, 494 F.3d 904, 923 (10th Cir. 2007) ("[The shock-the-conscience] standard is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity.").

The challenged government action in this case does not fit into any of those categories. EPA's issuance of a § 9606(a) order does not infringe on bodily integrity or family matters. The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins*, 503 U.S. at 125. Likewise, this Court should impose a high bar and not allow Sunnyside Gold's substantive due process claim to proceed without specific factual allegations of conscience-shocking government action.

Sunnyside Gold pleads its substantive due process claim in a conclusory manner. Sunnyside Gold Counterclaims ¶ 74(v) (unilateral administrative order "interfere[s] with rights implicit in the concept of ordered liberty"); *id.* ¶ 76 ("EPA's efforts in targeting [Sunnyside Gold] . . . shocks the conscience and deprives [Sunnyside Gold] of the most basic of rights necessary for ordered liberty"). Such conclusory allegations do not suffice to state a claim upon which relief can be granted. *Khalik*, 671 F.3d at 1191 (stating that under Rule 12(b)(6), courts "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable").

The actual factual allegations do not describe any official conduct that is egregious in the constitutional sense. Sunnyside Gold alleges, in essence, that EPA issued an invalid order against

it for improper motives. Sunnyside Gold suffers no immediate consequences from the order,

though, let alone any egregious consequences. After all, Sunnyside Gold can decline to comply

and obtain judicial review prior to any deprivation of a protected interest. *See supra* Section II.B.

Sunnyside Gold fails to state a substantive due process claim.

## CONCLUSION

The Court should grant judgment on the pleadings in favor of the United States on

Sunnyside Gold's fourth counterclaim to the United States' crossclaims in the *New Mexico* and

*Navajo Nation* actions.

Respectfully submitted,

*/s/ Tsuki Hoshijima*
BRIAN H. LYNK
ALAN GREENBERG
MEGHAN GREENFIELD
TSUKI HOSHIJIMA
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3468
tsuki.hoshijima@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2019, I filed the foregoing using the Court's CM/ECF

system, which will electronically serve all counsel of record registered to use the CM/ECF

system.

/s/ Tsuki Hoshijima