**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,
ON AUGUST 5, 2015

No. 1:18-md-02824-WJ

*This Document Relates to:* *No. 1:16-cv-00465-WJ-LF*
*No. 1:16-cv-00931-WJ-LF*
*No. 1:18-cv-00319-WJ*
*No. 1:18-cv-00744-WJ-KK*

**MEMORANDUM OPINION AND ORDER**
**GRANTING KINROSS GOLD U.S.A. AND KINROSS GOLD CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF NEW MEXICO, THE NAVAJO NATION, UTAH AND THE *ALLEN* PLAINTIFFS: PERSONAL JURISDICTION**

**THIS MATTER** comes before the Court on Kinross Gold U.S.A. Inc. ("KGUSA") and Kinross Gold Corporation's ("KGC") (collectively "the Kinross Defendants") Motion for Summary Judgment on the Claims of New Mexico, the Navajo Nation, Utah and the *Allen* Plaintiffs: Personal Jurisdiction, Doc. 866, filed October 13, 2020 ("Motion").

The Kinross Defendants assert that they are not subject to personal jurisdiction in either the State of New Mexico or the State of Utah and move for summary judgment on all claims asserted in this action by New Mexico, the Navajo Nation, Utah, and the *Allen* Plaintiffs. The *Allen* Plaintiffs[1] contend that the Kinross Defendants' contacts with New Mexico, through the actions of the Kinross Defendants' purported agent Sunnyside Gold Corporation ("Sunnyside"), give rise to specific jurisdiction.[2]

---

[1] The Kinross Defendants have withdrawn their Motion as to New Mexico, the Navajo Nation and Utah because they have reached an agreement with those Plaintiffs. *See* Doc. 1005, filed January 8, 2021 (withdrawing Motion as to New Mexico and the Navajo Nation); Doc. 1139, filed March 15, 2021 (withdrawing Motion as to Utah).

[2] The Court has ruled that the *Allen* Plaintiffs' claims against Sunnyside, which are based on Sunnyside's design, planning and construction of the bulkheads, are barred by Colorado's statute of repose. *See* Doc. 1156, filed March 31, 2021. The Court notes that:

**Personal Jurisdiction**

An out-of-state defendant's contacts with the forum state may give rise to either general jurisdiction or specific jurisdiction:

> (i) "General personal jurisdiction means that a court may exercise jurisdiction over an out-of-state party for all purposes. A court may assert general jurisdiction over foreign ... corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State;" or
>
> (ii) "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."

*Old Republic Insurance Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903-04 (10th Cir. 2017) (citations and quotation marks omitted). The *Allen* Plaintiffs do not contend that the Kinross Defendants' contacts satisfy the general jurisdiction standard, so only specific jurisdiction is at issue.

**Specific Jurisdiction**

---

> A principal is entitled to all of the defenses arising out of a transaction between an agent and a third person but not to defenses which are personal to the agent. Circumstances in which it would be improper to permit a third person to proceed solely against a principal based on its vicarious liability for the conduct of an agent include the following: ... (3) when the agent is immune from suit, either by statute or by the common law;

3 Am. Jur. 2d Agency § 315, Actions and Remedies of Third Person, Against principal (2021) (citing *New Jersey Life Ins. Co. v. Getz*, 622 F.2d 198 (6th Cir. 1980)). The Court declines to address at this time whether the *Allen* Plaintiffs' claims against the Kinross Defendants are barred by Colorado's statute of repose because the Parties have not briefed the issue. On April 22, 2021, the Kinross Defendants filed a motion for summary judgment asserting that the *Allen* Plaintiffs' claims against the Kinross Defendants are also barred by Colorado's statute of repose. *See* Doc. 1172. The Court will address the issue after the Kinross Defendants' recent motion is fully briefed.

Specific jurisdiction calls for a two-step inquiry: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 904.

Minimum Contacts

The minimum contacts test for specific jurisdiction has two distinct requirements: "(i) that the defendant must have purposefully directed its activities at residents of the forum state," and (ii) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic*, 877 F.3d at 904.

*Purposeful Direction*

"The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, ... or of the unilateral activity of another party or a third person. Mere foreseeability of causing injury in another state is insufficient to establish purposeful direction." *Old Republic*, 877 F.3d at 904-05 (citation omitted). Purposeful direction may be established where there is: "(a) an intentional action ... , that was (b) expressly aimed at the forum state ..., with (c) knowledge that the brunt of the injury would be felt in the forum state." *Old Republic*, 877 F.3d at 907.

*"Arising out of" Requirement*

Step two of the minimum contacts test requires the Court to determine whether the plaintiff's injuries "arise out of" the defendant's forum-related activities.

> The import of the 'arising out of' analysis is whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related activities. This requirement has been subject to different interpretations. Some courts have interpreted the phrase 'arise out of' as endorsing a theory of 'but-for' causation, while other courts have required proximate cause to support the exercise of personal jurisdiction. But-for causation means any event in the causal chain leading to the

> plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction. Considerably more restrictive is proximate causation, which turns on whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim. This court on several occasions has declined to choose between but-for and proximate causation, finding that neither test was outcome determinative given the facts at hand.

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1268, 1284-85 (10th Cir. 2020) (citations and quotation marks omitted).

Fair play and substantial justice (reasonableness)

The second part of the specific jurisdiction inquiry asks "whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 904.

> Even when a defendant has purposefully established minimum contacts with a forum state, minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction. We consider (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. A defendant must present a compelling case that factors like these render jurisdiction unreasonable. The reasonableness inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction. Still, instances where the exercise of personal jurisdiction offends fair play and substantial justice are rare.

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1268, 1289 (10th Cir. 2020) (citations and quotation marks omitted).

**Discussion**

The Kinross Defendants base their Motion on the following facts which are not disputed by the Allen Plaintiffs:[3]

---

[3] The *Allen* Plaintiffs have not properly disputed any of the facts asserted by the Kinross Defendants. A response to a motion for summary judgment:

(i) "KGUSA is a wholly owned subsidiary of Bema Gold (U.S.) Inc, a Nevada Corporation, which in turn is a wholly owned subsidiary of KGC." Motion at 4, ¶ 8.

(ii) "All of [Sunnyside's] shares are owned by Echo Bay, Inc., which ... is a wholly owned subsidiary of KGUSA." Motion at 4, ¶ 7.

(iii) "KGUSA did not own any direct or indirect interest in Echo Bay, Inc. or [Sunnyside], before [January 31, 2003]." Motion at 4, ¶ 9.

(iv) "[Sunnyside] closed the Sunnyside Mine on August 1, 1991 ... [and installed the third bulkhead[4]] in the American Tunnel in December of 2002." Motion at 5, ¶ 14.

(v) "On January 14, 2003, the State of Colorado issued notice that Permit No. CO-0027529, which permitted water discharged from the American Tunnel, had been transferred from [Sunnyside] to Gold King Mines Corporation." Motion at 5, ¶ 15.

(vi) "On February 26, 2003, Colorado's Department of Public Health and Environment determined that [Sunnyside] had fulfilled and met its obligations under the Colorado state court's Consent Decree. On July 3, 2002, the Consent Decree was terminated." Motion at 5, ¶ 16.[5]

---

> must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, **must refer with particularity to those portions of the record upon which the non-movant relies**, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum [in support of the motion for summary judgment] will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b) (emphasis added). The *Allen* Plaintiffs do not refer with particularity to portions of the record for any of the facts they dispute.

[4] A "bulkhead" is a hydraulic seal designed to block the discharge of water through a mine tunnel. See Response at 7, ¶ 2.

[5] The *Allen* Plaintiffs dispute this fact stating:

In their Response, the *Allen* Plaintiffs incorporate by reference their response to Sunnyside's motion for summary judgment for lack of personal jurisdiction. *See* Response at 1, Doc. 943, filed November 30, 2020. The *Allen* Plaintiffs contend that in their response to Sunnyside's motion for summary judgment for lack of personal jurisdiction, they "have identified genuine issues of material fact as to whether [Sunnyside's] conduct was expressly directed towards New Mexico."[6] Response at 26. The *Allen* Plaintiffs argue that because Sunnyside was an agent of the Kinross Defendants, as a result of the Kinross Defendants taking control of Sunnyside's operations, the Kinross Defendants are also subject to personal jurisdiction. *See* Response at 2.

The Allen Plaintiffs assert the following additional material facts regarding Sunnyside's and the Kinross Defendants' actions after January 31, 2003, which is when the Kinross Defendants acquired an interest in Sunnyside:

(i) The Kinross Defendants "first became aware of a potential blowout in 2007 when the new owner of the Gold King and Mogul mines repeatedly urged [Sunnyside] to

---

> Disputed to the extent that there is a contested material fact as to whether [Sunnyside] and the [Kinross Defendants] complied with all the terms of the Consent Decree or and/or whether [Sunnyside] and the [Kinross Defendants made complete and accurate representations to the State of Colorado regarding the Consent Decree, such as the fact that neighboring mines informed [Sunnyside] multiple times that impounded water from the Sunnyside Mine was infiltrating other mine networks, including the Gold King Mine Level 7 adit [a horizontal passage into the mine] where the blowout occurred. It is further disputed that the entry and approval of the Consent Decree is relevant [to] personal jurisdiction over the [Kinross Defendants].

Response at 5-6, ¶ 16. The Allen Plaintiffs do not refer with particularity to those portions of the record upon which they rely as required by D.N.M.LR-Civ. 56.1(b). They do not dispute that the Consent Decree was terminated.

[6] The Court did not address the merits of the *Allen* Plaintiff's response to Sunnyside's motion for summary judgment because the Court denied Sunnyside's motion as moot after ruling that the *Allen* Plaintiffs' claims against Sunnyside were barred by Colorado's statute of repose. *See* Doc. 1169, filed April 19, 2021.

re-open the bulkheads to prevent further flooding of the Gold King Mine and avoid a potential blowout." Response at 10, ¶ 24.

(ii) Gregory Etter, Senior Vice-President and later President of KGUSA, "was aware of the concerns that impounded water from the Sunnyside Mine was infiltrating other mines and that a blowout was a concern." Response at 10, ¶ 28.

(iii) Lauren Roberts, Director, President, and Regional Vice President of KGUSA and Director and President of Sunnyside, attended some meetings, "including the meeting where the new owner warned of a blowout." Response at 11, ¶¶ 29-30.

(iv) Sunnyside "knew that a blowout would cause substantial damage to downstream communities, including New Mexico and the Navajo Nation." Response at 11, ¶ 31.

(v) The Kinross Defendants "would have been aware of the Lake Emma incident as part of their due diligence investigation before acquiring [Sunnyside] and the Sunnyside Mine." The Lake Emma incident involved lake water "flowing through the Sunnyside Mine and the other workings that were connected to the Sunnyside Mine, including the American Tunnel; and then out through the American Tunnel and other portals into Cement Creek; and then down into the Animas River and beyond." Response at 11, ¶¶ 32-33.

(vi) The Kinross Defendants "filed and paid 'maintenance fees and intention to hold mining claims' for the Sunnyside Mine from 2012 to 2016." Response at 12, ¶ 37.

(vii) Sunnyside "carried out only 'minor reclamation' activities from 2003 until around 2011." Response at 12, ¶ 40.

(viii) "In 2011, [Sunnyside] offered to contribute $6.5 million to improve water quality in the Animas River and potentially avoid superfund status because [Sunnyside] knew that it could be potentially liable if the superfund listing was approved." Response at 13, ¶ 42.

(ix) KGUSA "contribute[d] ... $7,500 for the project to address acid mine drainage." Response at 13, ¶ 47.

(x) From 2011 to August 2015, prior to the Gold King Mine release, employees of the Kinross Defendants "prepared a health and safety plan ... for sampling activities to measure the effects of ore extracted from the Sunnyside Mine," "engaged" two contractors for the sampling activities, informed EPA that Sunnyside was "donating $10 million" to clean up the Animas River, responded to EPA's information requests on behalf of Sunnyside, and authorized EPA to access Sunnyside lands to conduct sampling activities. Response at 14-15, ¶¶ 48-58.

The *Allen* Plaintiffs also submitted several additional facts related to the Kinross Defendants' "assumption of control and direction over" Sunnyside. Response at 7-19, ¶¶ 7-23. Whether Sunnyside was an agent of the Kinross Defendants is immaterial because, as discussed below, Sunnyside's actions after January 31, 2003, when Kinross acquired an interest in Sunnyside, are insufficient to establish specific jurisdiction.

The Kinross Defendants have set forth undisputed facts showing that they did not own any direct or indirect interest in Sunnyside before January 31, 2003. The *Allen* Plaintiffs' additional facts regarding Sunnyside and the Kinross Defendants after January 31, 2002, assert that Sunnyside and/or the Kinross Defendants: (i) knew about the potential for a blowout; (ii) knew that a blowout would cause damage to downstream communities, including New Mexico; (iii) filed

and paid maintenance fees with intention to hold mining claims for the Sunnyside Mine; (iv) donated money to clean up the Animas River and address acid mine drainage; and (v) were involved with sampling activities regarding the ore at Sunnyside Mine.

The Kinross Defendants, and Sunnyside, do not have the minimum contacts with New Mexico to establish specific jurisdiction because the additional facts asserted by the Allen Plaintiffs do not meet the "purposeful direction" and "arising out of" requirements necessary for specific jurisdiction. The additional facts do not establish that the activities of paying maintenance fees, donating money to clean up the Animas River and being involved with sampling activities at the Sunnyside Mine, were aimed at New Mexico with the knowledge that those activities would cause harm in New Mexico. Nor do they establish that the Allen Plaintiffs' injuries arose from Sunnyside/the Kinross Defendants paying fees, donating money and conducting sampling activities.

In their Response to the Kinross Defendant's Motion, the *Allen* Plaintiffs state that Sunnyside's "failure to mitigate the risk of a blowout by refusing to re-open the bulkheads was an intentional action giving rise to specific jurisdiction in New Mexico." Response at 23 (referring to additional facts Nos. 24-36). In their response to Sunnyside's motion for summary judgment based on lack of personal jurisdiction, the *Allen* Plaintiffs stated "The above [additional material facts] supports Plaintiffs' allegations that [Sunnyside's] decision to install the bulkheads—and their subsequent refusal to remove them—is the root cause of the hazardous conditions that culminated in the August 5 blowout at the Gold King Mine." Doc. 942 at 9, ¶ 27, filed November 30, 2020. The *Allen* Plaintiffs have not referred to any portions of the record to support their contention that Sunnyside, had a duty, "refused," or would have been allowed, to remove the bulkheads which they installed pursuant to a Consent Decree with the State of Colorado. Nor do they cite any legal

authority that the Kinross Defendants may be liable for actions, such as installing the bulkheads, taken by Sunnyside before Sunnyside purportedly became an agent of the Kinross Defendants.

**Supplemental Briefing regarding Personal Jurisdiction**

On December 17, 2020, *after* the *Allen* Plaintiffs filed their responses to Sunnyside's and the Kinross Defendants' motions for summary judgment on the basis of lack of personal jurisdiction, Sunnyside filed motions for partial summary judgment on the *Allen* Plaintiffs' nuisance claims and on statute of repose grounds. *See* Doc's 962 and 963. The *Allen* Plaintiffs contended that "by filing the Motions for Partial Summary Judgment, [Sunnyside] has waived [Sunnyside's and the Kinross Defendants'] argument that personal jurisdiction is lacking over them" and moved for leave to file supplemental briefing to address the issue. Doc. 1051 at 2, filed January 22, 2021. The Court granted the *Allen* Plaintiffs' motion for supplemental briefing. *See* 1106, filed February 17, 2021.

The *Allen* Plaintiffs argue that "by filing the motions for partial summary judgment before the personal jurisdiction issue is determined, [Sunnyside and the Kinross Defendants] have consented to personal jurisdiction in New Mexico." Doc. 1127 at 2, filed March 3, 2021 (also stating that Sunnyside and the Kinross Defendants "have consented to jurisdiction by agreeing to consolidation in New Mexico, by filing crossclaims, by engaging in discovery, and by agreeing to mediate the dispute in New Mexico"). The *Allen* Plaintiffs state:

> In *Hardie-Tynes*, the Tenth Circuit Court of Appeals upheld the district court's denial of the defendant's motion to dismiss based on lack of personal jurisdiction where the defendant, while timely raising the defense in its answer, proceeded to file a cross-claim, engaged in settlement negotiations, and entered into a stipulation to dismiss all claims except for its cross-claim before requesting a ruling on the personal jurisdiction issue. The Tenth Circuit noted that the defendant, rather than requesting a ruling on its defense, "actively participated in the litigation and sought affirmative relief from the court," and stated that under these circumstances '[w]e have no difficulty in determining that [defendant's] actions 'amounted to a legal submission to the jurisdiction of the court.'"

Doc. 1127 at 3-4 (quoting *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 2000 WL 147392 *3 (10th Cir. 2000).

Sunnyside and the Kinross Defendants did not waive personal jurisdiction. The Tenth Circuit stated: "*In the absence of a motion to dismiss*, a party's continued participation in litigation is inconsistent with an assertion of lack of personal jurisdiction." *Hardie-Tynes Mfg. Co.*, 2000 WL 147392 *2 (*emphasis added*). Sunnyside and the Kinross Defendants filed motions to dismiss based on lack of personal jurisdiction early in this litigation. *See* Doc. 42 at 3, filed July 25, 2018 (seeking dismissal of New Mexico, the Navajo Nation, and Utah's claims); Doc. 115, filed November 1, 2018) (seeking dismissal of the claims in the *Allen* Plaintiffs' Complaint). The Court denied Sunnyside and the Kinross Defendants' motions to dismiss based on lack of personal jurisdiction to allow for jurisdictional discovery stating:

> Although the Mining Defendants have disputed the jurisdictional allegations in the Complaints, there has been no evidentiary hearing. Consequently, the Court must, at this time, resolve all factual disputes in favor of Plaintiff Utah.
>
> > Where there has been no evidentiary hearing, as in this case, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists. All factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing.
>
> *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (quotation marks, ellipses and citations omitted).

Doc. 168 at 3, filed March 26, 2019; *see* Doc. 172 at 2, filed April 1, 2019 (denying Sunnyside and the Kinross Defendants' motion to dismiss based on lack of personal jurisdiction because the *Allen* Plaintiffs had alleged sufficient facts to make a *prima facie* showing of personal jurisdiction). The Special Master subsequently set a February 28, 2020, deadline for jurisdictional discovery and a March 16, 2020, deadline for filing motions regarding personal jurisdiction. *See* Doc. 303 at 1,

filed September 11, 2019. The Special Master also set a deadline of September 18, 2020, for filing motions relating to liability and subject matter jurisdiction and an April 15, 2021, deadline for filing motions for summary judgment on any remaining issues. See Doc. 303 at 1-2. Sunnyside's filing of motions for partial summary judgment did not waive personal jurisdiction:

> Voluntarily using “certain [district] court procedures” may “serve as ‘constructive consent to the personal jurisdiction of the [district] court,’” though not all will. *Id.* at 519 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). “Only those submissions, appearances and filings that give ‘[the plaintiff] a reasonable expectation that [the defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking,’ result in waiver of a personal jurisdiction defense.” *Id.* (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).

*Blessing v. Chandrasekhar*, 988 F.3d 889, 894-95 (6th Cir. 2021). Sunnyside did not "voluntarily" file its motions for partial summary judgment; Sunnyside complied with the Court's Order. With numerous Parties, each with their own claims and/or defenses, failure to comply with the Court's Order would be contrary to the Court's, and counsel's, obligation to secure the just, speedy, and inexpensive determination of this multidistrict litigation. *See* Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment.

**IT IS ORDERED** that Kinross Gold U.S.A. Inc. and Kinross Gold Corporation’s Motion for Summary Judgment on the Claims of New Mexico, the Navajo Nation, Utah and the *Allen* Plaintiffs: Personal Jurisdiction, Doc. 866, filed October 13, 2020, is **GRANTED.**

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**