IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                    No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to all cases*

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART SOVEREIGN PLAINTIFFS AND SUNNYSIDE GOLD
## CORPORATION'S MOTIONS FOR SANCTIONS DUE TO THE FEDERAL PARTIES'
## SPOLIATION OF EVIDENCE

**THIS MATTER** comes before the Court on the Sovereign Plaintiffs' [the Navajo Nation

and the State of New Mexico] Motion for Sanctions due to the Federal Parties' Spoliation of

Evidence, Doc. 1179, filed May 4, 2021 ("Sovereign Plaintiffs' Motion"), and SGC's [Sunnyside

Gold Corporation] Motion for Sanctions Under Federal Rule of Civil Procedure 37(e), Doc. 1206,

filed May 24, 2021 ("Sunnyside's Motion").  The *Allen* Plaintiffs and the *McDaniel* Plaintiffs have

joined in and adopted by reference the Sovereign Plaintiffs' Motion for Sanctions Due to the

Federal Parties' Spoliation of Evidence.  *See Allen* Plaintiffs' Notice of Joinder, Doc. 1181, filed

May 5, 2021; *McDaniel* Plaintiffs' Notice of Joinder, Doc. 1198, filed May 13, 2021.

Consequently, the Court's rulings below regarding the Sovereign Plaintiffs also apply to the *Allen*

Plaintiffs and the *McDaniel* Plaintiffs.

**Spoliation of Electronically Stored Information ("ESI")**

Movants assert that the Federal Parties spoliated Electronically Stored Information ("ESI")

of EPA's On Scene Coordinators ("OSCs") Mr. Way and Mr. Griswold.  *See Browder v. City of*

*Albuquerque*, 187 F.Supp.3d 1288, 1294 (D.N.M. 2016) ("Spoliation includes the intentional or

negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to

prove or defend a claim").  Mr. Way was the lead OSC for EPA.  Mr. Griswold temporarily

relieved Mr. Way as OSC on August 4 and 5, 2015, which is when the release ("Blowout") from Gold King Mine occurred. "According to OSC Griswold, EPA's OSCs 'direct[ed] whatever happen[ed] on site and [were] responsible for whatever happen[ed] on site' at the Gold King Mine in 2014 and 2015. (*See* **Ex. 1** [Griswold Tr.] at 38:13-21.)." Sovereign Plaintiffs' Motion at 7.

Mr. Griswold's iPhones

Mr. Griswold had two iPhones. He used the first iPhone before, during and after the Blowout until the EPA collected it in May 2016 and issued him a second iPhone. EPA made a backup of Mr. Griswold's first iPhone but because EPA "forgot" the password, the backup of Mr. Griswold's first iPhone is "inaccessible." Sovereign Plaintiffs' Motion at 9. It is uncertain whether EPA transferred ESI from Mr. Griswold's first iPhone to his second iPhone. EPA "erased [Mr. Griswold's second] iPhone by resetting it to factory settings in May 2018." Sovereign Plaintiffs' Motion at 9.

Mr. Griswold's iPad

The data on Mr. Griswold's iPad, which he used "extensively for work related to the Gold King Mine, including to take photos in the field," "had been 'cleared' because the iPad was 'reset to factory settings'" before he turned it in to EPA. Sovereign Plaintiffs' Motion at 11-12.

Mr. Way's iPhone

"[N]one of Mr. Way's text messages were preserved until EPA collected his iPhone in May 2016." Sovereign Plaintiffs' Motion at 10. There were no text messages available on Mr. Way's iPhone from before October 20, 2015, even though produced documents show that "Mr. Way exchanged at least 245 Gold King Mine-related text messages" between July 7 and October 20, 2015. Sovereign Plaintiffs' Motion at 10-11.

Mr. Way's iPad

Mr. Way turned in his EPA-issued iPad in when he retired in May 2016, but EPA could not access the ESI on Mr. Way's iPad because Mr. Way did not remember his password. *See* Sovereign Plaintiffs' Motion at 11.

Mr. Griswold's OneDrive Account

EPA backed up the OSCs' EPA-issued laptops to an online cloud storage service, Microsoft OneDrive but did not collect ESI from Mr. Griswold's OneDrive account until almost five years after the Blowout. *See* Sovereign Plaintiffs' Motion at 12. Two folders titled "/Pictures/Gold King" and "/MyProjectDocuments/GoldKing Mine," which contained "around 800 photographs and 120 documents related to Mr. Griswold's work at the Gold King Mine" were missing. Sovereign Plaintiffs' Motion at 12.

**Federal Parties' Measures to Preserve and Recover Evidence**

On August 11, 2015, six days after the Blowout, EPA issued a litigation hold related to the Gold King Mine release. U.S. Response to Sovereign Plaintiff's Motion at 7, Doc. 1223, filed June 1, 2021 ("Response"). On November 23, 2015, EPA sent additional instruction directing custodians to preserve "*all* messages related to Gold King" with contacts for technical assistance. Response at 7. "EPA followed up on the preservation of texts with custodians in April 2016" and "sought to preserve texts through this process on approximately 500 cell phones." Response at 7. The Federal Parties state that "today over 1,000 custodians are subject to the litigation hold." Response at 6.

In May 2016 EPA held "in-person text preservation and cell phone exchange meeting" with Mr. Griswold and Mr. Way with an EPA attorney and technical staff available to assist, except Mr. Way did not receive a new cell phone due his impending retirement. Response at 8. Mr.

Griswold and Mr. Way "signed a form certifying compliance with the text preservation instructions."  Response at 8.

EPA created digital backups of Mr. Griswold and Mr. Way's iPhones but "Mr. Griswold's iPhone backup is no longer accessible because the password to the backup was forgotten." Response at 8.

In July 2020, the "Federal Parties consulted with vendors who specialize in password cracking ... authorized vendors to use 'brute force' application to decrypt Mr. Griswold's iPhone and unlock Mr. Way's iPad.  The applications ran for 13 weeks ... but they were not successful." Response at 11.

When Mr. Griswold retired in October 2018, "EPA made focused efforts to ensure his materials were preserved, including by having counsel speak with Mr. Griswold and verifying visually that Mr. Griswold's computer files were synced with his OneDrive account, a cloud storage system, for preservation ... and created a backup copy of the OneDrive."  Response at 11. In 2020, "EPA learned that the OneDrive was no longer available, and that the only ESI left was from the backup copy ... but the Gold King subfolder within the 'Pictures' folder was missing [and] The backup did not contain any items in the 'MyProject Documents' folder."  Response at 12. "EPA performed an exhaustive search for the missing OneDrive folders ... collect[ing] five devices that potentially contained a copy of the OneDrive ... search[ing] its network drives and records management system, and ... contact[ing] Microsoft to determine if information could be recovered from its server," but "no ESI was recovered."  Response at 12.

The Sovereign Plaintiffs argue that "EPA's decision to leave it to Messrs. Way and Griswold to self-select and forward text messages before collecting their devices eight months after the Blowout was unreasonable, especially given that their conduct was the subject of multiple

federal investigations." Sovereign Plaintiffs' Motion at 18. The Sovereign Plaintiffs state "in the months that followed [the Blowout], both OSCs' conduct became subject to multiple investigations—including by EPA, EPA's OIG, and [Bureau of Reclamation]. Additionally, Mr. Griswold was being criminally investigated for potentially false statements provided to EPA OIG investigators." Sovereign Plaintiffs' Motion at 8.

**Prejudice**

The Sovereign Plaintiffs assert that the "prejudice from losing contemporaneous evidence and documentation from EPA's key witnesses-- who, according to Mr. Griswold, 'direct whatever happens on site and [are] responsible for whatever happens on site'—is self-evident." Sovereign Plaintiffs' Motion at 21. The Sovereign Plaintiffs contend that "contemporaneous communications and documentation from OSCs Way and Griswold could inform the Sovereign Plaintiffs' tort claims and, more specifically, aid in proving that EPA acted unreasonably. Additionally, such evidence would be especially helpful here, where Mr. Griswold has given testimony that conflicts with other evidence ... whether EPA took care in approaching the mine is central to the Sovereign Plaintiffs' negligence claims." Sovereign Plaintiffs' Motion at 21-22. The Sovereign Plaintiffs also contend that the "lost ESI would also be relevant to the Federal Parties' primary defense to the Sovereign Plaintiffs' tort claims—the discretionary function exception to the Federal Tort Claims act—under which EPA's actions are protected only if the 'nature of the actions taken' were 'susceptible to policy analysis.'" Sovereign Plaintiffs' Motion at 22.

Sunnyside contends that "[c]ritical to [Sunnyside's] claims and defenses in this litigation is the fact that after the Blowout, Mr. Griswold and the EPA attempted to shift liability away from themselves to third parties like [Sunnyside]." Sunnyside's Motion at 14. Sunnyside asserts that Mr. Griswold and Mr. Way's lost ESI would have revealed "Mr. Griswold's and Mr. Way's

culpability for the spill ... [and their] and perhaps other's decision to look to [Sunnyside] to pay for cleaning up the Blowout EPA had caused" and "would have contained the most extensive repository of data before, during, and after the Blowout."  Sunnyside's Motion at 13.

The Federal Parties contend that they have made "extensive productions [which] were drawn from multiple and redundant sources, making it highly unlikely that any unique and material ESI was lost."  Response at 18.  The Federal Parties state: (i) "Almost all ESI from Messrs. Griswold's and Way's mobile devices has been produced and any lost text messages are unlikely to be material;" (ii) "The ESI from Mr. Griswold's OneDrive was likely duplicative of ESI collected from other sources;" and (iii) "The Federal Parties have produce numerous documents in this litigation, including a plethora of contemporaneous statements from the OSCs."   Response at 15, 17, 18.  The Federal Parties argue that "the loss of unique and material ESI is unlikely" and "given the Federal Parties' production of nearly 700,000 electronic documents, the Sovereign Plaintiffs have not been prejudiced by the loss of two texts between the OSCs and the likely duplicative items from Mr. Griswold's OneDrive."  Response at 20, 24-25.  The Federal Parties argue that some of the lost ESI has been produced from other sources, such as texts between the OSCs and contractors and admit that "the only potentially relevant texts that may be lost and unrecoverable from another source are those that, as the Sovereign Plaintiffs acknowledge, are 'strictly between the two OSCs.'"  Response at 23.

The Sovereign Plaintiffs dispute the Federal Parties' contention that only two texts were lost stating: (i) "iPhones send and receive texts in two ways: SMS and iMessage;" (ii) "the Federal Parties revealed that their logs reflect only SMS texts, and not iMessages;" and (iii) "the Federal Parties have provided logs that reveal hundreds of texts deleted from the two most important EPA

witnesses' iPhones—OSCs Griswold and Way."  Sovereign Plaintiffs' Reply at 4, 6, Doc. 1240, filed June 22, 2021.

The Federal Parties state that they "actually offered to waive privilege on all of Messrs. Griswold's and Way's documents, a total of approximately 1,400 documents, which includes documents contemporaneous to the Gold King Mine release."  Response at 31.  The Sovereign Plaintiffs stated that "the descriptions and dates of such documents and emails on the Federal Parties' privilege log reveal that the documents would do little to remedy the prejudice suffered by the Sovereign Plaintiffs, as none of them reflect the contemporaneous communications and documentation from the OSCs of which the Sovereign Plaintiffs have been deprived."  Sovereign Plaintiffs' Motion at 30.

**Requested Sanctions**

The Sovereign Plaintiffs and Sunnyside request the following sanctions:

(i)     An adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to the Federal Parties with respect to both the Sovereign Plaintiffs' negligence claims and the application of the discretionary function exception.

(ii)    An order permitting the Sovereign Plaintiffs and Sunnyside to introduce evidence of the Federal Parties' spoliation at trial.

(iii)   An order awarding the Sovereign Plaintiffs and Sunnyside all reasonable attorneys' fees and costs associated with investigating the Federal Parties' spoliation and preparing their Motions for sanctions.  See Sovereign Plaintiffs' Motion at 31; Sunnyside's Motion at 20-21.

The Sovereign Plaintiffs also seek an order precluding the Federal Parties from putting on evidence that Mr. Griswold did not intend to open the mine and was only attempting to expose the

blockage to ready it for a site visit, or alternatively, an adverse inference or presumption that Mr.

Griswold intended to open the mine and was not simply attempting to expose the blockage in

preparation for a site visit.  Sovereign Plaintiffs' Motion at 31.

> Sunnyside seeks a:
>
> waiver of privilege for those documents where Mr. Griswold and Mr. Way were
> the custodian, sender, addressee or were copied with documents before, during, and
> after the Blowout.  [Sunnyside] accepts the Federal Parties' condition that any such
> documents would be labeled as confidential or subject to the protective order for
> confidential information and subject toa Rule 502(d) order which would preclude a
> privilege waiver in any other litigation.

Sunnyside's Motion at 21.

Sunnyside also seeks to have its due process claim reinstated.  Sunnyside's Motion at 20.

In its due process claim Sunnyside had argued that because EPA is a Defendant in this case and is

the administrator of the Bonita Peak Mining District Superfund site, EPA issued an administrative

order directing Sunnyside to conduct work in the Bonita Peak Mining District to divert attention

away from EPA and toward Sunnyside.  The Court dismissed Sunnyside's substantive due process

claim because the allegations in Sunnyside's due process claim "do not indicate that EPA deprived

Sunnyside of a protected property interest in a manner so arbitrary as to shock the judicial

conscience."   Order at 4-5, Doc. 484, filed March 6, 2020.  Sunnyside now argues that "the

spoliation has deprived [Sunnyside] of the ability to demonstrate EPA's shocking conscience

behavior in causing the Blowout and then blaming it on [Sunnyside]."  Sunnyside's Motion at 20.

**Discussion**

> The Court finds that spoliation sanctions are proper.
>
> Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence
> because it knew, or should have known, that litigation was imminent, and (2) the
> adverse party was prejudiced by the destruction of the evidence. But if the
> aggrieved party seeks an adverse inference to remedy the spoliation, it must also
> prove bad faith. "Mere negligence in losing or destroying records is not enough

8

because it does not support an inference of consciousness of a weak case." Without a showing of bad faith, a district court may only impose lesser sanctions.

*Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations omitted).  Rule 37 of the Federal Rules of Civil Procedure provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> **(A)** presume that the lost information was unfavorable to the party;
>>>
>>> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  "Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation."  *Browder v. City of Albuquerque*, 187 F.Supp.3d 1288, 1295 (D.N.M. 2016).

> Counsel for the parties have a continuing responsibility to ensure that the parties preserve relevant information. This responsibility obligates counsel to do more than simply notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must go beyond mere notification and take affirmative steps to monitor compliance, to talk to key employees in an effort to understand how evidence will be stored, to continually ensure that the party is preserving relevant evidence. At the end of the day, however, the duty to preserve and produce documents rests on the party.

*Browder v. City of Albuquerque*, 187 F.Supp.3d 1288, 1295 (D.N.M. 2016) (citations and quotation marks omitted).

There is no dispute that the Federal Parties knew, or should have known, that litigation was imminent.  The EPA issued a litigation hold six days after the Gold King Mine Release but considering the magnitude of the Blowout, the Federal Parties knew, or should have known, on the day of the Blowout that litigation was imminent.

EPA failed to take reasonable steps to preserve Mr. Griswold and Mr. Ways' ESI.  Although EPA issued a litigation hold on August 11, 2015, six days after the Blowout, EPA did not send additional instruction directing custodians to preserve "*all* messages related to Gold King" with contacts for technical assistance until November 23, 2015, more than three months after the Blowout.  Apparently EPA did not take affirmative steps to preserve Mr. Griswold and Mr. Way's ESI until April 2016, eight months after the Blowout, when EPA followed up on the preservation of texts with custodians, and May 2016 when EPA conducted an "in-person text preservation and cell phone exchange meeting" with Mr. Griswold and Mr. Way with an EPA attorney and technical staff available to assist.  The Court recognizes the resources required and that some delay was inevitable when EPA "sought to preserve texts through this process on approximately 500 cell phones" and now with over 1,000 custodians subject to the litigation hold.  However, Mr. Griswold and Mr. Way, who as EPA's On Scene Coordinators directed and were responsible for the activities at Gold King Mine, were the most likely employees to have relevant ESI regarding the Blowout compared the other EPA employees who were more remotely involved with the activities at the Gold King Mine.  The Court finds that it was unreasonable for there to be such delays in preserving the ESI on Mr. Griswold and Mr. Way's electronic devices.

The Court further finds that the Sovereign Plaintiffs and Sunnyside have been prejudiced by the destruction of the ESI.  *See U.S. ex rel. Baker v. Community Health Systems, Inc.*, 2012 WL 12294413 *14 (D.N.M. 2012) ("prejudice is shown when the destroyed evidence goes to a critical

issue and the evidence at hand is conflicting").  The lost ESI is relevant to the Sovereign Plaintiffs'

tort claims and the Federal Parties' defense to the Sovereign Plaintiffs' tort claims.  The Sovereign

Plaintiffs have identified conflicting evidence regarding the nature of Mr. Griswold's actions at the

Gold King Mine in August 2015.  The Court is not persuaded by the Federal Parties' argument that

"almost all" of the lost ESI has been produced and any lost ESI is "unlikely" to be unique and

material.   The Federal Parties admit that "potentially relevant texts that may be lost and

unrecoverable from another source are those that ... are 'strictly between the two OSCs.'"  Response

at 23.

THEREFORE:

The Court grants Movants' requests for an order permitting the Sovereign Plaintiffs and

Sunnyside to introduce evidence of the Federal Parties' spoliation at trial.  *See Browder*,

187 F.Supp.3d at 1295-96 ("sanctions include ... allowing the aggrieved party to question a witness

in front of the jury about the missing evidence;" "Sanctions for spoliation may also be designed to

promote accurate fact finding by the court or jury").

The Court denies the Sovereign Plaintiffs' request for an order precluding the Federal

Parties from putting on evidence that Mr. Griswold did not intend to open the mine and was only

attempting to expose the blockage to ready it for a site visit.  Precluding the Federal Parties from

putting on such evidence while allowing the Sovereign Plaintiffs to introduce evidence of the

Federal Parties' spoliation at trial would undermine the Court's interest in promoting accurate fact

finding by the jury.

The Court defers ruling on Movants' requests for an adverse inference instruction or

presumption that the spoliated evidence would have been unfavorable to the Federal Parties.  The

Court cannot, at this time, determine whether the Federal Parties "acted with the intent to deprive

another party of the information's use in the litigation." Fed. R. Civ. P. 37(e); *Turner*, 563 F.3d at 1149 ("if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case"). The Court finds it striking that so much ESI on the OSCs electronic devices was spoliated as a result of delay, forgotten passwords and the wiping/resetting of devices. While the spoliation may be the result of mere negligence on the part of several persons, that amount of ESI spoliation of perhaps the two most important witnesses, the fact that EPA was directing and was responsible for the activities at the Gold King Mine and the fact that the OSCs may have had personal reasons for deleting ESI, due to the investigations of their actions, suggests that the spoliation may have been the result of more than mere negligence. While there are over 400 pages of briefs and exhibits, there are a number of issues that remain unclear including:

(i)      What steps to preserve ESI did Mr. Griswold, Mr. Hays or any other persons at EPA take prior to their May 2016 "in-person text preservation and cell phone exchange meeting" with an EPA attorney and technical staff?

(ii)      Why did the in-person text preservation meeting not occur before May 2016?

(iii)      A backup of Mr. Griswold's first iPhone, the one he had prior to, during and immediately after the Blowout, was made but is no longer accessible because the password was forgotten. Who was the custodian of the backup? What happened to Mr. Griswold's first iPhone?

(iv)      The Federal Parties state "EPA could not access Mr. Way's iPhone because the password no longer worked, and EPA could not reset the password because the phone was disconnected from service. Still, the ESI was preserved because EPA had access to the backup of Mr. Way's iPhone," but it is not clear why the backup does not contain ESI from before October 20, 2015.

Who did the backup, who was the custodian of the backup and what are the possible reasons why the backup does not contain ESI from before October 20, 2015?

(v)     The ESI on Mr. Griswold's iPad "had been 'cleared' because the iPad was 'reset to factory settings'" before he turned it in to EPA.  Who reset the iPad or requested that the iPad be reset, and why was the ESI not preserved before the iPad was reset?

(vi)     EPA could not access the ESI on Mr. Way's iPad in May 2016 when Mr. Way turned it in because Mr. Way did not remember his password.  When was the last time Mr. Way used his iPad, why did he stop using it, and why did he not preserve the ESI on his iPad after the EPA issued the litigation hold six days after the Blowout?

(vii)     Mr. Griswold's computer files were synced with his OneDrive account and EPA created a backup copy of the OneDrive, but in 2020, EPA learned that the OneDrive was no longer available and that the backup copy was missing folders and documents.  What steps did the custodians of Mr. Griswold's computer files, OneDrive, and the backup take to make sure the ESI was successfully preserved and backed up, and what are the possible reasons that the ESI is no longer available?

(viii)     Whether the OSCs' acts and omissions, if done for personal reasons, can be imputed to the EPA.

The Parties will have an opportunity to file supplemental briefing on whether the Court should give an adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to the Federal Parties after testimony by the OSCs and other witnesses and before the Court instructs the jury.

The Court grants Movants' request for an order awarding the Sovereign Plaintiffs and Sunnyside all reasonable attorneys' fees and costs associated with investigating the Federal Parties'

spoliation and preparing their Motions for sanctions.  *See Browder*, 187 F.Supp.3d at 1295 ("spoliation sanctions include ... an award of attorney fees").  Movants incurred fees and costs they would not have incurred if there had been no spoliation of Mr. Griswold's and Mr. Way's ESI.

The Court denies Sunnyside's request for a waiver of privilege on Mr. Griswold's and Mr. Way's documents.  The Sovereign Plaintiffs stated that "the documents would do little to remedy the prejudice suffered by the Sovereign Plaintiffs, as none of them reflect the contemporaneous communications and documentation from the OSCs."  Sovereign Plaintiffs' Motion at 30 (the Sovereign Plaintiffs did not request waiver of privilege as a sanction).  Sunnyside does not provide any justification for waiving privilege other than the conclusory statement that: "The failure to appropriately preserve communications from these individuals, and the method and timing by which available responsive information was produced, justify this sanction."  Sunnyside's Motion at 21.

The Court denies Sunnyside's request that its substantive due process claim be reinstated. In denying Sunnyside's substantive due process claim the Court previously stated:

> "A violation of substantive due process may arise … from … official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience."  *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). "'Arbitrary' actions are those performed capriciously or at one's pleasure and without good reason."  *Browder v. City of Albuquerque*, 787 F.3d 1076, 1080 (10th Cir. 2015).  "Substantive due process prohibits only the most egregious official conduct … Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard."  *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 750 (10th Cir. 2013).
>
> Sunnyside's Counterclaim fails to state a claim for a violation of substantive due process because the allegations in the Counterclaim do not indicate that EPA deprived Sunnyside of a protected property interest in a manner so arbitrary as to shock the judicial conscience.  Sunnyside's Counterclaim states that: (i) Sunnyside acquired the Sunnyside Mine and was involved in mining operations; (ii) EPA is the Lead Agency for the Bonita Peak Mining District and issued an administrative order directing Sunnyside to conduct work in the Bonita Peak Mining District.  *See* Doc. 376 at 21-26.  Sunnyside alleges that EPA improperly issued the

> administrative order because: (i) EPA has a conflict of interest: (ii) EPA is trying
> to divert attention away from EPA and towards Sunnyside; and (iii) the
> administrative order is not intended to protect human health, safety or the
> environment.  *See* Doc. 376 at 31-36.  Those allegations, even if true, are not so
> egregious as to shock the judicial conscience.

Doc. 484 at 4-5, filed March 6, 2020.  Having found that the Federal Parties negligently spoliated evidence, but also not finding bad faith, the Court concludes that Sunnyside's substantive due process claim, if reinstated, would fail to state a claim because the allegations in the reinstated claim, revised to include the negligent spoliation of evidence, would not indicate that EPA deprived Sunnyside of a protected property interest in a manner so arbitrary as to shock the judicial conscience.

**Sanctions for Not Obeying a Discovery Order**

The Sovereign Plaintiffs also seek sanctions under Fed. R. Civ. P. 37(b) arguing: "For the same reasons that the Federal Parties violated Rule 37(e), they violated the Court's Preservation Order by failing to take reasonable steps to preserve indisputably relevant ESI."  Sovereign Plaintiffs' Motion at 27-28.  Rule 37(b) provides: "If a party ... fails to obey an order to provide or permit discovery ... the court ...may issue further just orders."  Fed. R. Civ. P. 37(b)(2).  *See Bedford v. Nowlin*, 2021 WL 3148593 *3 (10th Cir.) ("Sanctions must be 'just' and related to the claim 'at issue in the order to provide discovery'") (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)).  Special Master Hon. Alan C. Torgerson entered a Stipulated Order Relating to the Preservation of Potentially Relevant Information on December 6, 2018.  *See* Doc. 144.  The Sovereign Plaintiffs argue: "Before negotiating and entering the Preservation Order, the Federal Parties had already violated it [because] the Federal Parties knew they had destroyed or rendered inaccessible ESI on each of the OSC's devices by October 2018."  Sovereign Plaintiffs' Motion at 28.  The Court declines to impose additional sanctions pursuant to Rule 37(b)(2) because

the sanctions the Court has imposed pursuant to Rule 37(e)(1) are just and the spoliation, with one exception, occurred before Judge Torgerson entered his Preservation Order.  The one exception, which appears to be unintentional, is Mr. Griswold's OneDrive information that was collected in the summer of 2020 but was missing shortly afterward.  *See* Sovereign Plaintiffs' Motion at 13 (citing witness testimony that Mr. Griswold's OneDrive account was flagged and prepared for production "and after it was flagged, the business unit that goes and collects that information and produces it, went to that location, and they observed that the information that they expected to be there was not there" and that "We do not know precisely what happened with that information").

**IT IS ORDERED** that:

(i)     The Sovereign Plaintiffs' Motion for Sanctions due to the Federal Parties' Spoliation of Evidence, Doc. 1179, filed May 4, 2021, is **GRANTED in part.**

(ii)    SGC's Motion for Sanctions Under Federal Rule of Civil Procedure 37(e), Doc. 1206, filed May 24, 2021, is **GRANTED in part.**

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**