**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                    No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*    *No. 16-cv-465-WJ-LF*
                              *No. 16-cv-931-WJ-LF*
                              *No. 18-cv-319-WJ*

<u>MEMORANDUM OPINION AND ORDER</u>
<u>DENYING THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>
<u>REGARDING KINROSS GOLD CORPORATION'S PERSONAL JURISDICTION</u>
<u>DEFENSE</u>

**THIS MATTER** comes before the Court on the United States of America's Motion for

Partial Summary Judgment: Kinross Gold Corporation's ("Kinross") Personal Jurisdiction

Defense, Doc. 1207, filed May 24, 2021 ("Motion").

**Background**

The United States brought crossclaims against Kinross pursuant to CERCLA, 42 U.S.C.

§§ 9601, *et seq*. *See* United States' Answer to Amended Complaint of Navajo Nation at 49-78,

Doc. 192, filed July 1, 2019; United States' Answer to Amended Complaint of New Mexico at 46-

75, Doc. 195, filed July 1, 2019; Federal Defendants' Answer to First Amended Complaint of the

State of Utah and Crossclaim at 28-51, Doc. 200-1, filed July 1, 2019.  In the event the Court

grants an award against the United States for claims arising from the Gold King Mine Release, the

United States asks that the award be equitably apportioned among the United States, Kinross and

Sunnyside Gold.  Motion at 10.  The United States also seeks:

> recovery of response costs incurred by the United States in connection with decades
> of releases of hazardous substances at the Bonita Peak Mining District National
> Priorities List Site (the "Site") ... the United States further seeks (i) a declaration
> that KGC and SGC are jointly and severally liable for all future response costs to
> be incurred by the United States in connection with the Site...

Motion at 10.

The United States alleged in its crossclaims that the Court has specific jurisdiction over Kinross because Kinross "purposefully directed their site activities at the Animas River Watershed and downstream into the Animas and San Juan Rivers."  Doc. 192 at 50; Doc. 195 at 47.

Kinross filed a motion for partial summary judgment asserting that the Court lacks personal jurisdiction over Kinross because Kinross did not purposefully direct any activities toward New Mexico.  *See* Doc. 867, filed October 13, 2020.  In its response, the United States did not argue that the Court has specific jurisdiction over Kinross.  *See* Doc. 909, filed November 16, 2020. Instead, the United States argued for the first time that the Court has personal jurisdiction over Kinross pursuant to Rule 4(k)(2) which provides for personal jurisdiction for claims arising under federal law if the defendant is not subject to jurisdiction in any state's courts of general jurisdiction. The Court granted Kinross' motion for summary judgment concluding that Kinross is not subject to personal jurisdiction in New Mexico.  *See* Doc. 1177 at 3, filed May 3, 2021.  The Court allowed the United States to file a motion regarding jurisdiction pursuant to Rule 4(k)(2) to allow both Parties to fully brief the issue.

**The United States' Rule 4(k)(2) Motion**

In its Motion now before the Court, the United States asserts the Court has personal jurisdiction over Kinross through Rule 4(k)(2) which provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> **(A)** the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> **(B)** exercising jurisdiction is consistent with the United States Constitution and laws.

2

Fed. R. Civ. P. 4(k)(2).  The United States contends that: (i) its "crossclaims arise under federal law, specifically Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), Sections 107 and 113, 42 U.S.C. §§ 9607 and 9613;" (ii) Kinross "admits [in response to interrogatories propounded by the United States] that it is not currently subject to jurisdiction in any state;" and (iii) the Court's exercise of jurisdiction over Kinross is consistent with the Constitution because Echo Bay Mines'[1] nationwide contacts during the pertinent time-period are attributable to [Kinross] and support assertions of both general jurisdiction and specific jurisdiction" and Kinross' "current, extensive, and commercial contacts within the United States belie any complaint that litigating in this forum is unconstitutionally unfair and unreasonable." Motion at 1-2.  Kinross does not dispute that the United States' crossclaims arise under federal law.

**Effect of Kinross Not Conceding Personal Jurisdiction in Another District**

The United States argues that the second element of Rule 4(k)(2), that a defendant is not subject to any state court's jurisdiction, is satisfied based on Kinross' response to an interrogatory.  *See* Undisputed Material Fact No. 26, Motion at 6.  In its response to the United States' interrogatory "Do YOU contend that YOU are subject to personal jurisdiction in any state's court of general jurisdiction within the United States?"  Kinross stated: "No, [Kinross] is a Canadian corporation which conducts its business in Canada.  It does not have continuous and systemic contacts with any state, and it is not 'essentially at home' in any state."  Doc. 909-4 at 22, filed November 16, 2020.

---

[1] Prior to the 2006 amalgamation, when Echo Bay Mines and Kinross combined to form the single corporation Kinross, Sunnyside Gold, which owned and operated sites within the Bonita Peak Mining District including the Sunnyside Mine, was a subsidiary of Echo Bay Mines.  *See* Doc. 192 at 50-51, 59-60.

The United States also says: "Courts have generally held that the defendant bears the burden of establishing this element and have required the defendant to identify whether there is another judicial district where it would be subject to personal jurisdiction for the action."  Motion at 14 (citing *GCIU-Employer Ret. Fund*, 700 Fed.Appx. 865, 868 (10th Cir. 2017) ("a defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed") (quoting *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 461 (9th Cir. 2007)).

If a defendant does not concede jurisdiction in another district, the Court is permitted, but is not required, to use Rule 4(k)(2).  The Ninth Circuit case quoted by the Tenth Circuit in *GCIU-Employer Ret. Fund* states:

> With respect to the second requirement, neither Wärtsilä nor Wärtsilä Finland has alleged that it is subject to the courts of general jurisdiction in any state. Indeed, Wärtsilä Finland has specifically stated that it is not subject to the courts of general jurisdiction in any state. Ordinarily, the plaintiff bears the burden of proving personal jurisdiction over the defendant. However, proving the lack of personal jurisdiction in every state could be quite onerous, and it is the defendant, not the plaintiff, that likely possesses most of the information necessary to do so. *United States v. Swiss Am.Bank, Ltd.,* 191 F.3d 30, 40–41 (1st Cir.1999). Accordingly, we join the Fifth, Seventh, and D.C. Circuits in holding that
>
>> [a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court **is entitled to use Rule 4(k)(2).** This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.
>
> *ISI Int'l, Inc., v. Borden Ladner Gervais LLP,* 256 F.3d 548, 552 (7th Cir.2001) (citations omitted); *see also Adams v. Unione Mediterranea Di Sicurta,* 364 F.3d 646, 651(5th Cir.2004) ("We agree with the Seventh Circuit, that a piecemeal analysis of the existence [or not] of jurisdiction in all fifty states is not necessary. Rather, so long as a defendant does not concede to jurisdiction in another state, a court **may use 4(k)(2)** to confer jurisdiction."); *Mwani v. bin Laden,* 417 F.3d 1, 11 (D.C.Cir.2005) (adopting the Seventh Circuit's approach). Thus, absent any

statement from either Wärtsilä or Wärtsilä Finland that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met.

*Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 461-462 (9th Cir. 2007) (**bolding added**).

While Kinross has not expressly conceded to jurisdiction in another judicial district, it did state that its admission of the United States' Material Fact No. 26, that Kinross does not contend that it is subject to personal jurisdiction in any state's court of general jurisdiction, is "subject to the discussion set forth herein, in §A.4, *infra*."  Response at 3, Doc. 1267, filed July 12, 2021. Section A.4 in Kinross' Response stated, among other things, that "Echo Bay's alleged contacts ... transpired in Colorado."  Response at 14.

Kinross' failure to name some other state in which the suit could proceed permits, but does not require, the Court to use Rule 4(k)(2).  The Court declines to use the rule in this instance because, as Kinross points out, the material facts set forth by the United States show that many of Echo Bay's contacts occurred in Colorado and, as is discussed below, those contacts appear to give rise to personal jurisdiction in Colorado.

**Echo Bay's Contacts**

The United States claims "[p]ersonal jurisdiction over [Kinross] is predicated on jurisdictional acts by Echo Bay Mines between 1985 and 2006, a period prior to [Kinross' 2006] amalgamation with Echo Bay Mines."  Motion at 15 ("An amalgamation is a Canadian 'statutory procedure [the equivalent of a merger] which causes two corporations to lose their separate identities and continue as one corporation.'").

The United States set forth the following facts regarding Echo Bay Mines' contacts: (i) Echo Bay Mines, a Canadian corporation, opened an office in Denver, Colorado in 1986; (ii) Echo Bay had employees working in Colorado from 1986-1997; (iii) Echo Bay Mines personnel

5

participated in operations review meetings relating to operation of the Sunnyside Mine "and discussed issues including construction and maintenance of tailings ponds mine waste control and cleanup activities, environmental permitting, chemical cleanup, and U.S. EPA's investigation of contamination of the Animas River drainage;" (iv) Echo Bay Mines personnel visited the Sunnyside Mine and evaluated issues relating to closure and reclamation;" (v) after the Colorado Department of Public Health wrote Echo Bay Mines and Sunnyside Gold Corp. regarding the need to plug the American Tunnel, Echo Bay Mines undertook the project.  Motion at 2-5.  The United States asserts that:

> Echo Bay Mines took numerous actions relating to the generation, management, and release of hazardous substances, specifically acid mine drainage, at the Site between 1985 and 2003 ... Echo Bay Mines negotiated the 1985 acquisition of the Sunnyside Mine from Standard Metals and then directed and financed the rehabilitation of the mine ... Echo Bay Mines, along with [Sunnyside Gold Corporation], later decided to close the Sunnyside Mine and to prepare for mine closure, conducted studies and drafted memoranda identifying environmental issues, and subsequently funded and implemented actions to address contamination at [various] operations ... Echo Bay Mines managed and directed [Sunnyside Gold Corporation's] operations at the Site, including operations involving the treatment and disposal of hazardous substances at the Sunnyside Mine, American Tunnel, Terry Tunnel, and Mayflower Mill and tailings impoundments from 1985 to 2002.

Motion at 10-11.

The material facts set forth by the United States show that Echo Bay had many contacts in Colorado over several years including "[operation of] the Sunnyside Mine and related operations within the [Bonita Peak Mining District] Site when hazardous substances were disposed there." Motion at 23.  Those activities at the Sunnyside Mine and other locations in the Bonito Peak Mining District form the basis of the United States' crossclaims against Kinross.  *See* Motion at 23 ("Echo Bay Mines' activities ... gave rise to the United States' claims against [Kinross] and establish specific jurisdiction over [Kinross]").

**Personal Jurisdiction in State Courts**

An out-of-state defendant's contacts with the forum state may give rise to either general jurisdiction or specific jurisdiction:

(i)     "General personal jurisdiction means that a court may exercise jurisdiction over an out-of-state party for all purposes.   A court may assert general jurisdiction over foreign ... corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State;" or

(ii)    "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."

*Old Republic Insurance Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903-04 (10th Cir. 2017) (citations and quotation marks omitted).   Specific jurisdiction calls for a two-step inquiry: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 904.   The minimum contacts test for specific jurisdiction has two distinct requirements: "(i) that the defendant must have purposefully directed its activities at residents of the forum state," and (ii) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic*, 877 F.3d at 904.

The United States' material facts suggest that Echo Bay may have had sufficient contacts in Colorado to establish personal jurisdiction over Echo Bay based on Echo Bay's activities at the Bonito Peak Mining District.

The United States argues that: (i) "Echo Bay Mines' historic contacts with the United States are as relevant to a determination of personal jurisdiction [Kinross] as [Kinross'] own contacts" "because a 'corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor.'" Motion at 15 (quoting *Williams v.*

*Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991)); and (ii) "Imputation of jurisdictional contacts from an entity to its successor is particularly appropriate in the amalgamation or merger context, '[b]ecause a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation, subject to all the liabilities of the absorbed corporation[.]'"); Motion at 16-17 (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 156 (2d Cir. 2019)); Motion at 23 ("Echo Bay Mines' activities within the United States are attributable to [Kinross]"); Reply at 6-7 (citing cases for the proposition "[A] court may exercise personal jurisdiction over a corporation that would not ordinarily be subject to the court's jurisdiction if the corporation is a successor of a corporation that would be subject to jurisdiction in that court") (quoting an opinion by the undersigned, *Southwest Antenna and Tower, Inc. v. Roberts Wireless Commc'n, LLC*, 2005 WL 8164032, *6-7 (D.N.M. 2005)).

Echo Bay's contacts in Colorado, along with the United States' contention that the Court may exercise personal jurisdiction over Kinross as Echo Bay's successor, indicate that Kinross may also be subject to personal jurisdiction in Colorado.

**Discussion**

The Court denies the United States' Motion for partial summary judgment because the United States has not met its burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The material facts set forth by the United States suggest that Echo Bay may have had sufficient contacts in Colorado to establish personal jurisdiction over Echo Bay. The United States asserts that Echo Bay's jurisdictional contacts may be imputed to its successor Kinross. If Kinross is subject to jurisdiction in Colorado, then Rule 4(k)(2) is not applicable to Kinross because Rule 4(k)(2) applies only if the defendant is not subject

to jurisdiction in any state's courts of general jurisdiction.   The United States has not shown that Echo Bay/Kinross would not be subject to personal jurisdiction in the District of Colorado.

**IT IS ORDERED** that the United States of America's Motion for Partial Summary Judgment: Kinross Gold Corporation's Personal Jurisdiction Defense, Doc. 1207, filed May 24, 2021, is **DENIED.**

_____

**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**