# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE IN    )
SAN JUAN COUNTY, COLORADO, ON    )
AUGUST 5, 2015    )
    )
*This Document Relates to:*    )  C.A. No. 1:18-md-02824-WJ
    *No. 1:16-cv-00465-WJ-LF,*    )
    *No. 1:16-cv-00931-WJ-LF*    )
    *No. 18-cv-319-WJ*
    )

## DEFENDANT ENVIRONMENTAL RESTORATION, LLC'S MOTION FOR SEVERANCE OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE JURY INSTRUCTION RE SPOLIATION OF EVIDENCE

1

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.** | INTRODUCTION | 4 |
| **II.** | DISTRICT OF NEW MEXICO LOCAL RULE 7.1(a) CERTIFICATION | 7 |
| **III.** | FACTUAL AND PROCEDURAL BACKGROUND | 7 |
| | **A.** EPA and ER's Work at Gold King Mine and the Release | 7 |
| | **B.** ER's Motion to Dismiss / Motion for Summary Adjudication | 8 |
| | **C.** The Spoliation Motion | 9 |
| | **D.** The Court's Order on the Motions for Sanctions | 10 |
| **IV.** | LEGAL STANDARD | 11 |
| **V.** | ARGUMENT | 13 |
| | **A.** The Court Should Sever the Trial of EPA's Liability From the Trial of ER's Liability | 13 |
| | **B.** In the Alternative, The Court Should Issue an Instruction Protecting ER From Negative Inferences Related to Spoliation Evidence | 17 |
| **VI.** | CONCLUSION | 21 |

2079791.1

## TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Bruton v. U.S.*,
   391 U.S. 123 (1968) ........................................................................................... 12

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ..................................................................... 11, 16

*Donato v. Fitzgibbons*,
   172 F.R.D. 75 (S.D.N.Y. Apr. 1, 1997) .................................................. 6, 15, 16

*Gray v. Maryland,*
   523 U.S. 185 (1998) ..................................................................................... 12, 18

*Grissom v. Union Pac. R. Co.*,
   14 F.R.D. 263 (D. Colo. 1953) .......................................................................... 19

*Krieger v. Bausch*,
   377 F.2d 398 (10th Cir. 1967) ..................................................................... 12, 19

*Leprino Foods Co. v. Factory Mut. Ins. Co.*,
   653 F. 3d 1121 (10th Cir. 2011) ........................................................................ 19

*Perlmutter v. U.S. Gypsum Co.*,
   4 F.3d 864 (10th Cir. 1993) ............................................................................... 12

*Tull v. U.S.*,
   481 U.S. 412 (1987) ........................................................................................... 12

*United States v. Henthorn*,
   864 F.3d 1241 (10th Cir. 2017) ........................................................................ 18

## FEDERAL RULES

Dist. NM Loc. R. 7.1(a) ............................................................................................ 7

Fed. R. Civ. Proc. 20(b) ..................................................................................... 11, 13

Fed. R. Civ. Proc. 37 .................................................................................................. 9

Fed. R. Evid. 105 ......................................................................................... 12, 13, 18

Fed. R. Evid. 403 ............................................................................................... 12, 13

3

# I.    **INTRODUCTION**

Defendant Environmental Restoration, LLC ("ER") requests that the Court sever the trial of the Federal Parties' liability from the trial of ER's liability, or, in the alternative, grant ER's request for a protective jury instruction, because of the Court's recent ruling permitting evidence of spoliation to be introduced at trial against the Federal Parties.

This relief is warranted now because the Court's ruling all but ensures that the Sovereign Plaintiffs and Sunnyside Gold Company (SGC) will introduce apparently significant evidence of spoliation by the Federal Parties and because such evidence will substantially prejudice ER's defense notwithstanding that ER had nothing to do with such alleged "spoliation."  The facts warrant this relief regardless of how the Court may further rule on whether to issue an adverse spoliation instruction against the Federal Parties.

EPA's lead witnesses will personally be examined, no doubt extensively, on this subject, leading inexorably to prejudice to ER that is undue.  On May 4, 2021, the Sovereign Plaintiffs moved for sanctions against the Federal Parties based on claims of spoliation of electronically stored information ("ESI").  SGC filed a similar motion shortly thereafter on May 24, 2021. Plaintiffs and SGC argued that the Federal Parties spoliated evidence by failing to preserve ESI stored on devices belonging to EPA's on-site coordinators ("OSCs"), Steve Way and Hays Griswold.  As OSCs, Mr. Way and Mr. Griswold had the authority to direct the performance of work at the Gold King Mine, and to sign off on work plans prepared in coordination with its subcontractors.  Both of these witnesses were intimately involved, alongside ER and Weston, in the planning and work performed at the Gold King Mine in the days leading up to the August 5, 2015 release that is the subject of this litigation.  Mr. Way worked with ER to develop the work plan and steps to be taken to remediate the mine—initially in 2014 and again in the months and

days leading up to August 4-5, 2015.  Mr. Griswold was present at Gold King on the day of the release, and provided step-by-step instructions to ER during initial investigation work at the mine.  Accordingly, both witnesses are vital to ER's efforts to defend itself at trial.

These two key witnesses, Way and Griswold, are entirely bound up in the spoliation dispute.  Plaintiffs and SGC argued, in their spoliation motions, that information on several cell phones and other devices given to Mr. Way and Mr. Griswold by EPA was removed, erased, or rendered inaccessible.  They claimed that this ESI included messages and documents that were sent or created soon before, during, and after the release.  Plaintiffs and SGC argued that these documents and communications would have contained information regarding the knowledge, deliberations, and actions of EPA personnel in the days leading up to the release, and that the absence of these documents has prejudiced their cases.  In its August 6, 2021 Order, the Court agreed, ruling that Plaintiffs could introduce evidence of spoliation, and reserving its decision on Plaintiffs' and SGC's request for an adverse-inference jury instruction for a later stage of the proceedings.  This ruling, although it applies only to EPA and the United States, nonetheless presents the Court with a dispute that must be resolved now to avoid prejudice to ER—the Court's August Order against EPA and the United States cannot expose ER to undue prejudice before the trier of fact on the Plaintiffs' claims against ER.

The Court should remedy the obvious, undue prejudice against ER.  While Plaintiffs' and SGC's Motions—as well as the Court's Order—were limited in scope to penalize the Federal Parties, this Order will have profound, negative impacts on other defendants, including ER.  ER worked closely with Mr. Way and Mr. Griswold in the months and days leading up to the release, and received directions on how to proceed in its work at Gold King from both OSCs.  At trial, ER intends to rely on the testimony of Mr. Griswold to confirm the sequence of events in

5

the days and hours leading up to the release—both to confirm what directions he gave to ER personnel, and to corroborate ER's account of how the release occurred.  Mr. Way and Mr. Griswold are therefore key witnesses for ER, as well as the Federal Parties, and evidence of spoliation and the potential adverse instruction that the Court may issue will significantly and unduly prejudice ER.  There is a high probability that the Court's Order will severely undermine the credibility of Mr. Way and Mr. Griswold, not only affecting the Federal Parties' case and defenses, but ER's as well.

ER played no role in the alleged spoliation.  But the spoliation will at the very least be the subject of examination of two key witnesses who are part of ER's defense.  ER should not be harmed by the questions regarding, let alone further court orders on, such alleged spoliation.

To avoid this prejudice, ER requests that the Court sever the trial of Plaintiffs' claims against the Federal Parties from the trial of their claims against ER, and try the claims against the Federal Parties first.  To the extent that spoliation evidence is to be considered in relation to claims against the Federal Parties only, severing ER's trial from proceedings that involve the introduction of this evidence will prevent that evidence from prejudicing ER's defense by contaminating the minds of the jury against ER.  *See Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 (S.D.N.Y. Apr. 1, 1997) (ordering the severance of a co-defendant's trial based on the concern that the jury's minds would "contaminate[d]" against the co-defendant as the result of another defendant's spoliation of evidence).

In the alternative, ER requests, at the very least, (i) a jury instruction (if an adverse inference instruction is given as to the Federal Parties) that expressly limits the scope and parties affected by the adverse inferences that jurors may draw from evidence of spoliation, and (ii) regardless of whether an adverse inference instruction is given the Court should give an

instruction that affirmatively protects ER from the undue taint of the alleged spoliation which assuredly will be the subject of examination of Messrs. Hays and Griswold.  Specifically, among other things, the jury should be instructed that evidence of spoliation may only be considered in connection with the liability of the Federal Parties, that no such evidence of spoliation applies to ER, and that such evidence should not, in any way, be considered in relation to the liability of other parties like ER.

## II.      DISTRICT OF NEW MEXICO LOCAL RULE 7.1(a) CERTIFICATION

Pursuant to Local Rule 7.1(a), Counsel for ER sought to confirm the concurrence or other positions of the Parties in the case prior to filing this motion.  Plaintiffs State of New Mexico, the Navajo Nation, the McDaniel Plaintiffs and the Allen Plaintiffs indicated that they would oppose the motion.  Sunnyside Gold Corporation indicated that it took no position on this motion.

## III.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      EPA and ER's Work at Gold King Mine and the Release

This case arose from a release of impounded water from the Gold King Mine on August 5, 2015.  The Gold King Mine is located in the area surrounding the headwaters of the Animas River—an area where mining activities dating back to the late 19th and early 20th centuries has resulted in contamination flowing downstream for over a century, unabated by the State of New Mexico or any other sovereign.  (*See* New Mexico Plaintiff ("NM") 2d Am. Compl. ¶¶ 22-25; Navajo Nation ("NN") Am. Compl. ¶ 6.) [1]  In the 1990s, EPA and the Colorado Department of Public Health and the Environment determined that the watershed had been severely impacted by metals contamination. (NN Am. Compl. ¶ 58.)  Both EPA and

---

[1] Certain limited background facts in Plaintiffs' Complaints are undisputed by ER for purposes of this motion only.

Colorado thus undertook to clean up mines in the area. Specifically, the Colorado Division of Reclamation, Mining and Safety ("DRMS") began reclamation work at Gold King in 2008, and EPA began CERCLA response work at a nearby mine known as "Red and Bonita" in 2011. (NM 2d Am. Compl. ¶¶ 66, 72.)

ER and EPA entered into an Emergency and Rapid Response Services agreement in 2001 ("ERRS Contract").  Under this agreement, ER agreed to provide environmental emergency response and other field services for EPA's removal group.  (Ex. A (Transcript of December 17, 2020 and January 6, 2021 Deposition of Matt Francis ("Francis Depo.")), 41:19-42:10.)  On November 26, 2012, the EPA issued a contact for work to be performed by ER.  (Ex. B (Transcript of January 15 and 18, 2021 Deposition of Harold Hays Griswold ("Griswold Depo.")), 190:10-191:16, 199:23-24, 200:6, Ex. C (ERRS Contract), pp. USA_000201497, USA_000201511, USA_000201513, USA_000201571-72.)  Pursuant to the ERRS Contract, ER was to perform remediation work at the direction of EPA.  (Ex. C (ERRS Contract), p. USA_00201511.)  EPA's directions were to be issued through on-site coordinators, or OSCs.  (*Id.*)  The OSCs involved in work performed at Gold King were Steve Way and Hays Griswold.  Mr. Way was intimately involved in the planning and directions in the weeks leading up to August 5, 2015.  Mr. Griswold took over as OSC when Mr. Way left on vacation, and he supervised ER and other subcontractors' work on the mine on August 4 and 5, 2015.  On August 5, 2015, while Mr. Griswold, ER personnel, and others were on site, the release occurred.

### B.  ER's Motion to Dismiss / Motion for Summary Adjudication

On February 19, 2021, ER filed a Motion to Dismiss, or, in the alternative, Motion for Summary Adjudication on Plaintiffs' state law tort claims on the basis that ER was shielded from liability by the Government Contractor Defense (*See* Doc. No. 1114).  The Government

Contractor Defense relies, in part, upon a finding that the EPA was carrying out a discretionary function when directing ER's work.  The Court has previously recognized that evidence of spoliation is relevant to the discretionary function defense asserted by the Federal Parties, denying the Government's Motion (based on the discretionary function exception), without prejudice, pending the outcome of the spoliation motion.  (*See* Doc. No. 1194, p. 3.)

## C.    The Spoliation Motion

On March 17, 2021, the Sovereign Plaintiffs informed the parties that they planned to file a motion for sanctions against the Federal Defendants pursuant to Federal Rule of Civil Procedure 37 as a result of the Federal Parties' spoliation of evidence.  (*See* Ex. D.)  In the meet and confer correspondence that followed, the Sovereign Plaintiffs confirmed that they did not plan to seek relief with respect to any parties other than the Federal Parties and were therefore not seeking relief against ER.  (*Id.*)

On May 4, 2021, the Sovereign Plaintiffs moved for sanctions against the Federal Parties due to alleged spoliation of evidence that they claimed had occurred.  (*See* Doc. No. 1179.) Plaintiffs claimed that the Federal Parties had spoliated multiple sources of electronically stored information (ESI), including iPhones belonging to Mr. Griswold, one of which had been reset to factory settings, and one of which had an inaccessible backup due to a lost password; an iPad for Mr. Griswold that was reset to factory settings before it was turned into EPA; an iPhone belonging to Mr. Way, the backup of which did not initially include any text messages from before October 20, 2015;[2] an iPad that Mr. Way turned in upon his retirement, the password to which EPA did not record,  and which therefore could not be accessed due to a screen

---

[2] Messages from before October 20, 2015 were eventually recovered and produced.  (*See* Doc. No. 1395 at 2-3.)

encryption; and a OneDrive storage account for Mr. Griswold that, the ESI in which EPA did not collect "until July or August 2020," and which was missing photos and documents related to Gold King at the time of collection.  (*See* Doc. No. 1179, pp. 4-8.)

Not long after the Sovereign Plaintiffs filed their motion for sanctions, Sunnyside Gold Corporation filed its own motion for sanctions related to spoliated evidence against the Federal Parties.  (Doc. No. 1206.)  The Sovereign Plaintiffs and Sunnyside requested the following sanctions: (1) an adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to the Federal Parties with respect to the Sovereign Plaintiffs' negligence claims and the application of the discretionary function exception; (2) an order permitting the Sovereign Plaintiffs and Sunnyside to introduce evidence of the Federal Parties' spoliation at trial; (3) an order awarding the Sovereign Plaintiffs and Sunnyside all reasonable attorneys' fees and costs associated with investigating the spoliation and preparing their motions for sanctions; and (4) as for the Sovereign Plaintiffs only, an order precluding the Federal Parties from putting on evidence that Mr. Griswold did not intend to open the mine and was only attempting to expose the blockage or, in the alternative, an adverse inference or presumption that Mr. Griswold intended to open the mine and was not simply attempting to expose the blockage in preparation for a site visit.  (Order pp. 7-8.)

### D.     The Court's Order on the Motions for Sanctions

On August 6, 2021, the Court issued an Order granting, in part, the Sovereign Plaintiffs' and SGC's Motions for sanctions.  (*See* Doc. No. 1292.)  The Court ruled that sanctions for spoliation were proper, finding that EPA failed to take reasonable steps to preserve Mr. Griswold's and Mr. Way's ESI, and finding that the Sovereign Plaintiffs and Sunnyside were prejudiced by the destruction of the ESI.  (*Id*. at 10-11.)  The Court ruled that the Sovereign

10

Plaintiffs and Sunnyside may introduce evidence of the Federal Parties' spoliation at trial.  (*Id.* at 11.)  The Court denied the Sovereign Plaintiffs' request for an order precluding the Federal Parties from putting on evidence that Mr. Griswold did not intend to open the mine and was only attempting to expose the blockage to ready it for a site visit.  (*Id.*)

The Court deferred ruling on the request for an adverse inference instruction or presumption that the spoliated evidence would have been unfavorable to the Federal Parties, noting that such an instruction requires a demonstration that evidence was destroyed in bad faith. (*Id.* at 11-12.)  Still, the Court noted that it was "striking that so much ESI on the OSCs electronic devices was spoliated as a result of delay, forgotten passwords and the wiping/resetting of devices," and noted that in light of the circumstances—including Mr. Way's and Mr. Griswold's role in the activities at Gold King and investigations into their actions—this suggested "that the spoliation may have been the result of more than mere negligence."  (*Id.* at 12.)

## IV.   <u>LEGAL STANDARD</u>

The Court may issue orders to "protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party" in a single proceeding.  Fed. R. Civ. Proc. 20(b).  Orders the Court may issue under this rule include ordering separate trials.  (*Id.*)  If including certain parties in a case will result in prejudice to another party, or will confuse the jury, it is not an abuse of discretion to order that the proceedings be severed and claims to be tried separately. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-97 (9th Cir. 2000).

The Federal Rules of Evidence and related case law recognize the limits of relevant evidence and the importance of limiting the admission of evidence that is unduly prejudicial,

even in instances where a curative instruction is given.  See, e.g., Federal Rules of Evidence Rule 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly"); Rule 403 (permitting the exclusion of relevant evidence if its probative value is substantially outweighed by undue prejudice or the risk of misleading the jury); *Bruton v. U.S.*, 391 U.S. 123, 135-36 (1968) (finding that curative jury instructions were not enough to undo the prejudice caused by the confession of a codefendant implicating the petitioner in the context of a joint trial); *see also Gray v. Maryland,* 523 U.S. 185, 192-93, 197 (1998) (recognizing that "'incriminating extrajudicial statements of a codefendant'" are "so prejudicial that limiting instructions cannot work" and applying this holding to a confession that implicated the petitioner even though the petitioner's name was redacted).

    As for jury instructions, the decision of whether to give a cautionary instruction is a matter that is "very much within the discretion of the court."  *Krieger v. Bausch*, 377 F.2d 398, 402 (10th Cir. 1967).  While there must be competent evidence in favor of giving a jury instruction, this evidentiary bar is low, with courts requiring more than "a mere scintilla" and more than "speculation or conjecture" to serve as the basis for a jury instruction.  *See Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864, 872 (10th Cir. 1993).  This limiting instruction should be given in connection with all causes of action under which ER has a right to a trial by jury, including Plaintiffs' state tort claims for negligence, trespass, and nuisance, as well as Plaintiffs' CERCLA claims (to the extent that factual findings and findings of liability are to be made).  *See Tull v. U.S.,* 481 U.S. 412, 427 (1987).

## V.   ARGUMENT

### A.   The Court Should Sever the Trial of EPA's Liability from the Trial of ER's Liability

Instructing a jury under Federal Rule of Procedure 20(b) and Federal Rules of Evidence 105 and 403 will not be enough to avoid undue prejudice to ER.  As a result of the Court's Order partially granting Plaintiffs' and SGC's Motion for Sanctions, these parties may introduce spoliation evidence at trial.  This will include the evidence already submitted in support of the Motions—including evidence that devices belonging to the OSCs, Mr. Way and Mr. Griswold, had their contents wiped and how electronically stored information stored on these devices could not be recovered.  The Court's Order all but guarantees that this evidence, and more, will be introduced, as the Court notes additional testimony and evidence that it would like to see clarified before determining whether an adverse jury instruction is warranted, including why the in-person text preservation meeting did not occur before May 2016, why Mr. Way's iPhone backup initially did not include ESI from before October 20, 2015, why Mr. Griswold's iPad was reset to factory settings before he turned it in to EPA, and, in light of Mr. Way's inability to remember his iPad password, when Mr. Way last used his iPad and why he allegedly did not preserve ESI on the iPad after EPA issued a litigation hold six days after the release.  (*See* Order, pp. 12-13.)

The Sovereign Plaintiffs and SGC moved for sanctions against the Federal Parties only, and the Court's Order pertains to the Federal Parties alone.  But the practical outcome of the motion is not limited to the Federal Parties.  "[E]vidence of the Federal Parties' spoliation at trial" that the Court ordered may be introduced will cause the jury to question the credibility of federal party witnesses—particularly Mr. Way and Mr. Griswold, who are at the center of the

13

spoliation claims.  (*See* Doc. 1292, p. 11.)  Evidence implicating that ESI on their devices was erased or otherwise removed, that Mr. Way and Mr. Griswold delayed in turning in their devices, and that Mr. Way does not to recall his iPad password will undermine Mr. Way's and Mr. Griswold's credibility, even absent an adverse inference jury instruction.

The "evidence of the Federal Parties' spoliation" will, in the minds of the jurors, undermine ER's case and defenses.  (*See* Doc. 1292, p. 11.)  Mr. Way and Mr. Griswold were intimately involved in the work done at Gold King in the days and months leading up to the release.  Mr. Griswold, in particular, was present at Gold King on August 4 and 5, 2015, and gave step-by-step instructions to ER regarding the work to be done on those days.  (Ex. B (Griswold Depo.), 344:10-345:3, 346:8-17; Ex. A (Francis Depo.), 234:22-237:3; 269:7-18, 309:12-312:2; Ex. E (Munroe Depo.), 80:6-21, 82:2-16, 89:23-90:5; 90:11-91:1; 106:25-107:13, 107:20-108:2, 108:9-109:7, 119:7-120:2, 146:1-147:15, 151:6-12, 154:11-17.)  Accordingly, Mr. Way and Mr. Griswold are key witnesses for ER—they can corroborate ER's account of how plans were developed for work at Gold King, as well as how the work actually unfolded during the days leading up to the release.  If the questioning about spoliation and evidence of lost ESI convinces a jury not to trust these witnesses, ER effectively loses the ability to mount its most effective defense, as it can no longer rely on credible corroboration and confirmation of Mr. Way and Mr. Griswold regarding the events leading up to the release.

This will result in severe, undue prejudice to ER.  While such adverse inferences by a jury may be appropriate as the result of sanctions directed against that party, ER was not the subject of the Motions for Sanctions.  Counsel for the Sovereign Plaintiffs confirmed that they were not seeking relief from ER in their Motion for Sanctions.  (Ex. F.)  And the Court's Order

does not address or sanction ER, nor does it suggest that any spoliation or conduct by ER warranted the ultimate ruling on sanctions.

The prejudice that ER will suffer as a result of the Court's Order is too profound to remedy by mere instruction; it warrants severance of Plaintiffs' claims against ER from their claims against the Federal Parties.  In *Donato v. Fitzgibbons*, 172 F.R.D. 75 (S.D.N.Y. Apr. 1, 1997), the Southern District of New York confronted an almost identical situation.  A plaintiff sued a town and several police officers following a traffic collision with a police vehicle, the town destroyed the headlights of the police vehicle involved in the collision, and did not reveal that the headlights had been destroyed until after a court order requiring them to produce the headlights for inspection.  *Id*. at 78.  The police officer who had been driving the vehicle prior to the collision was not involved in the destruction of evidence by the town.  *Id*. at 84-85.

The court found that the town had engaged in spoliation and ruled that the jury would be instructed that the town had destroyed the headlights and that they may conclude that the destruction of the headlights was in bad faith and that an inspection would have revealed that they were turned off at the time of the collision.  *Id*. at 84.  The officer who had been driving the vehicle requested that his case be severed from the claims against the town and other officers, arguing that he had no responsibility for the retention and safekeeping of the headlights.  *Id*. at 84-85.  While the court had previously denied the officer's requests for severance, ***it reversed course and granted the request after finding that spoliation had occurred.***  *Id*. at 85.  The court noted that the officer had no responsibility for the spoliation of the evidence, but was concerned that its adverse inference ruling would have a "spillover effect" for the officer and could "contaminate" the minds of the jury against him.  *Id*.  Accordingly, the court ruled that the claim

against the officer should be tried separately, concluding that a protective instruction would not undo the potential prejudice the officer would face.  *Id.*

Here, ER is in the same position as the officer in *Donato*.  ER played no part in EPA's collection of devices and certainly had no role in the loss of ESI that was stored on those devices. Plaintiffs do not claim that ER was in any way responsible for any spoliation, and the Court's ruling does not apply to ER.  Despite all of this, the adverse inferences the jury may draw against EPA, Mr. Way, and Mr. Griswold—with or without an adverse inference instruction—will spill over onto ER and will contaminate the minds of the jury against ER.  ER was required to, and did, follow the instructions of Mr. Way and Mr. Griswold, as they were EPA's OSCs and therefore in charge of directing activities on site as work proceeded.  The jury would therefore see and hear evidence that the individuals who directed ER were involved in the spoliation of evidence, and therefore less-deserving of trust—leading to the inference that their directions to ER should not have been trusted. Severance is therefore warranted to avoid this prejudice.

Other courts recognize that severance may be necessary to avoid prejudice to a party.  In *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000), the district court had severed three plaintiffs' age discrimination claims from seven other plaintiffs' similar claims.  *Coleman*, 232 F.3d at 1296.  The court noted that the defendants would have been prejudiced absent the severance, as they would have faced a "parade" of witnesses' adverse testimony.  *Id.*  There was also a risk of jury confusion, as the plaintiffs resided in multiple states, meaning that their claims would need to be evaluated under different states' laws.  *Id.*  Accordingly, the Court of Appeals found that there was no abuse of discretion in severing the trials and concluded that the district court had properly considered prejudice to the defendant and the potential of factual and legal confusion of the jury.  *Id.* at 1296-97.

16

Like the defendant in *Coleman*, ER faces prejudice absent severance from Plaintiffs' claims against the Federal Parties.  Should the jury conclude that Mr. Way and Mr. Griswold spoliated evidence and therefore lack credibility, the jury will not trust these witnesses to the extent that their testimony (among other things), elaborates on, contextualizes, or corroborates ER's account of the planning and events leading up to the release.  Indeed, the jury may well conclude that ER's account is not to be trusted because it aligns with the testimony of Mr. Way and Mr. Griswold, the "spoliators" of evidence in this case.  An adverse inference instruction— which this Court has reserved ruling on for the time being—will only exacerbate the prejudice that ER will suffer.

Plaintiffs may argue that severance is improper in this case because of the overlap in the factual backgrounds and legal issues of their claims against ER and the federal parties.  But such a response only confirms ER's argument that the impact of the Court's Order affects ER as well as the Federal Parties.  It is precisely because of the overlap in the facts of the case and legal issues that negative inferences and prejudice to the Federal Parties resulting from spoliation evidence will bleed over and undermine ER's case and defenses as well.

B.    **In the Alternative, The Court Should Issue an Instruction Protecting ER From Negative Inferences Related to Spoliation Evidence**

If the Court does not grant ER's request for severance, ER requests, in the alternative, that the Court issue a protective jury instruction in ER's favor regarding the spoliation of evidence.  To the extent that evidence of spoliation is introduced, the jury should be instructed that any adverse inferences that they end up making should be made only against the Federal Parties and not against ER.  Such a limiting instruction is necessary with or without an adverse-

inference instruction, as evidence on spoliation will almost certainly be introduced at trial pursuant to the Court's Order.

Federal Rule of Evidence, Rule 105, provides that "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."  The Advisory Committee on the 1972 Rules of Evidence notes that this rule has a "close relationship" to Federal Rule of Evidence 403, which permits exclusion of evidence where the probative value of that evidence is outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury.  See Fed. R. Evid. 105 advisory committee's note on 1972 proposed rules.  The Advisory Committee recognized, though, that in some cases the risk of prejudice would be so severe, and a limiting instruction would not suffice—but in instances "where the risk of prejudice is less serious" a limiting instruction could be given pursuant to this rule.  *Id*.  The Supreme Court has recognized the danger of undue prejudice that may result from codefendant statements or admissions, noting that sometimes the effects such admissions are beyond the ability of jury instructions to cure.  *See Gray v. Maryland*, 523 U.S. 185, 192-93, 197 (1998) (recognizing that "'incriminating extrajudicial statements of a codefendant'" are "so prejudicial that limiting instructions cannot work" and applying this holding to a confession that implicated the petitioner even though the petitioner's name was redacted).  Where a court does proceed with providing a limiting instruction, the instruction should "carefully cabin[]" the evidence at issue and instruct the jury on the limited inferences they may draw from that evidence.  *See United States v. Henthorn*, 864 F.3d 1241, 1257 (10th Cir. 2017) (evaluating district court's limiting instruction regarding the limited inferences a jury could draw from admitted character evidence).

Beyond instructions limiting the use of evidence of spoliation, whether to grant a further cautionary instruction on the inferences that jurors may draw from that evidence is a matter that is "very much within the discretion of the court."  *Krieger v. Bausch*, 377 F.2d 398, 402 (10th Cir. 1967); *see also Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F. 3d 1121, 1130 (10th Cir. 2011) ("the admission or exclusion of a particular jury instruction is left to the sound discretion of the trial court").  Courts recognize that cautionary instructions may prevent juries from reaching impermissible inferences and that they may reduce the prejudicial impact of certain evidence on unrelated issues and defenses.  *See Krieger*, 377 F.2d at 402 (no abuse of discretion where district court instructed jury that instructions on measure of damages did not constitute an instruction to award damages); *Grissom v. Union Pac. R. Co.*, 14 F.R.D. 263, 265 (D. Colo. 1953) (noting that defendant's concerns about prejudice "can be avoided by appropriate instructions to the jury in a single trial on all issues.")

ER faces undue prejudice should its trial remain unsevered from the Federal Parties' trial. The witnesses whose credibility will be most affected by evidence of spoliation are Mr. Way and Mr. Griswold—the OSCs who worked with ER to plan what work would be done at Gold King and who directed the work at Gold King in the days leading up to the release.  This is not only detrimental to the Federal Parties, whose account of the release and related events rests on these individuals' recollections, but also for ER, who will rely on these witnesses to (at the very least) confirm and corroborate ER's account of the events, and explain their own conduct in the months and days leading up to, and including, August 4-5, 2015.

Moreover, evidence of spoliation in this case has no bearing on the merits of ER's case or defenses because the Court's order on the Motions for Sanctions is limited to the Federal Parties—not ER or any other defendants.  In the meet and confer discussions that took place

19

prior to the filing of the motions, the Sovereign Plaintiffs admitted that they were not seeking

relief against ER in their Motion for Sanctions.  (Ex. F (Meet and Confer Emails).)  Indeed, ***the***

***Sovereign Plaintiffs relied on documents produced by ER to support their Motion for***

***Sanctions***, noting that ER had produced text messages between ER personnel and Mr. Way that

had not been obtained from Mr. Way's device.  (*See* Motion, [Doc. No. 1179] p. 6.)  ER should

not be impacted by spoliation sanctions as a result of the loss of evidence in which it was not

involved and over which it had no control.  *Jones v. Norton*, 809 F.3d 564, 581 (10th Cir. 2015)

(explaining co-defendant lacked the level of culpability required for the spoliation of evidence

outside of their control therefore could not be sanctioned).   Absent a limiting instruction, ER

will suffer prejudice from evidence related to the spoliation of evidence by Mr. Way,

Mr. Griswold, and those responsible for preserving and collecting their ESI.  This prejudice will

result, at least in part, from ER's own diligence in preserving and collecting ESI, which Plaintiffs

then used to support their Motion for Sanctions.

While the Court reserved ruling on Plaintiffs' and SGC's request for an adverse inference

instruction related to spoliation, there should be no similar reservation in determining whether a

protective instruction is necessary.  The Court has ordered that Plaintiffs and SGC may introduce

evidence of spoliation—making it all but inevitable that Plaintiffs and SGC will elicit this

evidence.  This evidence will consist of testimony from Mr. Way, Mr. Griswold, and others

regarding their devices, the fact that information was apparently deleted or removed from those

devices, that certain devices were reset to factory settings before being turned in to the EPA, and

that Mr. Way is currently unable to recall his iPad password, thereby preventing access to ESI.

This evidence, and its impact on the credibility of Mr. Way and Mr. Griswold, will have a

detrimental effect on ER's defense, even if the Court ultimately decides against issuing an

adverse inference instruction.  Accordingly, it is appropriate for the Court to rule that ER is entitled to a protective instruction now in the wake of its ruling on Plaintiffs' and SGC's Motions for Sanctions.

## VI.   <u>CONCLUSION</u>

For these reasons, ER respectfully requests that the Court grant its Motion and sever the trial of Plaintiffs' state law tort claims and CERCLA liability claims against the Federal Parties from the trial of these claims against ER, or, in the alternative, issue a protective jury instruction confirming that none of the evidence related to spoliation should be held against any aspect of ER's defenses and claims.

DATED this 15th day of November, 2021.

Respectfully submitted,

GLASER WEIL FINK HOWARD AVCHEN &
SHAPIRO LLP

By: /s/ Peter C. Sheridan              MOSES, DUNN, FARMER & TUTHILL,
Terry D. Avchen (*pro hac vice*)      P.C.
Peter C. Sheridan (*pro hac vice*)     Terry D. Farmer
Rory S. Miller (*pro hac vice*)      612 First Street NW
10250 Constellation Blvd., 19th Fl.    P.O. Box 27047
Los Angeles, California 90067     Albuquerque, New Mexico 87125-7047
Telephone: (310) 553-3000      Telephone: (505) 843-9440
Email: tavchen@glaserweil.com     Email: terry@moseslaw.com
Email: psheridan@glaserweil.com

2079791.1

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2021 the foregoing document was filed via the

U.S. District Court of New Mexico's CM/ECF electronic filing system and a copy thereof was

served via the CM/ECF electronic transmission upon all counsel of record, as reflected by the

Court's CM/ECF system.

*/s/ Nichole Aranda*