**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: GOLD KING MINE RELEASE IN SAN JUAN COUNTY, COLORADO, ON AUGUST 5, 2015 | No. 1:18-md-02824-WJ |

*This document relates to: All Actions*

**WESTON SOLUTIONS, INC.'S
MOTION FOR SEPARATE TRIALS OR IN THE ALTERNATIVE
A CURATIVE JURY INSTRUCTION**

MONTGOMERY & ANDREWS, P.A.

Jeffrey J. Wechsler
Louis W. Rose
Kari E. Olson
Kaleb W. Brooks
325 Paseo de Peralta (87501)
P.O. Box 2307
Santa Fe, NM 87504-2307
Telephone: (505) 986-2637
Email: jwechsler@montand.com
Email: lrose@montand.com
Email: kolson@montand.com
Email: kwbrooks@montand.com

*Attorneys for Defendant
Weston Solutions, Inc.*

November 16, 2021

Defendant Weston Solutions, Inc. ("Weston"), makes its Motion for Separate Trials, or in the alternative for a Curative Jury Instruction. Following a good faith confernce, Weston gives notice that this motion is opposed by Plaintiffs the State of New Mexico, Navajo Nation, *Allen* group, and *McDaniel* group.

## INTRODUCTION

The Court has ordered sanctions against the Federal Defendants due to spoliation of certain electronically stored information, including the data stored on the iPhones, iPads, and OneDrive accounts of the Environmental Protection Agency On-Scene Coordinators Steven Way and Hays Griswold. (Together, this data is referred to herein as the "ESI"). *See* Dkt. No. 1292. The sanctions include permitting the Plaintiffs in this action to present evidence to the finder of fact concerning the spoliation. *Id.* However, the Court has deferred its ruling on whether the sanctions against the Federal Defendants may include an adverse jury instruction permitting the fact finder to presume that the spoiled evidence was unfavorable to the Federal Defendants. *Id.* The Court will take evidence and supplemental briefing concerning whether the spoliation was intentional to resolve this issue. *Id.*

This Motion concerns the necessary prophylaxis to prevent the finder of fact from ascribing any negative inference from the Federal Defendants' spoliation to the federal contractors that worked alongside EPA at the Gold King Mine site. Consider, for instance, the potential effect of the sanctions against the Federal Defendants upon the government contractor defense. As discussed at length in briefing before the Court on the Contractor Defendants' motions on the defense (e.g., Dkt. No. 1220), certain of Weston's defenses in this matter depend upon the nature and contents of instructions from EPA to contractor personnel. To the extent that the finder of fact

may infer that the lost ESI may have included communications relevant to the EPA's plan for work at the site in August 2015, it may also infer that the spoiled evidence would affect the contractors' duties and obligations at the mine. Such inferences should not be available against the Contractor Defendants. Weston is not culpable for the Federal Defendant's spoliation of evidence, and the Court's sanctions against the Federal Defendants should not affect the Contractor Defendants' potential liability.

## ARGUMENT

Weston is entitled to a separate trial or in the alternative a curative jury instruction on the issue of the Federal Parties' spoliation. These steps are necessary to ensure that the loss of ESI does not color the jury's evaluation of Weston's liability.

### I.  A SEPARATE TRIAL IS REQUIRED TO PREVENT UNDUE PREJUDICE AGAINST WESTON

Federal Rule of Civil Procedure 20(b) allows the court to issue an order for separate trials to protect a party from prejudice. *F.D.I.C. v. Refco Grp., Ltd.*, 184 F.R.D. 623, 629 (D. Colo. 1999). A Rule 20(b) order is permissible when the prejudice "arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. P. 20(b). The standard is discretionary. *See Refco Grp., Ltd.*, 184 F.R.D. at 629; *see also Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1447 (10th Cir. 1985) ("The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused."); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. Civ.A. No. 94-2304-EEO, 1995 WL 769174, at *1 (D. Kan. Dec. 21, 1995) ("The decision to grant separate trials turns on the facts of each case and rests within the sound discretion of the trial court.").

There is little reported authority in the Tenth Circuit that considers severance under Rule 20(b) outside of the context of improper joinder. Drawing on the law of other circuits, those district courts that have considered the issue in unreported cases have articulated two principal considerations: unfair prejudice and judicial economy. *See, e.g., Duran v. Domino's Pizza, LLC*, No. CV 08–0962 WPL/RHS, 2009 WL 10464538, at *1 (D.N.M. Nov. 16, 2009) (citing *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1224 (7th Cir. 1995)) ("In exercising its discretion, the court should consider the prejudice to each party as well as the cost to the parties and the judicial system of conducting two trials rather than one."). Thus, where there is no demonstration of "significant prejudice," and the combined trial would "promote convenience, expedition, and economy," a motion to sever trials under Rule 20(b) may be denied. *See Pulsecard, Inc.*, 1995 WL 769174, at *1. By contrast, a motion may be granted to avoid unfair prejudice when, considering all the circumstances, the burden on "judicial resources" associated with separate trials is "diminished." *See Duran*, 2009 WL 10464538 at *2-3 (granting motion to sever where combined trial would prejudice plaintiff by delaying trial, and the benefits of combined trial would be diminished because the third-party complaint involved additional claims unrelated to the first-party complaint).

Applying this standard, diligent research revealed only one reported federal decision in which a court considered a motion to sever to prevent the prejudice associated with a spoliation sanction against a co-party: *Donato v. Fitzgibbons*, 172 F.R.D. 75 (S.D.N.Y. 1997) (severing claims by police officer against civilian motorist from claim by civilian motorist against municipal police department that arose from the same accident where the court ordered a spoliation sanction against department related to destruction of headlights). In ordering severance, the *Donato* court

reasoned that the "need for repetitive testimony" was lessened because the officer's claims did not involve the same medical testimony as the civilian's, and the prejudice associated with the negative inference against the department would "spillover" to "contaminate" the jury's view of the officer. *See id.*, at 85-86.  The court further reasoned that a curative jury instruction would be inadequate because it would require to the jury to simultaneously evaluate liability in two different scenarios: one in which the testimony regarding whether the headlights were illuminated is mixed and one in which the jury may simply infer that the headlights were off.  *See id.* ("[I]t is not reasonable to expect a jury to find a fact one way as to a defendant, and to find that same fact another way as to a plaintiff in a related action.").

In this case, the balance of considerations weigh in favor severing the Plaintiffs' claims against Weston from the claims against the EPA.

Initially, the spoliation sanction against the EPA portends significant unfair prejudice against Weston.  Plaintiffs contend that Weston was negligent for failure to complete a comprehensive engineering evaluation of the Gold King Mine Level Seven adit blockage to determine, among other things, the potential hydrostatic pressure against the blockage.  *See, generally,* Dkt. 339, ¶ 191 (alleging that Weston was "negligent or grossly negligent" for "[f]ailing to investigate or test the hydraulic pressure," and improperly "judging the elevation of the water *inside* the mine").  One of Weston's principal defenses in response contends that the EPA's site-specific tasking to Weston for the site did not include any such engineering evaluation.  *See, e.g.,* Dkt. 1220-1, ¶ 28.  This defense turns on the specific content of technical direction that EPA issued to Weston.  If the jury is permitted to hear evidence and draw inferences concerning spoliation, it may conclude that the ESI contained relevant evidence bearing upon EPA's plan at

5

the Gold King Mine site and tasking to Weston.  In this way, *Donato* presents a useful analogue.  The Court cannot reasonably expect the jury to evaluate liability in two separate and mutually exclusive worlds: one in which the testimony and documentary evidence concerning the EPA's plan at the Gold King Mine is complete and one in which the jury may infer that relevant evidence concerning the plan is missing among the spoiled ESI.  This problem is especially prejudicial to Weston because its defense hinges, in part, on the *absence of relevant, contemporaneous evidence* indicating that the EPA charged Weston with engineering responsibilities to evaluate the plan to excavate the blockage and dewater the mine pool.

Against this prejudice, the efficiency concerns that normally militate against severance are diminished in this case because the issues for trial on the Plaintiffs' claims against Weston are significantly narrower than the full panoply of issues for trial in this litigation generally.  Trial on the Plaintiffs' claims against the Federal Defendants will involve significant factual development on the United States' affirmative case against Sunnyside Gold Corporation that has no bearing on Weston's potential liability.  *See, generally*, Dkt. 195, p. 48.  Compared with the broader litigation, which involves evidence spanning over one hundred years of mining in the region, the liability case against Weston is relatively simple, involving a limited cadre of percipient witnesses and relevant events occurring over about twelve months of investigation at the mine site.

In light of these considerations, severing the claims against Weston would be prudent to prevent unfair prejudice and to promote accurate adjudication on the merits for these comparatively simple claims.

## II. ALTERNATIVELY, A CURATIVE INSTRUCTION IS APPROPRIATE BECAUSE SPOLIATION SANCTIONS ARE NOT AVAILABLE AGAINST WESTON.

If the Court determines that it will not exercise its discretion to order separate trails, then it must take other steps to protect Weston from the unfair prejudice that may spillover from the spoliation sanction against the United States.

Federal Rule of Evidence 105 provides that the Court should instruct the jury not to consider evidence against a party for whom the evidence is not admissible: "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Whether to grant a further cautionary instruction on the inferences that jurors may draw from that evidence is a matter that is "very much within the discretion of the court." *Krieger v. Bausch*, 377 F.2d 398, 402 (10th Cir. 1967); *see also Leprino Foods Co. v. Factory Mut. Ins. Co.*, 653 F. 3d 1121, 1130 (10th Cir. 2011) ("the admission or exclusion of a particular jury instruction is left to the sound discretion of the trial court").

In this case, the Court has determined that evidence of ESI spoliation will be admissible at trial. The question is whether that evidence may be used against Weston. It may not because Weston was not culpable in the spoliation.

When granting sanctions for spoliation, the court must guard against the parties' rights to a fair trial. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996). Sanctions are only available against the parties that are culpable for the spoliation. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("[An] adverse inference must be predicated on the bad faith of the party destroying the records."). An adverse inference is only available against

7

a party that acted in bad faith. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009).

Applying this standard, a party may not face sanctions for the loss of evidence of which it had no control. *Jones v. Norton*, 809 F.3d 564, 581 (10th Cir. 2015) (explaining co-defendant lacked the level of culpability required for the spoliation of evidence outside of their control therefore could not be sanctioned). This proposition is well-supported in persuasive authority. *See Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir. 2015) (spoliation instruction improper against defendant because defendant "had no involvement in the alleged spoliation of the documents, nor any access, or control, over the destroyed files"); *Adkins v. Wolever*, 692 F.3d 499, 505 (6th Cir. 2012) (adverse inference unavailable against employee of prison for prison's spoliation of evidence because employee "was not culpable because he had no control over the evidence"); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 273-74 (6th Cir. 2010) (affirming denial of sanction to co-defendant who was not involved in wrongful conduct resulting in spoliation of evidence); *Guard Ins. Group, Inc. v. Techtronic Indus. Co., Ltd.*, 80 F. Supp. 3d 497, 503 (W.D.N.Y. 2015) (denying spoliation sanctions because plaintiff "never had control over the evidence" and the party that destroyed the evidence "was not an agent" of the plaintiff); *Gurvey v. Fixzit Nat. Install Servs., Inc.*, Civ. No. 06–1779(DRD), 2011 WL 550628, *5 (D.N.J. Feb. 8, 2011) ("[S]poliation inferences are only appropriately entered against the party that actually destroyed the evidence").

Here, Plaintiffs have not demonstrated that Weston had any degree of culpability with respect to the spoliation. Plaintiffs have not alleged or demonstrated that the ESI was ever in the physical control of Weston, and Weston had no responsibility to maintain the data or devices in

EPA's possession.  *See, generally,* Dkt. 1179.  No evidence before the Court indicates that Weston had any involvement in the spoliation of ESI.  Accordingly, spoliation sanctions are not available against Weston, and the spoliation sanctions against the Federal Defendants should not have any effect on the claims against Weston.  Whatever inferences that the jury may draw from the spoliation evidence that the Plaintiffs may present may not be used against Weston.  In order to prevent this improper use and any potential prejudice to Weston, the Court must give a Rule 105 instruction indicating that any evidence of spoliation, and adverse inference (if any) therefrom, may only be used against the Federal Defendants and may not affect the jury's consideration of the claims against Weston. Without a curative instruction, the jury may not fully grasp that this sanction is only against one party and then may inadvertently apply any inference from the spoliation evidence against all Defendants.  Use of a curative jury instruction will both make it clear that the sanction is only against one party as well as serve to abate the prejudice that will occur as a result of this sanction.

      Therefore, Weston requests that the Court order that the following curative jury instruction be given at the conclusion of the presentation of any evidence of spoliation and prior to the jury's deliberation:

> The Jury must not consider any evidence of missing electronically stored information as damaging to any Defendant other than the United States and its officers.

## CONCLUSION

Weston respectfully requests that the Court issue an order either (1) severing the claims against Weston from those against the United States or (2) requiring a curative jury instruction to limit the use of any spoliation evidence against Weston.

Dated: November 16, 2021

                                Respectfully submitted,

                                MONTGOMERY & ANDREWS, P.A.

                                By: __/s/ *Jeffrey J. Wechsler*_____
                                      Jeffrey J. Wechsler
                                      Louis W. Rose
                                      Kari E. Olson
                                      Kaleb W. Brooks
                                325 Paseo de Peralta (87501)
                                P.O. Box 2307
                                Santa Fe, NM 87504-2307
                                Telephone: (505) 986-2637
                                Email: jwechsler@montand.com
                                Email: lrose@montand.com
                                Email: kolson@montand.com
                                Email: kwbrooks@montand.com

                                *Attorneys for Defendant*
                                *Weston Solutions, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 16, 2021, the foregoing document was filed via the U.S. District Court of New Mexico's CM/ECF electronic filing system and a copy thereof was served via the CM/ECF electronic transmission upon all counsel of record, as reflected by the Court's CM/ECF system.

                                                      _____/s/ *Jeffrey J. Wechsler*_____