IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                     No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to:*   No. 1:16-cv-00465-WJ-LF
                              No. 1:16-cv-00931-WJ-LF
                              No. 1:16-cv-00319-WJ

## MEMORANDUM OPINION AND ORDER
## DENYING ENVIRONMENTAL RESTORATION'S AND WESTON'S MOTIONS
## REGARDING GOVERNMENT CONTRACTOR DEFENSE

**THIS MATTER** comes before the Court on Environmental Restoration's Motion to Dismiss Plaintiffs' State Law Claims for Lack of Subject-Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) or, in the Alternative, for Partial Summary Judgment Under Fed. R. Civ. P. 56, Doc. 1114, filed February 19, 2021, ("ER Motion"), and Weston Solutions, Inc.'s, Motion for Partial Summary Judgment to Dismiss Tort Claims, Doc. 1220, filed May 28, 2021 ("Weston Motion"). Both Motions seek dismissal of tort claims based on the Government Contractor Defense.

**The Government Contractor Defense**

To establish the government contractor defense, a contractor must show: (i) the case involves "uniquely federal interests;" (ii) a "significant conflict exists between an identifiable federal policy or interest and the operation of state law;" and (iii) the contractor's actions fall within the "scope of displacement." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504, 507, 512 (1988). A contractor's actions fall within the scope of displacement if: (i) "the United States approved reasonably precise specifications;" (ii) the contractor "conformed to those specifications;" and (iii) the contractor "warned the United States about the dangers" known to the contractor but not to the United States." *Boyle v. United Technologies Corp.*, 487 U.S. at 512.

**ER's Role**

ER served as a contractor to EPA "to perform remediation activities at the Gold King Mine to treat drainage from the mine and to reduce the impact on the environment from this drainage." ER Motion at 2.  The tasks that ER was to perform were written in a work plan, a task order and an email prepared before the August 2015 work at the Gold King mine.  The specified work included initial preparation work, digging above an outlet pipe, rebuilding the annual washout zone, leveling the work pad, constructing culverts, installing a drainage pipe, installing a pipe as a sump basin, putting up a berm to contain the flow of water, installing a sump pump building a ramp near the adit[1] at the Gold King Mine and exposing the rock base above the adit.  *See* ER Motion at 6, Undisputed Material Fact ("UMF") 16; at 6, UMF 17.  Mr. Steve Way, an EPA employee designated as the official On Scene Coordinator ("OSC"), approved the work plan and sent an email regarding work at the Gold King Mine.  *See* ER Motion at 4, UMF 9; at 5, UMF 15; at 6, UMF 17.

**Weston's Role**

Weston also served as an EPA contractor.  EPA issued a Technical Direction Document ("TDD") and a Statement of Work defining Weston's tasks.  *See* Weston Motion at 5, UMFs 7 and 10.  EPA assigned the following tasks to Weston:

> Technical assistance is required to prepare for adit entry and inspection by the CO-DRMS.  This includes water management system operations assistance, monitoring and water sampling and analysis (as directed by the OSC), and air monitoring within the adit.  The duties may include inspecting portal construction to ensure compliance with specifications, entering the mine adit and coordination with mine rehab contractors and ERRS.  Documentation of the response actions will include daily reports to the OSC during operations and a final summary Field Activities Report.

---

[1] "An 'adit' is a horizontal passage into a mine." *Allen* Plaintiffs' Second Amended Complaint at 103, ¶ 322, Doc. 445, filed January 21, 2020.

Weston Motion at 5, UMF 10.  OSC Way sent to Weston "a set of additional 'anticipated tasks' for Weston during the 2015 season, such as preparing 'water treatment plans,' providing 'conceptual designs' for water conveyance, documenting activities, monitoring water quality, developing an amended sampling and analysis plan, and providing a final report."  Weston Motion at 8, UMF 21.  Weston prepared a Sampling and Analysis Plan for the 2015 field work at the Gold King Mine site, which OSC "Way signed and approved" on July 10, 2015.  Weston Motion at 8, UMF 22.

**The Specifications**

The Court denies ER's and Weston's Motions because there is a dispute as to whether their actions fall within the "scope of displacement" which requires that "the United States approved reasonably precise specifications" and ER and Weston "conformed to those specifications."  *Boyle v. United Technologies Corp.*, 487 U.S. at 512.

It appears that there were two sets of specifications for work at the Gold King Mine.  The first set of specifications, described above, includes tasks that were developed and approved prior to August 4, 2015, when Mr. Way was the OSC for Gold King Mine.  The second set of specifications includes instructions that OSC Hays Griswold provided to ER and Weston on August 4-5, 2015, during work at the Gold King Mine.  *See* ER Motion at 6, UMF 17 (stating Mr. Griswold took over as OSC for the Gold King Mine because Mr. Way was leaving on vacation).

There is a dispute as to whether ER and Weston conformed to EPA's first set of specifications on August 4-5, 2015.  OSC Griswold testified that "[w]ithin minutes of arrival [at the Gold King Mine]" he "devised a plan that was completely separate from anything in a work plan or anything in an e-mail from Steve Way" and he "saw the work plan ... threw it out ... and from there ... directed [ER] and [Weston] on what to do."  Griswold Deposition Transcript at 132:25-133:5, 137:6-14, Doc. 1208 at 6-7, filed May 24, 2021.

Regarding the second set of specifications, there is a dispute as to whether "the United States approved reasonably precise specifications."  The second set of specifications are the instructions OSC Griswold gave to ER and Weston when he directed their work at the Gold King on August 4-5, 2015, and do not appear to be reasonably precise specifications approved by the United States because OSC Griswold threw out the work plan, "devised a plan that was completely separate from anything in a work plan," and "directed [ER] and [Weston] on what to do."  Griswold Deposition Transcript at 132:25-133:5, 137:6-14, Doc. 1208 at 6-7, filed May 24, 2021.   The contract between EPA and ER states that: (i) "Performance of the response services in this contract shall be made only as authorized by Task Orders issued in accordance with Clause G.2, 'Ordering – By Designated Ordering officers;'" and (ii) "The OSC named in the TO [Task Order] will be responsible for the technical administration of Tos [Terms of service] placed hereunder.  Ordering officers (OSCs) do not have authority to modify any provisions on this contract.  Any request for deviation from the terms of this contract or any Task Orders issued hereunder must be submitted to the Contracting Officer for action." Doc. 1208-1 at 5, ¶ H.17(a), (f).  The contract between EPA and Weston states: (i) "Technical direction includes: (1) Direction to the Contractor which assists the Contractor in accomplishing the Statement of Work;" (ii) "Technical direction must be within the contract and the delivery order, work assignment or technical direction document statement of work.  The Project Officer or any other technical representative of the Contracting Officer does not have the authority to issue technical direction which ... institutes additional work outside the scope of the contract, delivery order, work assignment or technical direction document;" and (iii) "Contractor personnel under this contract shall not ... Be placed in a position where they are under

4

the supervision, direction, or evaluation of a Government employee." Doc. 1295-17 at 3-4, ¶ H.4(c), (d) and ¶ H.5(b).

The Court denies ER's and Weston's motions for summary judgment based on the government contractor defense because Plaintiffs cited to parts of the record showing there are genuine disputes as to whether ER and Weston conformed to the specifications in the government-approved workplan and whether OSC Griswold's instructions were reasonably precise government-approved specifications.

**IT IS ORDERED** that:

(i) Environmental Restoration's Motion to Dismiss Plaintiffs' State Law Claims for Lack of Subject-Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) or, in the Alternative, for Partial Summary Judgment Under Fed. R. Civ. P. 56, Doc. 1114, filed February 19, 2021, is **DENIED.**

(ii) Weston Solutions, Inc.'s, Motion for Partial Summary Judgment to Dismiss Tort Claims, Doc. 1220, filed May 28, 2021, is **DENIED.**

_____
**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**