IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,
ON AUGUST 5, 2015

No. 1:18-md-02824-WJ

*This Document Relates to All Cases*

## MEMORANDUM OPINION AND ORDER
## DENYING NEW MEXICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## REGARDING DEFENDANT ENVIRONMENTAL RESTORATION, LLC'S
## AMENDED DESIGNATION OF NONPARTIES

**THIS MATTER** comes before the Court on Plaintiffs the State of New Mexico and New Mexico Environment Department's (together "New Mexico") Motion for Partial Summary Judgment Regarding Defendant Environmental Restoration, LLC's ("ER") Amended Designation of Nonparties at Fault under Colo. Rev. Stat. § 13-21-111.5(3)(b), Doc. 1455, filed February 23, 2022 ("Motion").

**Background**

On August 17, 2017, ER filed its Amended Designation of Nonparties at Fault under Colo. Rev. Stat. § 13-21-111.5(3)(b) stating:

> ER believes that each of the Non-Parties, individually and collectively, caused and/or contributed to (1) the conditions that resulted in the release from the Gold King Mine on August 5, 2015 (the "Release") and/or (2) the release of substances that Plaintiffs in this Action have alleged contaminated the Animas and San Juan Rivers and caused their alleged damages.

Doc. 169 at 2, filed in *New Mexico v. U.S. E.P.A.*, No. 1:16-cv-00465-WJ-LF.

Colo. Rev. Stat. § 13-21-111.5 provides:

> (1) In an action brought as a result of ... injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, ... damage, or loss, ....
>
> (2) The jury shall return a special verdict, or, in the absence of a jury, the court shall make special findings determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action of whom notice has been given pursuant to paragraph (b) of subsection (3) of this section to whom some

> negligence or fault is found and determining the total amount of damages sustained by each claimant ....
>
> (3)(a) ... the finder of fact in a civil action may consider the degree or percentage of negligence or fault of a person not a party to the action, based upon evidence thereof, which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action ....
>
> (b) Negligence or fault of a nonparty may be considered ... if the defending party gives notice that a nonparty was wholly or partially at fault ....

**New Mexico's Motion**

> New Mexico states:
>
> New Mexico's economic damages flow directly from the Blowout and its impacts on the use and enjoyment of the waters of the State of New Mexico.  New Mexico seeks lost tax revenue resulting from the significant loss of economic activity in San Juan County due to the Blowout and the stigma that has attached to the waters of the State of New Mexico and the region as a direct result thereof ... This lost tax revenue is not linked to historical contamination; rather, it flows directly from the events of August 5, 2015 and the contamination of New Mexico's waters that occurred in the days, weeks, and months that followed the Blowout and the economic and stigmatic impacts on New Mexico's precious natural and economic resources.

Motion at 13-14.  New Mexico requests that the Court dismiss ER's affirmative defense of pro rata liability "[b]ecause there is absolutely no evidence that any of ER's designated nonparties caused or contributed in any way to the Blowout or to New Mexico's damages."  Motion at 15.

> Plaintiff Navajo Nation joined in New Mexico's Motion stating:
>
> Like New Mexico, the Navajo Nation exclusively seeks damages caused by the August 5, 2015, blowout of the Gold King Mine ... Accordingly, because—as New Mexico's motion demonstrates—there is no evidence that any of the nonparties listed in [ER's] Amended Designation caused or were at fault with regard to the Blowout, summary judgment should be granted on ER's defense of pro rata liability with respect to the Navajo Nation as well.

Doc. 1457 at 2, filed February 23, 2022. The *Allen* and *McDaniel* Plaintiff's also joined in New Mexico's Motion with similar statements that they exclusively seek damages caused by the August 5, 2015, blowout of the Gold King Mine and that there is no evidence that any of the designated

2

nonparties caused or were at fault with regard to the blowout.  *See* Doc. 1458 at 1, filed February 24, 2022 (*Allen* Plaintiffs); Doc. 1506 at 1, filed March 10, 2022 (*McDaniel* Plaintiffs).

**ER's Response**

ER designated several nonparties who ER contends were at fault for New Mexico's damages:

> Most of the nonparties listed were responsible for contaminating the Animas and San Juan Rivers for decades or more. After all, New Mexico claims it suffered damage due to the contamination of the Animas and San Juan Rivers by the Gold King Mine release, and that this resulted in economic and other damages. Proving that the contamination in these rivers was caused, in whole or in part, by other parties well before the release in question would undermine the causal link between the release and New Mexico's claimed damages, and would reduce ER's share of potential liability.

ER's Response at 4, Doc. 1501, filed March 9, 2022.  ER refers to several portions of the record to support its contention that "the contamination of the Animas and San Juan Rivers, which New Mexico claims caused its economic damages, was caused by the designated nonparties through historic mining activities and drainage."  Response at 8-10.  ER also cites to portions of the record to support its contention that designated nonparties State of Colorado, K&P Property Designs and San Juan Corporation are liable for contamination resulting from the August 5, 2015, release from the Gold King Mine.  *See* Response at 9-10 (Colorado contributed to contamination of the Animas and San Juan River through its reclamation actions at the Gold King Mine); at 10 (the President of San Juan Corp., which owns the Gold King and Mogul Mining properties visited the Gold King Mine from 2005 and onward, noticed discharge from the mine that was steadily increasing, and recognized the potential for a blowout at Gold King Mine but failed to address the issue); *see also* Response at 12, 16 (stating K&P Property Designs, a contractor retained by Colorado's Department of Resources and Mining Safety performed work at the Gold King Mine on and before the days leading up to the release).

Weston Solutions, Inc. ("Weston") joined in ER's Response stating:

3

New Mexico claims that the release event, and associated media coverage, has caused "a long-term stigma attached to the waters of the state" that is "not linked to historical contamination." ... For the reasons stated in the Response, Weston disagrees with New Mexico's premise that any environmental stigma is altogether unrelated to legacy mining waste.

Further, even if one grants New Mexico's premise, dismissal of the affirmative defense would be improper because New Mexico's tort damage claims are not limited to its economic damage claims. New Mexico also claims damages for "unfunded" elements of its long-term monitoring plan and other environmental remediation or monitoring. ... New Mexico has not made a prima facie case in the Motion that the conduct of non-parties, including any legacy mine operators, did not contribute to the injury for which New Mexico seeks compensation by way of these damages.
....

New Mexico appears to proceed from a false premise: i.e., Weston and the other Defendants may not argue that New Mexico's damages are attributable to non-parties without filing an appropriate designation of non-parties. *See* Dkt. 1455, 13 ("Because there is no evidence that any of ER's designated nonparties in any way caused or contributed to the Blowout *or Plaintiffs' damages arising therefrom*, New Mexico is entitled to summary judgment . . . ." (Emphasis added)). This argument, although not explicitly addressed in the Motion, misunderstands the distinction in Colorado law between a defense to apportion *damages* and a defense to prorate *fault*. Regardless of the Court's decision with respect to ER's affirmative defense on apportionment of fault, apportionment of damages remains a viable defense. Colorado Revised Statutes, Section 13-21-111.5(3)(b) only concerns notice requirements pertinent to a defense seeking prorate fault to non-parties; it does not apply to apportioning damages.
....

Although the Motion is largely directed at non-parties described as "past and present owners and/or operators of mines or power plants" ... one of the designated non-parties of central importance is the State of Colorado. Irrespective of whether the Court determines that entities responsible for legacy mine waste may be appropriately designated as non-parties at fault, the Court should permit Defendants to put on evidence concerning the State of Colorado's contribution to the release. If the trier of fact determines that the excavation on August 4-5, 2015, proceeded in a negligent manner—which Defendants dispute—then the jury must be permitted to evaluate the degree of fault that should be apportioned to the Colorado Division of Reclamation, Mining and Safety ("DRMS") for its participation. There is abundant evidence that the United States Environmental Protection Agency ("EPA") relied on DRMS for its expertise and guidance in formulating the plan for excavation and for executing the operations on August 4-5, 2015 ... The Court must permit the jury to determine what fault the State of Colorado has for its participation in the work at the site.

Doc. 1502 at 2-6, filed March 9, 2022.

The Federal Parties joined in ER's Response stating:

> while the Motion seeks relief only against [ER], the designation of non-parties potentially at fault filed by [ER] was sufficient notice to Plaintiffs to benefit all Defendants that have brought an appropriate affirmative defense seeking to apportion liabilities with non-parties ... The Federal Parties pled an affirmative defense concerning the apportionment of liability ... Accordingly, the Motion affects the Federal Parties' interests.

Doc. 1503 at 1-2, filed March 9, 2022.

**New Mexico's Reply**

New Mexico argues that "ER cannot recast the allegations about New Mexico's economic damages from the Blowout as claims concerning general environmental pollution." New Mexico's Reply at 13, Doc. 1513, filed March 23, 2022. New Mexico states:

> The economic damages sought by New Mexico in connection with its tort claims flow directly from the Blowout and its immediate effects upon the waters of the State. ER cannot link these damages to historic or unrelated contamination from mines, power plants, and industries in the broader Four Corners region; such contamination is factually and legally unrelated to New Mexico's economic damages. New Mexico has demonstrated its damages by comparing the robust economic activity and uses of the Animas and San Juan Rivers *before* the Blowout with the diminished economic activity *after* the Blowout ... New Mexico's tort claims and damages arise from the *change* in the economy caused by the Blowout.
> ....
>
> While New Mexico does claim both environmental and economic injuries from the Blowout, its pleadings deliberately and plainly distinguish between historical contamination of the Animas and San Juan Rivers and the significant and stigmatizing plume of contamination released from the Blowout, alleging that only the latter caused its economic injuries.

Reply at 5, 14 (emphasis in original).

**Discussion**

The Court denies New Mexico's Motion to dismiss ER's affirmative defense of pro rata liability. New Mexico argues that "there is absolutely no evidence that any of ER's designated nonparties caused or contributed in any way to the Blowout or to New Mexico's damages." Motion at 15. However, ER has cited to portions of the record to support its contention that designated nonparties State of Colorado, K&P Property Designs and San Juan Corporation are liable for

contamination resulting from the August 5, 2015, release from the Gold King Mine.  *See* Response at 9-10; *see also* Weston's Notice of Joinder at 4-5, Doc. 1502 (citing to portions of the record to support the contention that designated nonparty State of Colorado is liable for contamination resulting from the August 5, 2015, release from the Gold King Mine).

New Mexico states:

> ER cannot recast the allegations about New Mexico's economic damages from the Blowout as claims concerning general environmental pollution ... at most, ER has offered evidence that a handful of the designated nonparties may be considered "at fault" for contributing to historical contamination in the Animas and San Juan Rivers.  To the extent that ER can demonstrate historical sources of this contamination are driving response and remediation costs, those sources may be relevant only to New Mexico's CERCLA claims.

New Mexico's Reply at 13.  "New Mexico argues that **the Blowout itself** and its economic repercussions caused its tort damages."  New Mexico's Reply at 6 (emphasis in original).  While New Mexico alleges that the Blowout caused New Mexico's economic damages, such as "economic losses from reduced economic activity and associated taxes, fees, and income due to, inter alia, reduced agricultural, cultural, and tourist activities," Motion at 7, New Mexico's Second Amended Complaint alleges that historical contamination by Kinross, Kinross Gold U.S.A. and Sunnyside Gold also caused its tort damages.  New Mexico asserts the following tort claims:

(i)  **Public Nuisance** against the USA, EPA, ER, Weston, Kinross, Kinross Gold and Sunnyside Gold.  *See* New Mexico's Second Amended Complaint ("NM SAC") at 46-51, Doc. 339, filed October 17, 2019, at 46-51.  New Mexico alleges:

> Kinross, Kinross Gold U.S.A., and Sunnyside Gold knew or should have known that ending the treatment of the acid mine drainage from the Sunnyside mine pool would send vast amounts of contamination into New Mexico's waters. In fact, immediately after the shuttering of the Gladstone treatment facility, the water quality of the Animas and San Juan Rivers declined ... Sunnyside Gold's discharges of contamination flowed into New Mexico and beyond, **degrading New Mexico's waters and riverbeds for more than a decade** ... These releases have interfered with and continue to interfere with New Mexico's and the public's use and enjoyment of the rivers and surrounding areas.  These releases also present an unreasonable and substantial danger to the public's health and safety ... New Mexico has and will continue to suffer lost economic activity, tax revenues, and

> stigmatic damages arising from these releases ... This public nuisance will continue as long as the Animas and San Juan Rivers and surrounding areas are contaminated with the hazardous substances released from the Gold King and Sunnyside mine pool ... New Mexico is entitled to recover damages from the United States, [ER], Weston ... New Mexico is entitled to entry of **an order** compelling the United States ... [ER], Weston ... jointly and severally, **to abate the nuisance**.

NM SAC at 46-47, ¶ 153; at 50-51, ¶¶ 164-165, 169-170 (emphasis added).

(ii) **Trespass** against the USA, ER, Weston, Kinross, Kinross Gold and Sunnyside Gold. *See* NM SAC at 51-54. New Mexico alleges:

> Kinross, Kinross Gold U.S.A., and Sunnyside Gold knew or should have known that stopping the treatment of the acid mine drainage from the Sunnyside mine pool would send vast amounts of contamination into New Mexico's waters and beyond. In fact, immediately after the shuttering of the Gladstone treatment facility, the water quality of the Animas and San Juan Rivers declined, and native trout all but disappeared in the Animas above Durango, Colorado. Sunnyside Gold's **discharges of contamination have degraded New Mexico's waters and riverbeds for more than a decade** ... New Mexico is entitled to recover compensatory and restitutionary damages from Environmental Restoration, Kinross, Kinross Gold U.S.A., and Sunnyside Gold ... New Mexico is entitled to entry of **an order** compelling Environmental Restoration, Kinross, Kinross Gold U.S.A., and Sunnyside Gold, jointly and severally, **to abate the trespass**.

NM SAC at 52, ¶ 175; at 54, ¶¶ 182, 184-185 (emphasis added).

(iii)   **Negligence and Gross Negligence** against the USA, ER, Weston, Kinross, Kinross Gold and Sunnyside Gold. *See* NM SAC at 54-56. New Mexico alleges:

> Kinross, Kinross Gold U.S.A., and Sunnyside Gold were negligent or grossly negligent by plugging the American Tunnel and surrounding mine portals, thereby creating a highly hazardous condition within the Gold King Mine. Kinross, Kinross Gold U.S.A., and Sunnyside Gold were negligent or grossly negligent by failing to treat the discharges from the American Tunnel and surrounding mine portals ... The United States, through its agency EPA, Environmental Restoration, and Weston Solutions were negligent or grossly negligent by [performing various activities at the Gold King Mine] ... The conduct of the United States, through its agency EPA, Environmental Restoration, Weston Solutions, Kinross, Kinross Gold U.S.A., and Sunnyside Gold caused direct and identifiable harms to New Mexico and its citizens. The harm caused by these defendants' tortious conduct is indivisible and they are jointly and severally liable. New Mexico is entitled to recover compensatory damages from the United States, through its agency EPA, Environmental Restoration, Weston Solutions, Kinross, Kinross Gold U.S.A., and Sunnyside Gold.

NM SAC at 55-56, ¶¶ 189-194. New Mexico also alleges that the Upper Animas River Basin

contains hundreds of inactive or abandoned mines, among them the Gold Kin Mine ... and the much larger Sunnyside Mine ... was mined extensively for metals ... from the 1870s to the mid-1990s" ... Historic mining activities significantly increased the exposure of the mineralized rock ... [which] increased the amount of heavy metals and acidity, known as acid mine drainage, which reaches surface water and sediments.

NM SAC at 8, ¶¶ 21-22.  While New Mexico's "economic" damages may be a direct result of the Blowout, New Mexico's tort claims also seek damages for degradation of the riverbed, which has resulted in part from historical contamination, and an order compelling the USA, ER, Weston and others to abate the public nuisance and trespass.

**IT IS ORDERED** that Plaintiffs the State of New Mexico and New Mexico Environment Department's Motion for Partial Summary Judgment Regarding Defendant Environmental Restoration, LLC's Amended Designation of Nonparties at Fault under Colo. Rev. Stat. § 13-21-111.5(3)(b), Doc. 1455, filed February 23, 2022, is **DENIED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE