IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE: GOLD KING MINE RELEASE
IN SAN JUAN COUNTY, COLORADO,                    No. 1:18-md-02824-WJ
ON AUGUST 5, 2015

*This Document Relates to All Cases*

## MEMORANDUM OPINION AND ORDER
## DENYING HARRISON WESTERN CONSTRUCTION CORPORATION'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT
## FOR LACK OF PERSONAL JURISDICTION

"Harrison Western ("HW") was retained by ER [Environmental Restoration, LLC] in August 2014 to assist in the reopening of the Gold King Mine."  Motion of Defendant/Third-Party Defendant/Cross-Claimant Defendant Harrison Western Construction Corporation for Summary Judgment Against Plaintiff State of Utah and Third-Party Plaintiff/Cross-Claimant Environmental Restoration, LLC at 5, Doc. 1485, filed March 7, 2022 ("Motion").  HW asserts that New Mexico and Utah Courts lack personal jurisdiction over HW.

**Personal Jurisdiction**

An out-of-state defendant's contacts with the forum state may give rise to either general jurisdiction or specific jurisdiction:

(i) "General personal jurisdiction means that a court may exercise jurisdiction over an out-of-state party for all purposes.  A court may assert general jurisdiction over foreign ... corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State;"

(ii) "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."

*Old Republic Insurance Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903-04 (10th Cir. 2017) (citations and quotation marks omitted).

**General Jurisdiction**

> In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state. 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067, at 298 (2d ed.1987). In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Id.* at § 1069, at 348–55 (collecting cases).

*Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

"Harrison Western disputes the applicability of *Trierweiler* because that case was decided several years before the more recent seminal United States Supreme Court cases on general jurisdiction - ***Goodyear Dunlop Tires Operations, S.A.*** and ***Daimler AG***." Motion at 11, n.3. HW cites *Goodyear Dunlop* as follows:

> The Due Process Clause of the Fourteenth Amendment constrains the authority a state court may exercise over a non-resident defendant. **See *Walden v. Fiore*, 571 U.S. 277, 283 (2013)**. That authority is a function of the relationship and connection between the state and the non-resident defendant. **See *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011)**. Over time, courts addressing a state court's authority over a non-resident defendant have differentiated between general jurisdiction and specific jurisdiction. **See *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)**. A state court must have general or specific jurisdiction over a non-resident defendant before its exercise of authority over that defendant is considered constitutional. ***Goodyear Dunlop Tires Operations, S.A.*, 564 U.S at 923-24**.

Motion at 8. HW cites *Daimler AG* as follows:

> Only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. ***Daimler AG*, 571 U.S. at 137**. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." **571 U.S. at 137.** "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] … bases for general jurisdiction.'" **571 U.S. at 137, *quoting* Brilmayer, *et al.*, A General Look at General Jurisdiction, 66 Texas L. Rev. 721, 728 (1988)**. Outside those paradigm bases, "only a limited set of affiliations with a forum" will subject a corporate defendant to general jurisdiction – which the U.S. Supreme Court calls the "exceptional case." **571 U.S. at 137-39 n.19**.

2

> In *Daimler AG*, the Supreme Court defined the extent "continuous and systematic" contacts could subject a defendant to all-purpose general jurisdiction:
>
>> The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business. [Citation.] Plaintiffs' reasoning, however, would reach well beyond these exemplar bases to approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' [Citation.] The words "continuous and systematic," plaintiffs and the Court of Appeals overlooked, were used in *International Shoe* to describe situations in which the exercise of specific jurisdiction would be appropriate. [Citation.] With respect to all-purpose jurisdiction, *International Shoe* spoke instead of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." [Citation.] Accordingly, the proper inquiry, this Court has explained, is whether a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." (Emphasis added). **571 U.S. at 119** (internal citations omitted).

Motion at 9-10.

HW notes that in two recent opinions the United States Supreme Court concluded that large corporations doing business in forum states other than their places of incorporation and principal places of business were not subject to general jurisdiction in the forum states. *See BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549 (2017) (concluding that in-state business is not sufficient to permit the assertion of general jurisdiction over BNSF which has over 2,000 miles of track and 2,100 employees in the forum state); *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017 (2021) (concluding that general jurisdiction over Ford attaches in Delaware and Michigan, its places of incorporation and principal place of business, but not in the forum states). The Supreme Court stated:

> *Goodyear* and *Daimler* clarified that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims

> against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler,* 571 U.S., at ——, 134 S.Ct., at 754 (quoting *Goodyear,* 564 U.S., at 919, 131 S.Ct. 2846). The "paradigm" forums in which a corporate defendant is "at home," we explained, are the corporation's place of incorporation and its principal place of business. *Daimler,* 571 U.S., at ——, 134 S.Ct., at 760; *Goodyear,* 564 U.S., at 924, 131 S.Ct. 2846. The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler,* 571 U.S., at ——, n. 19, 134 S.Ct., at 761, n. 19. We suggested that *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), exemplified such a case. *Daimler,* 571 U.S., at ——, n. 19, 134 S.Ct., at 761, n. 19. In *Perkins,* war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio. 342 U.S., at 447–448, 72 S.Ct. 413. Because Ohio then became "the center of the corporation's wartime activities," *Daimler,* 571 U.S., at ——, n. 8, 134 S.Ct., at 756, n. 8, suit was proper there, *Perkins,* 342 U.S., at 448, 72 S.Ct. 413.

*BNSF*, 137 S.Ct. at 1558; *see also Ford*, 141 S.Ct. at 1024 (noting that *Daimler* left open "the possibility that in an exceptional case" a corporation might also be "at home" in a forum other than the corporation's place of incorporation and its principal place of business).  It appears from the United States Supreme Court opinions that there are very few "exceptional cases" where a Court can exercise general jurisdiction over a corporation in a forum other than the corporation's place of incorporation and its principal place of business.  *See BNSF*, 137 S.Ct. at 1560 (stating that under the majority's reasoning, "it is virtually inconceivable that such corporations will ever be subject to general jurisdiction in any location other than their principal places of business or of incorporation") (Sotomayor, J.) (concurring in part and dissenting in part).

  HW argues that Colorado is its place of incorporation and principal place of business and "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradig[m] … bases for general jurisdiction.  Outside those paradigm bases, only a limited set of affiliations with a forum will subject a corporate defendant to general jurisdiction – which the

4

U.S. Supreme Court calls the 'exceptional case.'" Motion at 9 (quoting *Daimler AG*, 571 U.S. at 137-39).

The Court recognizes that the recent Supreme Court cases hold that a court can exercise general jurisdiction over a corporation in a forum other than the corporation's place of incorporation and its principal place of business only in exceptional cases. However, HW has not cited, and the Court has not found, any Tenth Circuit case law stating the *Trierweiler* factors are inapplicable in determining whether the Court has general jurisdiction in such cases. Furthermore, after the decisions in *Goodyear Dunlop* in 2011 and in *Daimler AG* in 2014, the Tenth Circuit noted that *Trierweiler* "list[s] factors courts have considered in evaluating general jurisdiction." *Tomelleri v. MEDL Mobile, Inc.*, 657 Fed.Appx. 793, 794 (10th Cir. 2016); *see also* Doc. 635 at 5, filed June 16, 2020 (Special Master Hon. Alan C. Torgerson stated he "disagrees with Harrison Western['s argument that *Trierweiler* is no longer good law because it was decided before *Goodyear Dunlop* and *Daimler AG*] and adopts, instead, the reasoning of Judge James O. Browning that the *Trierweiler* factors are still 'accurate, but incomplete.' *Fabara v. GoFit, Inc.*, 308 F.R.D. 380, 404 (D.N.M. 2015)"). Consequently, the Court applies the *Trierweiler* factors in this case.

<u>Whether HW Solicits Business in the States Through a Local Office or Agents</u>

HW states that it "does not solicit business in New Mexico or Utah through local offices or agents." Motion at 11, n.3. ER and Utah cite to portions of HW employees' deposition transcripts which indicate that HW typically sets up a field office in a trailer on-site where its employees can "do some administrative stuff." ER Response at 10, ¶¶ F, G, Doc. 1533, filed April 4, 2022; Utah Response at 15, Doc. 1548, filed April 4, 2022. The cited portions of the deposition transcripts do not, however, indicate that HW employees solicited business from the field offices.

5

Whether HW Sends Agents into the States on a Regular Basis to Solicit Business

HW states that it "does not regularly send agents into New Mexico or Utah to solicit business." Motion at 11, n.3.

ER and Weston cite to portions of the record that indicate from July 1, 2009, to July 1, 2019, HW solicited work on eight projects in New Mexico and five projects in Utah. *See* ER Response at 12, ¶¶ O and P; Utah Response at 17. HW solicited business in New Mexico by looking at websites and making phone calls. *See* ER Response 11, ¶ K (one HW agent testified he made "somewhere between two and 11" phone calls per year and that others at HW would also solicit work by phone for work in New Mexico). HW also responded to requests for proposals for work in New Mexico and Utah. *See* Utah Response at 16.

The Extent to which HW Holds Itself Out as Doing Business in the Forum States

HW states that it "does not hold itself out as doing business in New Mexico or Utah through advertising or listings, and it has no bank accounts in New Mexico or Utah." Motion at 11, n.3.

HW has been registered to do business in New Mexico since 1988 and in Utah since 1989, and has filed state tax returns in New Mexico and Utah every year since 2010. *See* ER Response at 12, ¶ M.

The Volume of Business Conducted in the States by HW

HW states that from 2009 through the end of 2019:

(i)  HW worked on six projects in New Mexico and earned revenue on those projects amounting to $2,209,682.00 or 1.5% of HW's total revenue for that time period.

(ii) HW worked on three projects in Utah and earned revenue on those projects amounting to $9,182,612.35 or 6.3% of HW's total revenue for that time period.

Motion at 3-4, ¶¶ 8-11.  ER and Utah cited a portion of an HW employee's deposition transcript where he states HW is responsible for "anywhere from three to eight ongoing projects at a time." ER Response at 12, ¶ Q; Utah Response at 17.  HW employees visited New Mexico and Utah in connections with those projects, with some employees living in New Mexico and Utah while working full-time on those projects which lasted months to two years.  *See* ER Response at 10, ¶¶ H, I; Doc. 968-1 at 43, 45, 47.

Conclusion

The Court denies HW's motion for summary judgment as to general jurisdiction because ER and Utah have cited to portions of the record which show there are genuine issues of material facts regarding whether HW's affiliations with the neighboring states of New Mexico and Utah are so continuous and systematic as to render HW essentially at home in New Mexico and Utah.  HW has: (i) solicited work in the forum states; (ii) been registered to do business in the forum states since the late 1980s; (iii) filed state tax returns in the forum states every year since 2010; and (iv) had projects in the forum states lasting from months to years during which HW set up field offices and had employees working full-time in the forum states.  Although HW only earned $11.4 million from projects in New Mexico and Utah from 2009 through 2019, which amounts to 7.8% of HW's total revenue during that time, HW, which only has three to eight ongoing projects at a time, had nine projects in New Mexico and Utah during that time.

**Specific Jurisdiction**

HW also asserts that the Court does not have specific jurisdiction over HW.  Specific jurisdiction calls for a two-step inquiry: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction

unreasonable." *Old Republic*, 877 F.3d at 904.  The minimum contacts test for specific jurisdiction has two distinct requirements: "(i) that the defendant must have purposefully directed its activities at residents of the forum state," and (ii) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Old Republic*, 877 F.3d at 904.

HW seeks summary judgment for lack of personal jurisdiction which requires the lack of both general and specific jurisdiction.  The Court cannot grant HW's motion for summary judgment for lack of personal jurisdiction because there is a genuine issue of material fact as to whether there is general jurisdiction over HW.  The Court therefore does not address at this time the arguments regarding whether there is specific jurisdiction.

**IT IS ORDERED** that Motion of Defendant/Third-Party Defendant/Cross-Claimant Defendant Harrison Western Construction Corporation for Summary Judgment Against Plaintiff State of Utah and Third-Party Plaintiff/Cross-Claimant Environmental Restoration, LLC, Doc. 1485, filed March 7, 2022, is **DENIED.**

                                                 **WILLIAM P. JOHNSON**
                                                 **CHIEF UNITED STATES DISTRICT JUDGE**